**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMAERO IRELAND LIMITED, | No. 19-cv-08234 |
| Plaintiff, | |
| | Honorable Rebecca R. Pallmeyer |
| v. | |
| | Magistrate Judge Jeffrey T. Gilbert |
| THE BOEING COMPANY, | |
| Defendant. | |

**MEMORANDUM IN SUPPORT OF BOEING'S
MOTION TO DISMISS COUNTS I, III, AND IV**

# TABLE OF CONTENTS

**Page**

BACKGROUND ........................................................................................................... 2

LEGAL STANDARD ................................................................................................... 3

ARGUMENT ................................................................................................................ 4

    I.    Count I fails to allege a claim for fraudulent inducement that satisfies Rule 9(b) particularity and Rule 8(a) plausibility. ............................................ 4

        A.    Count I fails to plead fraudulent inducement with particularity ......... 5

        B.    Timaero also fails to state a plausible claim for fraudulent inducement ............................................................................................. 8

    II.    Count IV fails to state a plausible claim for tortious interference with a business expectancy. .......................................................................................... 13

    III.    Count III fails to state a claim for breach of the covenant of good faith and fair dealing. .................................................................................................. 14

CONCLUSION ........................................................................................................... 15

# TABLE OF AUTHORITIES

**Page**

C**ASES**

*All Am. Roofing, Inc. v. Zurich Am. Ins. Co.,*
    934 N.E.2d 679 (Ill. App. Ct. 2010) ........................................................................... 6

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ......................................................................................... 3, 8, 10

*Ass'n Ben. Servs., Inc. v. Caremark RX, Inc.,*
    493 F.3d 841 (7th Cir. 2007) .................................................................................... 9

*Assoc. Underwriters of Am. Agency, Inc. v. McCarthy,*
    826 N.E.2d 1160 (Ill. App. Ct. 2005) ................................................................ 13, 14

*Barrow v. Blouin,*
    38 F. Supp. 3d 916 (N.D. Ill. 2014) ......................................................................... 15

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................ 3, 14

*Borsellino v. Goldman Sachs Grp., Inc.,*
    477 F.3d 502 (7th Cir. 2007) .................................................................................... 3

*Camasta v. Jos. A. Bank Clothiers, Inc.,*
    761 F.3d 732 (7th Cir. 2014) .................................................................................... 3

*Chicago Title & Tr. Co. v. First Arlington Nat. Bank,*
    454 N.E.2d 723 (Ill. App. Ct. 1983) ......................................................................... 6

*Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd.,*
    893 N.E.2d 981, 993 (Ill. App. Ct. 2008) ............................................................... 13

*City of Livonia Employees' Ret. Sys. v. Boeing Co.,*
    711 F.3d 754 (7th Cir. 2013) ........................................................................ 6, 10, 14

*Cohen v. Am. Sec. Ins. Co.,*
    735 F.3d 601 (7th Cir. 2013) .................................................................................. 10

*Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.,*
    250 F.3d 570 (7th Cir. 2001) .................................................................................. 11

*Crichton v. Golden Rule Ins. Co.,*
    576 F.3d 392 (7th Cir. 2009) .................................................................................. 11

# TABLE OF AUTHORITIES
## (Continued)

Page

*Curran v. Bayer Healthcare LLC,*
2019 WL 398685 (N.D. Ill. Jan. 31, 2019) ............................................................ 15

*Depot, Inc. v. Caring for Montanans, Inc.,*
915 F.3d 643 (9th Cir. 2019) .................................................................................. 5

*DiLeo v. Ernst & Young,*
901 F.2d 624 (7th Cir. 1990) .............................................................................. 8, 10

*Douglas Theater Corp. v. Chi. Title & Tr. Co.,*
681 N.E.2d 564, 570 (Ill. App. Ct. 1997) .......................................................... 2, 14

*Elcon Const., Inc. v. E. Washington Univ.,*
273 P.3d 965 (Wash. 2012) ...................................................................................... 4

*Fid. & Deposit Co. of Maryland v. Edward E. Gillen Co.,*
926 F.3d 318 (7th Cir. 2019) .................................................................................... 4

*Foster v. Principal Life Ins. Co.,*
806 F.3d 967 (7th Cir. 2015) .................................................................................. 13

*Gandhi v. Sitara Capital Mgmt., LLC,*
721 F.3d 865 (7th Cir. 2013) ................................................................................ 7, 8

*Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co.,*
927 F.2d 988 (7th Cir. 1991) ........................................................................ 5, 6, 7, 8

*Hard2Find Accessories, Inc. v. Amazon.com, Inc.,*
691 F. App'x 406 (9th Cir. 2017) ......................................................................... 15

*Hoseman v. Weinschneider,*
322 F.3d 468 (7th Cir. 2003) .................................................................................... 4

*In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.,*
2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009) ..................................................... 6

*JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.,*
707 F.3d 853 (7th Cir. 2013) .................................................................................... 8

*Leingang v. Pierce Cty. Med. Bureau, Inc.,*
930 P.2d 288 (Wash. 1997) .................................................................................... 13

*Makor Issues & Rights, Ltd. v. Tellabs Inc.,*
513 F.3d 702 (7th Cir. 2008) .................................................................................... 7

## TABLE OF AUTHORITIES
### (Continued)

**Page**

*Prescott v. Argen Corp.*,
   2015 WL 94168 (N.D. Ill. Jan. 6, 2015).................................................................................8

*Prime Leasing, Inc. v. Kendig*,
   773 N.E.2d 84 (Ill. App. Ct. 2002).....................................................................................11

*PXRE Reinsurance Co. v. Lumbermens Mut. Cas. Co.*,
   342 F. Supp. 2d 752 (N.D. Ill. 2004)..................................................................................11

*Rekhter v. State, Dep't of Soc. & Health Servs.*,
   323 P.3d 1036 (Wash. 2014)...............................................................................................15

*Romanek v. Connelly*,
   753 N.E.2d 1062 (Ill. App. Ct. 2001)..................................................................................14

*Sabrina Roppo v. Travelers Commercial Ins. Co.*,
   869 F.3d 568 (7th Cir. 2017)...............................................................................................11

*Siemer v. Quizno's Franchise Co. LLC*,
   2008 WL 904874 (N.D. Ill. Mar. 31, 2008).........................................................................10

*Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*,
   897 F.3d 797 (7th Cir. 2018)...............................................................................................10

*Strum v. Exxon Co., U.S.A.*,
   15 F.3d 327 (4th Cir. 1994)...................................................................................................2

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
   475 F.3d 824 (7th Cir. 2007).................................................................................................9

*Vexol, S.A. de C.V. v. Berry Plastics Corp.*,
   882 F.3d 633 (7th Cir. 2018).................................................................................................5

*Vicom, Inc. v. Harbridge Merch. Servs., Inc.*,
   20 F.3d 771 (7th Cir. 1994)..........................................................................................3, 5, 7

*W. Side Salvage, Inc. v. RSUI Indem. Co.*,
   878 F.3d 219 (7th Cir. 2017).................................................................................................4

*Webb v. Frawley*,
   906 F.3d 569 (7th Cir. 2018)............................................................................................3, 5

*Wigod v. Wells Fargo Bank, N.A.*,
   673 F.3d 547 (7th Cir. 2012).................................................................................................9

**TABLE OF AUTHORITIES**

(Continued)

**Page**

*Wood v. Mid-Valley Inc.*,
  942 F.2d 425 (7th Cir. 1991) ........................................................................................ 14

**RULES**

Fed. R. Civ. P. 8(a) ........................................................................................3, 4, 8, 9

Fed. R. Civ. P. 9(b) ...................................................................................... 3, 4, 5, 6, 7, 9

Fed. R. Civ. P. 12(b)(6) .......................................................................... 2, 3, 12, 14

**OTHER AUTHORITIES**

Restatement (Third) Of Agency § 5.03, cmt. *d.(2)* (2006) ............................................. 6

Timaero's claims for fraudulent inducement, tortious interference with a business expectancy, and breach of the covenant of good faith and fair dealing do not satisfy the applicable pleading standards and should be dismissed. In essence, Timaero alleges that Boeing did not (and will not, in the future) provide it with conforming 737 MAX airplanes. Timaero's 2014 order of 737 MAX airplanes from Boeing is the subject of a detailed Purchase Agreement (and various supplemental agreements) between the parties, and this dispute should be resolved in accordance with the terms of those agreements. The law does not permit a plaintiff to transform a contract claim like Timaero's into a tort case, absent specific allegations of fraudulent or intentionally wrongful conduct.

In Timaero's telling, Boeing intentionally sold Timaero airplanes that it knew at the time were unsafe, *see* Compl. ¶¶ 102-13, with the intent to injure Timaero in its airplane leasing business, *id.* ¶¶ 133-41. These allegations are both wholly implausible and fatally vague. Notably, Timaero does not allege a single, specific fraudulent interaction involving identified individuals during the six-year business relationship described in the Complaint—let alone plead the elements of its fraudulent inducement claim with the requisite particularity and plausibility. Timaero merely culls allegations from newspapers about the development and certification of the 737 MAX and adds vague assertions that Boeing misrepresented or omitted facts about the MAX in its dealings with Timaero and various third parties.

That falls far short of satisfying pleading standards, especially because many of the design, development, and certification decisions at issue are alleged to have occurred *after* the parties executed their Purchase Agreement in 2014. Timaero's allegations similarly fail to support the elements of its tortious interference and good faith and fair dealing claims. These pleading deficiencies are unsurprising given the inherent illogic of Timaero's overarching theory that

Boeing has adopted a business model in which it intentionally tricks its customers into purchasing an unsafe product—and is doing so to destroy its customers' businesses.

The Complaint fails to include the kind of specific factual allegations necessary for such an implausible theory to survive a motion to dismiss. Accordingly, Counts I (fraudulent inducement), III (good faith), and IV (tortious interference) should be dismissed under Rule 12(b)(6). These claims represent an "attempt … to manufacture a tort dispute out of what is, at bottom, a simple breach of contract claim." *See Strum v. Exxon Co., U.S.A.*, 15 F.3d 327, 329 (4th Cir. 1994). Careful application of pleading rules and elements "prevents every breach of contract from becoming a tort claim for expectancies lost as a result of the breach." *Douglas Theater Corp. v. Chi. Title & Tr. Co.*, 681 N.E.2d 564, 570 (Ill. App. Ct. 1997). Those principles should be applied here to dismiss Timaero's unsupported tort claims and to allow this case to proceed appropriately as a contract dispute.

## BACKGROUND

Plaintiff Timaero purchases airplanes to lease and re-sell. In January 2014, when the 737 MAX was still being designed, Timaero and Boeing signed a Purchase Agreement for Timaero to buy twenty 737 MAX airplanes from Boeing. Compl. ¶ 11. Timaero increased that number to twenty-two airplanes by signing Supplemental Agreement No. 1 in September 2016. *Id.* ¶ 14. There were six more supplemental agreements between the parties from August 2017 to November 2018. *Id.* ¶¶ 14–15. Timaero signed Supplemental Agreement No. 7—which discussed credit memoranda that would be issued upon the occurrence of certain events, such as airplane delivery—in November 2018. *Id.* ¶ 15.

Just before the execution of that Supplemental Agreement, on October 29, 2018, a 737 MAX flown by Lion Air crashed. *Id.* ¶ 54. Two months later, in December 2018, Timaero accepted delivery of two 737 MAX airplanes. *Id.* ¶ 17.

Timaero alleges that the Lion Air crash related to the MAX's Maneuvering Characteristics Augmentation System ("MCAS"), a flight control system that Boeing "redesigned" in 2016 "to operate at lower flight speeds." *Id.* ¶¶ 39, 56-57. Aviation authorities grounded the 737 MAX in early 2019, *id.* ¶ 53, and Boeing has temporarily suspended production of the airplane. *Id.* ¶ 18. Timaero alleges that the 737 MAX airplanes for which it contracted "are now either worthless or seriously diminished in value." *Id.* ¶ 19.

## LEGAL STANDARD

Rule 12(b)(6) provides for dismissal when a complaint fails "to state a claim upon which relief can be granted." To survive a motion to dismiss, a claim must satisfy Rule 8(a), which requires that complaints allege "enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). Well-pleaded facts "are taken as true." *Id.* But the Court need not accept any "legal conclusions," "[t]hreadbare recitals" of a claim's elements, or "naked assertion[s]" of liability. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (omissions).

Claims "alleging fraud" must also satisfy Rule 9(b), which requires the complaint to "state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). To satisfy that standard, fraud allegations must "provide the who, what, when, where, and how of the fraud." *Webb v. Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (omissions). The heightened standard serves three important purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim." *Vicom, Inc. v. Harbridge Merch. Servs., Inc.*, 20 F.3d 771, 777 (7th Cir. 1994).

And Rule 9(b) is not limited to fraud claims. It applies more broadly. "A claim that 'sounds in fraud'—in other words, one that is premised upon a course of fraudulent conduct—can

3

implicate Rule 9(b)'s heightened pleading requirements." *See Borsellino v. Goldman Sachs Grp.,* *Inc.*, 477 F.3d 502, 507 (7th Cir. 2007) (applying Rule 9(b) to several non-fraud claims premised on an alleged fraud). To the extent Timaero's fraud theories infuse any of the causes of action, those causes of action are subject to dismissal for lack of particularity.

## ARGUMENT

I.   **Count I fails to allege a claim for fraudulent inducement that satisfies Rule 9(b) particularity and Rule 8(a) plausibility.**

Count I does not state a valid claim for fraudulent inducement. It falls far short of Federal Rule 9(b)'s heightened pleading standards and also fails to state a plausible claim for fraudulent inducement under Illinois law.[1] "In Illinois, fraudulent inducement requires proof of five elements: (1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Hoseman v. Weinschneider*, 322 F.3d 468, 476 (7th Cir. 2003) (omissions). Timaero fails to adequately plead any of these elements.

Timaero makes four wholly conclusory allegations of fraud. *First*, it alleges that Boeing intentionally failed to disclose information about the 737 MAX's airworthiness for the purpose of inducing Timaero to purchase the 737 MAX airplane, in violation of an asserted duty to

---

[1] Illinois law governs Timaero's fraudulent inducement claims. The contract claim is governed by Washington law under Section 12.3 of the Aircraft General Terms Agreement ("AGTA") incorporated into the Purchase Agreement, Compl. ¶ 12, but the fraudulent inducement claim is outside the scope of the AGTA's choice-of-law provision. This Court thus applies Illinois choice-of-law principles. *Fid. & Deposit Co. of Md. v. Edward E. Gillen Co.*, 926 F.3d 318, 325 (7th Cir. 2019). Under Illinois law, a choice-of-law analysis is unnecessary unless "there is a conflict" that "will make a difference in the outcome." *W. Side Salvage, Inc. v. RSUI Indem. Co.*, 878 F.3d 219, 223 (7th Cir. 2017) (omissions). There is no meaningful conflict between Illinois and Washington law on fraudulent inducement. *Compare Colagrossi v. Royal Bank of Scotland*, 57 N.E.3d 601, 611 (Ill. App. Ct. 2016), *with Elcon Constr., Inc. v. E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012).

disclose. *See* Compl. ¶ 104. *Second*, it states that Boeing made "numerous"—but unidentified—"knowingly false" representations intended to induce Timaero to enter into the Purchase Agreement. *Id.* ¶ 105. *Third*, it alleges Boeing misrepresented that the 737 MAX had been designed in compliance with aviation regulations, relying in part on Boeing's allegedly false representations and omissions of fact during the FAA certification process. *Id.* ¶¶ 106-07. And *fourth*, after the crash of a Lion Air 737 MAX in October 2018, it says Boeing failed to inform customers of the alleged threat posed by MCAS, the differences between the MAX and earlier model 737 airplanes, and the level of corrective action necessary, which allegedly induced Timaero to continue making payments. *Id.* ¶¶ 108-09. These allegations are neither pleaded with the particularity required by Rule 9(b), nor valid for relief under Illinois law.

### A.    Count I fails to plead fraudulent inducement with particularity.

Count I fails to meet any of the five particularity requirements for Rule 9(b).[2] *See Webb*, 906 F.3d at 576. Tellingly, Count I is based on allegations spanning a *six-year* timeline, but does not include a single specific fraudulent interaction involving identified individuals during this time period, as required by the Rule.

**Who.** Count I fails because it does not "state the identity of the person who made" each "misrepresentation"—indeed, it does not identify a single individual as having made a misrepresentation to Timaero. *Vicom*, 20 F.3d at 777 (omissions). Nor does it identify any individual at Timaero who acted in reliance on any of the alleged misrepresentations. *See Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co.*, 927 F.2d 988, 993 (7th Cir. 1991) (complaint must specifically

---

[2] FRCP Rule 9(b) applies regardless of whether Washington or Illinois law governs the substantive cause of action for fraudulent inducement. *See, e.g., Depot, Inc. v. Caring for Montanans, Inc.*, 915 F.3d 643, 668 (9th Cir. 2019); *Vexol, S.A. de C.V. v. Berry Plastics Corp.*, 882 F.3d 633, 637 (7th Cir. 2018).

allege "the identities of the parties to the misrepresentation" (omissions)). Of the alleged employee statements the Complaint does reference, *see, e.g.*, Compl. ¶¶ 39, 41, 83, all were allegedly made *after* Timaero signed the Purchase Agreement in January 2014, and to parties other than Timaero. As a matter of law, these allegations of misrepresentations to third parties cannot satisfy Rule 9(b). They also cannot establish the reliance that is critical to a fraudulent inducement claim because they are alleged to have occurred *after* the contractual relationship had begun. As this Court has explained, "failure to identify the misrepresentation [plaintiffs] saw and relied upon is fatal." *In re Sears, Roebuck & Co. Tools Mktg. & Sales Practices Litig.*, 2009 WL 937256, at *6 (N.D. Ill. Apr. 6, 2009); *see also, e.g.*, *Connick v. Suzuki Motor Co.*, 675 N.E.2d 584, 591 (Ill. 1996) (affirming dismissal where "the complaint fail[ed] to state which, if any, of the plaintiffs heard these representations and relied on them").

These pleading deficiencies are particularly problematic because Boeing is a corporate defendant. Under Illinois law, scienter cannot be imputed to a company by compiling the collective knowledge and conduct of multiple employees. *See All Am. Roofing, Inc. v. Zurich Am. Ins. Co.*, 934 N.E.2d 679, 690-91 (Ill. App. Ct. 2010). Rather, Illinois courts "turn to principles of agency law" to address the scienter element of fraud claims against corporate defendants. *Chi. Title & Tr. Co. v. First Arlington Nat'l Bank*, 454 N.E.2d 723, 727 (Ill. App. Ct. 1983). And under agency principles, a company should "not be subject to liability for fraud if one agent makes a statement, believing it to be true, while another agent knows facts that falsify the other agent's statement." Restatement (Third) Of Agency § 5.03, cmt. *d.(2)* (2006).

Simply put, the Complaint must identify an "employee of Boeing" who made "false statements" that were "within the scope of his employment" and "knew they were false." *See City of Livonia Employees' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013). The intent to

defraud cannot be derived from "collective knowledge." Count I fails because it does not identify any qualifying employee with a qualifying intent.

**What.** Count I also "has not alleged the *specific* content of any fraudulent statements." *Graue Mill*, 927 F.2d at 993. The closest it comes is a blanket assertion that "Boeing represented that the 737 MAX was an airworthy and safe aircraft." Compl. ¶ 106. But such "general descriptions" lack "the detail required by Rule 9(b)," especially in cases involving complex commercial transactions between sophisticated parties. *Gandhi v. Sitara Cap. Mgmt., LLC*, 721 F.3d 865, 870 (7th Cir. 2013). For example, the Seventh Circuit declined to uphold a plaintiff's generic allegations that the defendant bank made "false representations that [it] would disburse loan amounts in a prompt and expeditious manner." *Graue Mill*, 927 F.2d at 993. By contrast, specific allegations of a fraud would be, for example, a company saying that there is "strong" demand for a key product when in fact demand is "evaporating," or that there have been important new contracts when in fact there are none. *See Makor Issues & Rights, Ltd. v. Tellabs Inc.*, 513 F.3d 702, 706 (7th Cir. 2008). Greater specificity of content is necessary to ensure plaintiffs "sufficiently allege the defendant's fraudulent intent." *Graue Mill*, 927 F.2d at 992.

**When and where.** Count I also does not allege "the time" or "place" of any of the alleged misrepresentations. *Vicom*, 20 F.3d at 777. Indeed, the Complaint's own allegations are inconsistent with Timaero's fundamental claim. Count I is predicated on the allegation that Boeing induced Timaero's entry into the Purchase Agreement *in 2014* by making false representations about the MAX's airworthiness and safety. Compl. ¶ 106. Yet, the Complaint contains multiple allegations making clear that the design and certification of the 737 MAX were dynamic, ongoing processes that continued after Boeing and Timaero entered into the Purchase Agreement in 2014. For instance, the Complaint alleges that Boeing did not "decide[] to expand the use of MCAS" until 2016, when its test pilots identified "problems … at low-speed

flight." *Id.* ¶¶ 33-34. This was long after any fraudulent inducement to enter into the Purchase Agreement could have occurred. Boeing can hardly have made misrepresentations about changes to the airplane that it had not yet even decided to make.

**How and reliance.** Count I also fails to "sufficiently allege" how Timaero relied "upon the various alleged misrepresentations." *Gandhi*, 721 F.3d at 867-68. Timaero does not allege "the approximate date of their reliance, the specific documents [or conversations] on which they relied, the specific misstatements within the documents [or conversations] on which they relied, or how any misstatements caused plaintiffs to rely on them." *Prescott v. Argen Corp.*, 2015 WL 94168, at *3 (N.D. Ill. Jan. 6, 2015). The absence of any of these requisite specifics is, again, independently fatal to Timaero's fraud claim.

### B.    Timaero also fails to state a plausible claim for fraudulent inducement.

Independently, Timaero's fraudulent inducement claim fails because it is not remotely plausible. Count I alleges the kind of "fraud by hindsight" that fails to satisfy Rule 8. *DiLeo v. Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990) (omissions). Timaero alleges simply that it did not receive the planes it was promised and insists—without pointing to any contemporaneous facts indicating malicious intent by Boeing—that there must be fraud. It likewise relies upon alleged findings of accident investigations and posits that Boeing must have known those things much earlier, even as far back as when Timaero first purchased its airplanes in 2014. But the law does not support such claims of fraud by hindsight.

**Lack of plausible intent.** Count I fails to "sufficiently allege the defendant's fraudulent intent," which is the "[m]ost important[]" requirement for fraud claims. *Graue Mill*, 927 F.2d at 992. The "strictures of Rule 8" apply to allegations of fraudulent intent, *Iqbal*, 556 U.S. at 687, and the alleged facts must support a plausible inference of fraudulent intent. *See DiLeo,*

901 F.2d at 627-28. That means facts establishing that each "alleged false representation" was "false when made" and that the Boeing employee making it "knew it was false." *JPMorgan Chase Bank, N.A. v. Asia Pulp & Paper Co.*, 707 F.3d 853, 865 (7th Cir. 2013). Insofar as the claim is for fraudulent concealment, that means facts establishing that a Boeing employee "intentionally omitted or concealed a material fact" to mislead Timaero. *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 571 (7th Cir. 2012).

The Complaint must allege facts indicating that, "*at the time*" the alleged misrepresentation or concealment occurred, "it was an intentional misrepresentation." *Ass'n Benefit Servs., Inc. v. Caremark RX, Inc.*, 493 F.3d 841, 853 (7th Cir. 2007). The Complaint does not allege any facts indicating that, when the parties entered into the Purchase Agreement in 2014, Boeing knew that the MAX—which was still in the design phase—would not comply with FAA regulations, would not be airworthy, and would not be safe. *See* Compl. ¶ 106.

Nor does the Complaint include any facts demonstrating what Boeing "had to gain" through the alleged fraud, or any other plausible basis for inferring fraudulent intent. *Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). The Seventh Circuit has refused to infer fraudulent intent where the short-term benefit of the alleged fraud pales in comparison to the long-term damage it could do the defendant's "reputation for careful work." *Id.* (omissions). Otherwise, plaintiffs could successfully allege "a motive to commit fraud" by merely pointing to some short-term gain—even if it "could not approach the losses" if the defendant's "reputation" were harmed. *Id.* (omissions). Permitting an inference of fraudulent intent on such a thin reed would not only undermine Rule 8(a), but also "make Rule 9(b) wholly meaningless." *Id.* (omissions).

For Boeing, a company that builds commercial passenger planes, a reputation for safety is its "greatest asset." *Id.* The Complaint itself acknowledges this, alleging that unsafe planes

are "worthless," and that customers do not want them. *E.g.,* Compl. ¶¶ 19, 94-96. It also acknowledges that Boeing's business model is to sell an iteration of the 737 for a decade or more—not just a single batch of planes. *Id.* ¶ 20.

Yet the Complaint baselessly posits that Boeing intentionally engaged in a fraudulent scheme that it knew would "permanently compromise[] the safety and reputation of the 737 MAX." Compl. ¶ 100.d. Such a naked inference defies "common sense." *Iqbal*, 556 U.S. at 679. "It would have been irrational" for Boeing to concoct a fraudulent scheme that, if discovered, would have brought "a halt to" all MAX sales. *DiLeo*, 901 F.2d at 629. Indulging such a "ready inference[] of irrationality would too easily allow the inference that ordinary business reverses are fraud." *Id.* In analogous circumstances, the Seventh Circuit has recognized the implausibility of thinking that Boeing would knowingly engage in fraud that "would undermine Boeing's credibility with its customers and expose the company to a multi-hundred million dollar lawsuit." *City of Livonia*, 711 F.3d at 758.

**Lack of duty to disclose.** To the extent it relies on a theory of fraudulent concealment, Count I is also implausible because it fails to allege facts establishing that Boeing "concealed a material fact when [it] was under a duty to disclose that fact."[3] *Squires-Cannon v. Forest Pres. Dist. of Cook Cty.*, 897 F.3d 797, 805 (7th Cir. 2018) (omissions). The Complaint does not allege the kind of "fiduciary," "confidential," or "special trust relationship" needed to create a duty. *Id.* Nor could it where, as here, "[t]he parties operated at arm's length." *Cohen v. Am. Sec. Ins. Co.*, 735 F.3d 601, 614 (7th Cir. 2013).

---

[3] The Complaint alleges three kinds of omissions: (i) that Boeing did not disclose information to its customers about the 737 MAX's airworthiness, Compl. ¶ 104; (ii) that it omitted facts during the FAA certification process, *id.* ¶ 107; and (iii) that, after the Lion Air crash, it did not inform customers of the alleged threat posed by MCAS, the differences between the MAX and earlier model 737 airplanes, and the level of corrective action necessary, *id.* ¶ 108.

"It is well established under Illinois law that parties to a contract … do not owe a fiduciary duty to one another." *Siemer v. Quizno's Franchise Co. LLC*, 2008 WL 904874, at *7 (N.D. Ill. Mar. 31, 2008) (omissions). Also, the Complaint does not identify any specific "affirmative statement" that a Boeing employee "passe[d] off as the whole truth while omitting material facts that render[ed] the statement a misleading 'half-truth.'" *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009). The most the Complaint does is vaguely describe general statements by Boeing. But concealment by "half-truth" requires an "affirmative statement" that is presented to the plaintiff as "a comprehensive explanation." *Id.* Otherwise, fraudulent concealment could be claimed based on "every failure on a seller's part to volunteer information that might cause a buyer to reassess a transaction." *PXRE Reinsurance Co. v. Lumbermens Mut. Cas. Co.*, 342 F. Supp. 2d 752, 758 (N.D. Ill. 2004).

**Timing and reliance.** Timaero's claim that it was "induced" to contract based on the representations alleged also defies logic given the timelines at issue. In the Seventh Circuit, courts may determine whether reliance was reasonable as a matter of law where, as here, "no trier of fact could find that it was reasonable to rely on the alleged statements or when only one conclusion can be drawn." *Cozzi Iron & Metal, Inc. v. U.S. Office Equip., Inc.*, 250 F.3d 570, 574 (7th Cir. 2001). Timaero and Boeing signed the Purchase Agreement in 2014. Compl. ¶ 11. Beyond "mere commendation[s]" about airworthiness and safety at the time the parties executed the Purchase Agreement—which are not actionable, *see Prime Leasing, Inc. v. Kendig*, 773 N.E.2d 84, 92-93 (Ill. App. Ct. 2002) (omissions), and nowhere close to specific allegations of fraud, as explained above—the remainder of the Complaint relates to purported misrepresentations about MCAS issues *to the FAA or others* (not Timaero) *after* 2014. *See, e.g.*, Compl. ¶¶ 30, 37-39, 43. The Complaint thus fails to allege any concrete "facts which suggest that [Timaero]

plausibly relied on [Boeing's] alleged misrepresentation[s]" when purchasing 737 MAX airplanes in 2014. *Sabrina Roppo v. Travelers Commercial Ins. Co.*, 869 F.3d 568, 591 (7th Cir. 2017).

Moreover, the allegations concerning representations to the FAA or others do not include any facts indicating an intent to affect or deceive Timaero, much less that such an intent was achieved. With one exception, all of the parties' Supplemental Agreements were entered into before the October 2018 Lion Air crash. Supplemental Agreement No. 7, which the parties executed in November 2018, has no bearing on the issues relevant to whether Boeing fraudulently induced Timaero into signing the Purchase Agreement; rather, it detailed credit memoranda that would be issued when certain events, such as airplane delivery, occurred. And in all events, there is no way that Boeing could have made any representations to Timaero after the 2018 Lion Air accident that "induced" the 2014 Purchase Agreement four years earlier—or any Supplemental Agreements relevant here.

Timaero also fails to allege facts establishing a timeline that could plausibly support its secondary claim of being induced to make advance payments under the Purchase Agreement. Timaero omits any facts establishing *when* it made any advance payments, much less facts indicating that it did so after—*and because of*—the representations on which it claims to have relied. *See, e.g.*, Compl. ¶¶ 16, 109. Additionally, nowhere does the Complaint allege facts regarding any substantive interactions between Timaero and Boeing after they signed Supplemental Agreement No. 7 in November 2018. And if Timaero's only "fraudulent inducement" involved continued compliance with its advance payment obligations under the Purchase Agreement, that theory fails on its face because "there *is* no [fraud] claim when the plaintiff *is* induced to do something it was already obligated to do." *Marc Dev., Inc. v. Wolin*, 904 F. Supp. 777, 793 (N.D. Ill. 1995); *Louis Glunz Beer, Inc. v. Martlet Importing Co.*, 864 F. Supp. 810, 816 (N.D. Ill. 1994); *Sinclair v. State Bank of Jerseyville*, 566 N.E.2d 44, 45 (Ill. App. Ct. 1991). Because

Timaero fails to allege with particularity, or plausibly, any misrepresentation of material fact, fraudulent intent, or reasonable reliance before it signed the Purchase Agreement or made advance payments thereunder, Timaero's claim for fraudulent inducement should be dismissed under Rule 12(b)(6).

## II.     Count IV fails to state a plausible claim for tortious interference with a business expectancy.

Timaero's tortious interference claim also should be dismissed because it relies on the same implausible, conclusory allegations underlying the fraudulent inducement claim. Whereas Count I alleges that Boeing intentionally sought to sell Timaero unsafe planes, Count IV goes further and alleges that Boeing's intent in doing so was to sabotage Timaero and undermine its ability to lease Boeing planes to unspecified third parties. Compl. ¶¶ 133-41. The Complaint supplies no plausible basis for inferring such a malicious intent, and particularity is also lacking to the extent a theory of fraud is the premise of the claim.

Specifically, Count IV fails to plausibly allege two of the four elements under Illinois law for tortious interference with business expectancy.[4] Those elements are: "(1) a reasonable expectancy of entering into a valid business relationship, (2) the defendant's knowledge of the expectancy, (3) an intentional and unjustified interference by the defendant that induced or caused a breach or termination of the expectancy, and (4) damage to the plaintiff resulting from the defendant's interference." *Foster v. Principal Life Ins. Co.*, 806 F.3d 967, 971 (7th Cir. 2015) (omissions). Timaero fails to adequately plead the first and third elements:

**A specific business relationship.** A claim for tortious interference must identify "a business expectancy with a *specific* third party." *Assoc. Underwriters of Am. Agency, Inc. v. McCarthy*,

---

[4] There is no meaningful conflict between Illinois and Washington law on tortious interference with business expectancy. *Compare Anderson v. Vanden Dorpel*, 667 N.E.2d 1296, 1299 (1996), *with Leingang v. Pierce Cty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997).

826 N.E.2d 1160, 1169 (Ill. App. Ct. 2005) (emphasis added; omissions). Specific identification is crucial. Otherwise, "liability under a theory of tortious interference with prospective business expectancies would be virtually without limit and impossible to calculate." *Chicago's Pizza, Inc. v. Chicago's Pizza Franchise Ltd.*, 893 N.E.2d 981, 993 (Ill. App. Ct. 2008) (omissions). Timaero fails to meet this requirement, alleging only that it "possessed valid business expectancies" to "sell or lease 737 MAX aircraft to its customers." Compl. ¶ 134.

**Purposeful interference.** Count IV also fails to sufficiently allege the third element. First, it does not allege any "action by the defendant directed towards [the specifically identified] third party" with whom Timaero had a business expectation. *McCarthy*, 826 N.E.2d at 1169. "[T]he requirement of action toward third parties" is essential because it "prevents every breach of contract from becoming a tort claim for expectancies lost as a result of the breach." *Douglas Theater Corp.*, 681 N.E.2d at 570. Moreover, Count IV alleges no factual details establishing that Boeing acted "intentionally with the aim of injuring" the plaintiff's expectancy. *Romanek v. Connelly*, 753 N.E.2d 1062, 1073 (Ill. App. Ct. 2001). Timaero's threadbare assertions that Boeing "knew" its actions would harm Timaero and "was motivated by … greed," Compl. ¶¶ 137-38, do not "raise a right to relief above the speculative level." *Bell Atl.*, 550 U.S. at 555. Mere knowledge of future harm does not establish that Boeing "acted intentionally with the aim of injuring" Timaero. *Romanek*, 324 Ill. App. 3d at 406. Indeed, the Complaint is devoid of any fact indicating that Boeing wanted to undercut its own customer's ability to lease Boeing airplanes—an inherently implausible proposition given the long-term costs such a scheme would impose on Boeing. *See City of Livonia*, 711 F.3d at 758.

## III.    Count III fails to state a claim for breach of the covenant of good faith and fair dealing.

Count III alleges that Boeing violated the "covenant of good faith and fair dealing under

Washington law."[5] Compl. ¶ 127. But Washington law is clear that "the duty of good faith and fair dealing" applies only "when one party has discretionary authority to determine a future contract term." *Rekhter v. State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014). That is because the duty is "derivative … of specific contract obligations." *Hard2Find Accessories, Inc. v. Amazon.com, Inc,* 691 F. App'x 406, 408 (9th Cir. 2017) (omissions). The Complaint identifies no such contract term as the basis for Count III. *See* Compl. ¶¶ 126-32. Instead, it simply asserts, without support, that Boeing's actions "were contrary to the standards of good faith and fair dealing." *Id.* ¶ 128. Such an unfounded assertion is an attempt to impose the very kind of "free-floating obligation of good faith on the parties" that the Washington Supreme Court has rejected. *Rekhter*, 323 P.3d at 1041. And to the extent the various fraud theories are the premise of the claim, they fail for lack of particularity as discussed above.

Additionally, Count III is subject to dismissal because it is "duplicative" of the breach of contract claim in Count II. *Barrow v. Blouin*, 38 F. Supp. 3d 916, 920 (N.D. Ill. 2014). Both counts "involve the same operative facts and same injury" and "require proof of essentially the same elements," *id.*, because each alleges Boeing failed to deliver on time airplanes that comply with FAA regulations. *Compare* Compl. ¶¶ 116, 118, *with id.* ¶¶ 128-29; *see also Superwood Co. v. Slam Brands, Inc.*, 2013 WL 6008489, at *14 (W.D. Wash. Nov. 13, 2013) (finding such claim was "duplicative of a breach of contract claim"). Courts routinely dismiss such claims as duplicative of breach of contract claims. *See Curran v. Bayer Healthcare LLC*, 2019 WL 398685, at *4 (N.D. Ill. Jan. 31, 2019) (collecting cases).

## CONCLUSION

For the foregoing reasons, this Court should dismiss Counts I, III, and IV with prejudice.

---

[5] Boeing agrees with Timaero's invocation of Washington law as the basis for Count III. No choice-of-law analysis is needed "unless the parties disagree on which state's law applies." *Wood v. Mid-Valley Inc.*, 942 F.2d 425, 427 (7th Cir. 1991).

Respectfully Submitted,


By:   /s/ Kathleen A. Stetsko
        One of the Attorneys for
        The Boeing Company

Eric B. Wolff
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Fax: 206.359.9000
Email: EWolff@perkinscoie.com

Kathleen A. Stetsko
PERKINS COIE LLP
131 S Dearborn Street # 1700
Telephone: 312.324.8400
Fax: 312.324.9400
Email: KStetsko@perkinscoie.com

Dan K. Webb
Christopher B. Essig
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
Email: DWebb@winston.com
Email: CEssig@winston.com

## CERTIFICATE OF SERVICE

I, Kathleen A. Stetsko, certify that on February 6, 2020, I electronically filed the foregoing **MEMORANDUM IN SUPPORT OF BOEING'S MOTION TO DISMISS** with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

/s/    Kathleen A. Stetsko
PERKINS COIE LLP
131 South Dearborn Street, Suite No. 1700
Chicago, Illinois 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400
