**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMAERO IRELAND LIMITED, | No. 19-cv-08234 |
| Plaintiff, | Honorable Rebecca R. Pallmeyer |
| v. | Magistrate Judge Jeffrey T. Gilbert |
| THE BOEING COMPANY, | |
| Defendant. | |

**BOEING'S MEMORANDUM
IN SUPPORT OF ITS MOTION TO DISMISS
COUNT I IN FULL AND COUNT II IN PART**

# TABLE OF CONTENTS

**Page**

INTRODUCTION ............................................................................................ 1

BACKGROUND ............................................................................................. 2

    I.    Relevant Allegations ......................................................... 2

    II.    Timaero's Original Complaint versus Amended Complaint ..................... 3

LEGAL STANDARD ...................................................................................... 4

ARGUMENT .................................................................................................. 5

    I.    Count I fails to state a fraud claim under Rule 9(b) and Rule 8(a) ............ 5

        A.    Count I fails to plead either fraud claim with particularity ............ 6

            1.    Allegations regarding fraudulent inducement .................... 7

            2.    Allegations regarding fraud after the Purchase Agreement ......................................................... 7

        B.    Count I fails to plead either fraud claim with plausibility ............ 8

            1.    Timaero's fraudulent inducement claim is not plausible ...................................................................... 9

                a.    Timaero fails to plead a plausible false statement ...................................................... 10

                b.    No plausible allegations of fraudulent intent ....... 11

            2.    Timaero's post-2014 fraud clam is not plausible ............. 13

                a.    Continued contract performance is not reliance ............................................................ 13

                b.    No ongoing duty of disclosure ............................ 14

                c.    No reliance on disclosures to others ................... 14

    II.    Count II fails to state a claim for good faith and fair dealing ................. 15

CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

Page

CASES

*3700 S. Kedzie Bldg. Corp.* v. *Chi. Steel Foundry Co.*,
    156 N.E.2d 618 (Ill. App. Ct. 1959) ........................................................................10

*A.I. Credit Corp.* v. *Hartford Comput. Grp., Inc.*,
    847 F. Supp. 588 (N.D. Ill. 1994) ..........................................................................6, 7

*Abazari* v. *Rosalind Franklin Univ. of Med. & Sci.*,
    40 N.E.3d 264 (Ill. App. Ct. 2015) ..........................................................................10

*Addison* v. *Distinctive Homes, Ltd.*,
    836 N.E.2d 88 (Ill App. Ct. 2005) ..........................................................................14

*All Am. Roofing, Inc.* v. *Zurich Am. Ins. Co.*,
    934 N.E.2d 679 (Ill. App. Ct. 2010) ..........................................................................8

*Apotex Corp.* v. *Merck & Co.*,
    229 F.R.D. 142 (N.D. Ill. 2005) ..............................................................................11

*Ashcroft* v. *Iqbal*,
    556 U.S. 662 (2009) ............................................................................................4, 12

*Avery* v. *State Farm Mut. Auto. Ins. Co.*,
    835 N.E.2d 801 (Ill. 2005) ......................................................................................10

*Barrington Press, Inc.* v. *Morey*,
    752 F.2d 307 (7th Cir. 1985) ...................................................................................10

*Bell Atl. Corp.* v. *Twombly*,
    550 U.S. 544 (2007) ..................................................................................................4

*Berger* v. *NCAA*,
    843 F.3d 285 (7th Cir. 2016) .....................................................................................8

*Bogie* v. *Rosenberg*,
    705 F.3d 603 (7th Cir. 2013) .....................................................................................4

*Bower* v. *Jones*,
    978 F.2d 1004 (7th Cir. 1992) .......................................................................9, 10, 11

*Burton* v. *R.J. Reynolds*,
    397 F.3d 906 (10th Cir. 2005) .................................................................................14

## TABLE OF AUTHORITIES
(Continued)

Page

*Camasta* v. *Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ........................................................................................4

*Cannon* v. *Burge*,
    752 F.3d 1079 (7th Cir. 2014) .....................................................................................9

*City of Livonia Emps. Ret. Sys.* v. *Boeing Co.*,
    711 F.3d 754 (7th Cir. 2013) ..........................................................................6, 9, 12, 14

*Cohen* v. *Am. Sec. Ins. Co.*,
    735 F.3d 601 (7th Cir. 2013) ........................................................................................5

*Colagrossi* v. *Royal Bank of Scotl.*,
    57 N.E.3d 601 (Ill. App. Ct. 2016) ..............................................................................5

*Connick* v. *Suzuki Motor Co.*,
    675 N.E.2d 584 (Ill. 1996) ..........................................................................................13

*Consolidation Servs., Inc.* v. *KeyBank Nat'l Ass'n*,
    185 F.3d 817 (7th Cir. 1999) ........................................................................................1

*Crichton* v. *Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009) ......................................................................................11

*Deschepper* v. *Midwest Wine & Spirits, Inc.*,
    84 F. Supp. 3d 767 (N.D. Ill. 2015) .............................................................................6

*DiLeo* v. *Ernst & Young*,
    901 F.2d 624 (7th Cir. 1990) ..................................................................................8, 12

*Elcon Constr., Inc.* v. *E. Wash. Univ.*,
    273 P.3d 965 (Wash. 2012)...........................................................................................5

*FDIC* v. *W.R. Grace & Co.*,
    877 F.2d 614 (7th Cir. 1989) ......................................................................................14

*Fifth Third Mortg. Co.* v. *Kaufman*,
    934 F.3d 585 (7th Cir. 2019) ...............................................................................5, 8, 14

*Frerck* v. *Pearson Educ., Inc.*,
    63 F. Supp. 3d 882 (N.D. Ill. 2014) .......................................................................9, 14

*Graue Mill Dev. Corp.* v. *Colonial Bank & Tr. Co.*,
    927 F.2d 988 (7th Cir. 1991) ........................................................................................7

## TABLE OF AUTHORITIES
(Continued)

**Page**

*Great Pac. Sec.* v. *Barclays Capital, Inc.*,
   743 F. App'x 780 (9th Cir. 2018) ................................................................6

*Hard2Find Accessories, Inc.* v. *Amazon.com, Inc.*,
   691 F. App'x 406 (9th Cir. 2017) ...............................................................15

*Kupper* v. *Powers*,
   71 N.E.3d 347 (Ill. App. Ct. 2017) ...........................................................10

*Lefebvre Intergraphics, Inc.* v. *Sanden Mach. Ltd.*,
   946 F. Supp. 1358 (N.D. Ill. 1996) ...............................................................9

*Louis Glunz Beer, Inc.* v. *Martlet Importing Co.*,
   864 F. Supp. 810 (N.D. Ill. 1994) ...............................................................13

*Marc Dev., Inc.* v. *Wolin*,
   904 F. Supp. 777 (N.D. Ill. 1995) ...............................................................13

*Menzies* v. *Seyfarth Shaw LLP*,
   943 F.3d 328 (7th Cir. 2019) ..................................................................6, 8

*Microsoft Corp.* v. *Motorola, Inc.*,
   963 F. Supp. 2d 1176 (W.D. Wash. 2013) ..................................................15

*People ex rel. Peters* v. *Murphy-Knight*,
   618 N.E.2d 459 (Ill. App. Ct. 1993) ............................................................9

*Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.* v. *Walgreen Co.*,
   631 F.3d 436 (7th Cir. 2011) .......................................................................5

*Rekhter* v. *State, Dep't of Soc. & Health Servs.*,
   323 P.3d 1036 (Wash. 2014) ......................................................................15

*Rocha* v. *Rudd*,
   826 F.3d 905 (7th Cir. 2016) .......................................................................8

*Sinclair* v. *State Bank of Jerseyville*,
   566 N.E.2d 44 (Ill. App. Ct. 1991) ............................................................13

*Tricontinental Indus., Ltd.* v. *PricewaterhouseCoopers, LLP*,
   475 F.3d 824 (7th Cir. 2007) .....................................................................12

*Vicom, Inc.* v. *Harbridge Merch. Servs.*,
   20 F.3d 771 (7th Cir. 1994) .........................................................................5

# TABLE OF AUTHORITIES
### (Continued)

**Page**

*Webb* v. *Frawley*,
    906 F.3d 569 (7th Cir. 2018) ..................................................................1, 5

*Williams* v. *WMX Techs., Inc.*,
    112 F.3d 175 (5th Cir. 1997) ....................................................................1

## RULES

Fed. R. Civ. P. 8(a) ...............................................................................1, 4, 5, 8

Fed. R. Civ. P. 9(b) ........................................................................1, 3, 5, 6, 7, 8

Fed. R. Civ. P. 12(b)(6)...........................................................................3

## OTHER AUTHORITIES

27 Williston on Contracts § 69:32 (4th ed. 1993).............................................13

## **INTRODUCTION**

As Timaero's Amended Complaint makes clear, this is a breach of contract case, and Timaero's fraud and good faith and fair dealing claims should be dismissed. Although the Amended Complaint reproduces multiple news articles and public reports regarding the 737 MAX generally, Timaero's case still boils down to the claim that Boeing promised to sell Timaero MAX airplanes with certain characteristics, and failed to deliver on that promise. That is an archetypal breach of contract claim, and only that claim should proceed. The rest of the claims fail as a matter of law.

Although the Amended Complaint is much longer than the Original Complaint, it is just as legally deficient; if anything, Timaero's decision to pad its allegations with lengthy block quotes from public reports betrays how few particulars it alleges about its own transaction with Boeing. *See Williams* v. *WMX Techs., Inc.*, 112 F.3d 175, 178 (5th Cir. 1997) ("A complaint can be long-winded, even prolix, without pleading with particularity. Indeed, such a garrulous style is not an uncommon mask for an absence of detail."). Timaero's generalized and far-fetched fraud allegations fail to heed the Seventh Circuit's admonition against trying to "turn every breach of contract into a fraud." *Consolidation Servs., Inc.* v. *KeyBank Nat'l Ass'n*, 185 F.3d 817, 823 (7th Cir. 1999).

Timaero's fraud claims fail for two independent reasons: they lack the particularity required by Rule 9(b), and they lack the plausibility required by Rule 8(a). Rule 9(b) requires that fraud claims allege "the who, what, when, where, and how of the fraud," *Webb* v. *Frawley*, 906 F.3d 569, 576 (7th Cir. 2018) (omissions), but as explained below, the Amended Complaint provides none of those details. And Timaero also fails to plead each element of its fraud claims with the plausibility required by Rule 8(a). Among other deficiencies with its pleading, Timaero alleges that it was misled by the type of general and predictive statements that cannot serve as the basis for fraud under Illinois law, and it relies on a theory of collective corporate fraudulent intent that Illinois does not recognize.

Finally, the Amended Complaint's reorganization of Timaero's good faith and fair dealing claim as part of the breach of contract count cures none of the legal flaws that Boeing identified in its original motion to dismiss.  Accordingly, that claim should be dismissed as well.

## BACKGROUND

Timaero purchases airplanes to lease and resell to airlines. Compl. ¶ 1.[1] In January 2014, when the 737 MAX was still under development, Timaero signed a Purchase Agreement committing to buy twenty 737 MAX airplanes from Boeing. Compl. ¶ 11. Under the terms of the Agreement, the first delivery would occur nearly five years later, in December 2018. *Id.* ¶ 17. In September 2016, the parties signed Supplemental Agreement No. 1, which added two airplanes to Timaero's purchase, for a total of twenty-two. *Id.* ¶ 14. Between August 2017 and November 2018, the parties signed six more Supplemental Agreements (Nos. 2-7), which addressed various minor details such as scheduling adjustments and credit memoranda. *Id.* ¶ 15. On October 29, 2018, just before the parties executed their final Supplemental Agreement, a 737 MAX operated by Lion Air tragically crashed. *Id.* ¶ 105. Two months later, in December 2018, Timaero accepted delivery of its first two 737 MAX airplanes. *Id.* ¶ 17. In March 2019, following the crash of a 737 MAX airplane operated by Ethiopian Airlines, aviation authorities worldwide suspended MAX operations. *Id.* ¶¶ 18, 106. In December 2019, Timaero brought this suit claiming breach of contract and fraud. *See* Dkt. 1.

## I.    Relevant Allegations

As relevant to its fraud and good faith and fair dealing claims, Timaero alleges the following.[2] Boeing's Board of Directors authorized the launch of the 737 MAX program in August 2011. Compl. ¶ 24. In 2012, preliminary testing showed that the 737 MAX's larger engines, and their position on the plane's wings, created a tendency for the plane's nose to pitch upward under extreme flight conditions, involving a high "angle of attack" and high speeds. *Id.* ¶¶ 51-52, 58. To

---

[1] Because the First Amended Complaint is now the operative complaint, *see* Dkts. 42, 51, it will be cited as "Compl. ¶ __" for brevity's sake. The Original Complaint is cited as "Dkt. 1 ¶ __."

[2] The significant majority of Timaero's allegations concern matters that have nothing to do with Timaero or the parties' interactions: internal communications among Boeing technical personnel; communications with the FAA and other regulatory authorities; and block quotes from various reports about the MAX's design and certification process.

address this potential issue, Boeing added a function called the Maneuvering Characteristics Augmentation System ("MCAS") to the aircraft's flight controls software to automatically adjust the plane's nose downward in that narrow set of circumstances. *Id.* ¶¶ 52, 55. As Timaero acknowledges, the "original[]" MCAS "design[]" had "significant safety features and fail-safes." *Id.* ¶ 58.

During the summer and fall of 2013, representatives from Boeing and Timaero met on a number of occasions to discuss a possible 737 MAX transaction. Timaero alleges that, during these meetings, Boeing personnel "represented that the 737 MAX would have class-leading fuel efficiency, would not require additional simulator training for pilots already certified to fly its predecessor 737 NG …, would be easily saleable and leasable, a good value for Timaero, and would be airworthy, safe, free from design defects, and in compliance with appropriate aviation regulations." Compl. ¶ 41. Timaero further alleges that, during this same period in 2013, Boeing sent Timaero a draft press release and business proposals highlighting the MAX's fuel efficiency. *Id.* ¶¶ 38, 40. In January 2014, the parties entered into their Purchase Agreement. *Id.* ¶ 11. Timaero alleges that, in subsequent meetings in January and March 2014, "[o]ne or more" Boeing representatives repeated the exact same representations from before the contract signing about the MAX's fuel efficiency, the lack of a simulator training requirement for pilots transitioning from the 737 NG, and other features. *Id.* ¶ 47.

Approximately two years later, in 2016, "test pilots" conducting MAX flight testing "identified the same pitch problems that led to the development of MCAS, but this time at low-speed flight." *Id.* ¶ 61. As a result, Boeing modified the design of MCAS to adjust the nose of the plane downward when it encountered high angles of attack at low speeds as well. *Id.* ¶ 61. Timaero alleges that "Boeing never informed the FAA or its customers, including Timaero, of the expansion of MCAS's authority in low-speed situations." *Id.* ¶ 65.

## II.    Timaero's Original Complaint versus Amended Complaint

Timaero's Original Complaint raised four causes of action: Fraudulent Inducement, Breach of Contract, Breach of the Duty of Good Faith and Fair Dealing, and Tortious Interference with a Business Expectancy. Dkt. 1 ¶¶ 102-41. Boeing moved, under Rules 9(b) and 12(b)(6), to dismiss

all counts except the breach of contract claim as fatally lacking the required particularity and plausibility. Dkts. 30-31. Timaero never responded to that motion, but instead filed its Amended Complaint, adding some 37 pages of material, often block quoting public reports. *See* Dkts. 42, 44.

The Amended Complaint has two counts instead of four—but essentially raises four separate claims. Compl. ¶¶ 165-98. Count I alleges "Fraud" rather than "Fraudulent Inducement," and asserts two fraud claims. Compl. at p. 59. The first is effectively fraudulent inducement: it alleges that Boeing induced Timaero to enter into the Purchase Agreement in 2014 by making various promises about the qualities the 737 MAX would have, such as being "safe" and "airworthy," not requiring additional simulator training for pilots, and being compliant with FAA regulations. *Id.* ¶¶ 168, 174. The second is fraudulent concealment: that Boeing made "false representations and omissions to Timaero after signing the Purchase Agreement," including that "Boeing knew there was a serious risk of the 737 MAX crashing and knew that MCAS was dangerous" yet did not disclose those issues to Timaero. *Id.* ¶¶ 170, 172. Count II combines the Original Complaint's claims for breach of contract and breach of good faith and fair dealing into a single "Breach of Contract" cause of action. *Id.* ¶¶ 183-98. The Amended Complaint abandons the claim of Tortious Interference with a Business Expectancy. *Compare id.* ¶¶ 165-98, *with* Dkt. 1 ¶¶ 133-41. As with the Original Complaint, the Amended Complaint's claims of fraud and breach of the duty of good faith and fair dealing are insufficient as a matter of law and must be dismissed.

## LEGAL STANDARD

Under Rule 8(a), complaints must allege "enough factual information to 'state a claim to relief that is plausible on its face' and 'raise a right to relief above the speculative level.'" *Camasta* v. *Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736 (7th Cir. 2014) (quoting *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 555, 570 (2007)). Well-pleaded facts "are taken as true." *Id.* But courts need not accept any "legal conclusions," "[t]hreadbare recitals" of a claim's elements, or "naked assertion[s]" of liability. *Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) (omissions). Courts can consider facts in "exhibits attached to the complaint or documents referenced in the pleading." *Bogie* v. *Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013) (omissions).

4

Under Rule 9(b), claims "alleging fraud" must also provide "the who, what, when, where, and how of the fraud." *Webb*, 906 F.3d at 576 (omissions). The heightened standard serves three important purposes: "(1) protecting a defendant's reputation from harm; (2) minimizing 'strike suits' and 'fishing expeditions'; and (3) providing notice of the claim." *Vicom, Inc.* v. *Harbridge Merch. Servs.*, 20 F.3d 771, 777 (7th Cir. 1994) (omissions). Rule 9(b)'s particularity requirement "is designed to discourage a 'sue first, ask questions later' philosophy." *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Tr.* v. *Walgreen Co.*, 631 F.3d 436, 441 (7th Cir. 2011) (omissions).

## ARGUMENT

### I.    Count I fails to state a fraud claim under Rule 9(b) and Rule 8(a).

Count I fails to meet the particularity requirement of Rule 9(b) and the plausibility requirement of Rule 8(a). For each reason independently, Count I fails as a matter of law.

As noted above, Count I presents two fraud claims: that Boeing fraudulently induced Timaero into signing the Purchase Agreement in 2014, Compl. ¶¶ 165-69, and that Boeing fraudulently misrepresented or concealed facts from Timaero in the years afterward, *id.* ¶¶ 170-74. Under Illinois law,[3] a fraud claim has five elements: "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement; and (5) damage to the other party resulting from such reliance." *Fifth Third Mortg. Co.* v. *Kaufman*, 934 F.3d 585, 588 (7th Cir. 2019) (omissions). Fraudulent concealment has the same basic elements, except the defendant must have "concealed a material fact when he was under a duty to disclose that fact to plaintiff." *Cohen* v. *Am. Sec. Ins. Co.*, 735 F.3d 601, 613 (7th Cir. 2013) (omissions).

---

[3] Illinois law governs Timaero's fraud claims. The contract chooses Washington law, but only for contract questions. Applying Illinois choice-of-law principles, Illinois law applies regarding fraud because there is no meaningful conflict between Illinois and Washington law on fraud. *Compare Colagrossi* v. *Royal Bank of Scotl.*, 57 N.E.3d 601, 611 (Ill. App. Ct. 2016), *with Elcon Constr., Inc.* v. *E. Wash. Univ.*, 273 P.3d 965, 970 (Wash. 2012).

### A.    Count I fails to plead either fraud claim with particularity.

Timaero fails to allege the fraud elements with the required particularity as to either its fraudulent inducement or fraudulent concealment claim. "Rule 9(b) requires a plaintiff to provide *precision* and some measure of *substantiation* to *each* fraud allegation." *Menzies* v. *Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (emphasis added; omissions). But Timaero did the opposite with its Amended Complaint. Rather than using its amendment to clarify its fraud claims and add particularized details to substantiate each allegation, Timaero chose to pad the Amended Complaint with bulk quotations from myriad public documents that generally relate to the 737 MAX, but have nothing to do with the business dealings between the parties. As a result, its amended fraud allegations are, if anything, even less cohesive and particularized than in its Original Complaint. Timaero's "shotgun pleading," where it "incorporate[s] the allegations in all the proceeding [sic] paragraphs into each fraud count," does not "satisfy Rule 9(b)'s particularity requirement." *Deschepper* v. *Midwest Wine & Spirits, Inc.*, 84 F. Supp. 3d 767, 783 (N.D. Ill. 2015).

Strikingly, even with the addition of 37 pages of new material, the Amended Complaint still lacks the most basic details about the specific interactions on which the fraud claims are based. For example, in the section labeled "Non-Exhaustive Examples of Boeing's Misrepresentations and/or Omissions"—which spans 14 paragraphs over 3 pages—Timaero fails to identify any particular statement by Boeing to Timaero, any particular Boeing employee who made it, or any particular Timaero employee who received it and how that employee acted on it. *See* Compl. ¶¶ 160(a)-(n); *see also City of Livonia Emps. Ret. Sys.* v. *Boeing Co.*, 711 F.3d 754, 759 (7th Cir. 2013) (the complaint must identify the "employee of Boeing" who made "false statements" that were "within the scope of his employment" and "knew they were false"); *Great Pac. Sec.* v. *Barclays Capital, Inc.*, 743 F. App'x 780, 783 (9th Cir. 2018) (the complaint must identify the plaintiff's employees who "received" and "relied on" the alleged false statements).

Courts have made clear that such lack of particularized detail is inexcusable, because plaintiffs are in full control of those facts and able to identify from the outset exactly what statements they claim to have relied on, who made them, and when. *See A.I. Credit Corp.* v. *Hartford Comput.*

*Grp., Inc.*, 847 F. Supp. 588, 597 (N.D. Ill. 1994) ("There is no excuse for such vagueness, since …
these representations were made to the Plaintiffs themselves.").

### 1.    Allegations regarding fraudulent inducement.

For its fraudulent inducement claim, the closest Timaero comes to particularity are the alle-
gations regarding several meetings and emails it says occurred in mid-2013. *See* Compl. ¶¶ 37-40.
But the only specific statements that Timaero identifies during that period relate to fuel economy,
which has nothing to do with the fraud Timaero alleges. *See id.* ¶ 38 (quoting a draft press release
that read: "[a]irlines operating the 737 MAX will see a 13 percent fuel-use improvement over
today's most fuel efficient single-aisle airplanes"); *id.* ¶ 40 ("Boeing further marketed the 737
MAX's advantages, including its fuel efficiency, in business proposals sent via email").[4] The other
alleged statements in that period are described "only in vague and general terms," *A.I. Credit
Corp.*, 847 F. Supp. at 597, with Timaero relying entirely on a single generic sentence to summa-
rize the content of Boeing's purported misrepresentations. *See* Compl. ¶ 41 ("Boeing's represent-
atives … represented that the 737 MAX would have class-leading fuel efficiency, would not re-
quire additional simulator training for pilots already certified to fly its predecessor …, would be
easily saleable and leasable, a good value for Timaero, and would be airworthy, safe, free from
design defects, and in compliance with appropriate aviation regulations."). Without providing the
"*specific* content" required by Rule 9(b), Timaero's allegations of fraudulent inducement must fail.
*Graue Mill Dev. Corp.* v. *Colonial Bank & Tr. Co.*, 927 F.2d 988, 993 (7th Cir. 1991).

### 2.    Allegations regarding fraud after the Purchase Agreement

For its claim of fraud that occurred after the Purchase Agreement, Timaero provides no de-
tails whatsoever. For example, Timaero alleges that Boeing "continued to make the same know-
ingly false representations and omissions to Timaero after signing the Purchase Agreement,"

---

[4] Timaero strangely mentions Boeing's representations about fuel efficiency throughout its
complaint, *see* Compl. ¶¶ 7, 34, 40, 174, but it does not allege that the 737 MAX is not fuel effi-
cient. Its fraud claim cannot be based on these statements, as it has not specified how they were
false.

Compl. ¶ 170, relying on exactly the same boilerplate formulation that it used in describing Boeing's alleged pre-signing misrepresentations, *id.* ¶ 41, and again without providing the particularized allegations necessary to satisfy Rule 9(b). Timaero also alleges that Boeing "concealed the fact that the 737 MAX was likely to crash from Timaero." *Id.* ¶ 172. None of these allegations are sufficient, as they "fail[] to provide the specific names, dates, times, or content of the misrepresentations or omissions." *Rocha* v. *Rudd*, 826 F.3d 905, 911 (7th Cir. 2016). This is fatal to Timaero's post-January 2014 claim, because plaintiffs must satisfy Rule 9(b) for "*each* fraud allegation." *Menzies*, 943 F.3d at 338 (emphasis added).

In sum, while Timaero recites page after page regarding issues that arose during the development and certification of the 737 MAX, *see* Compl. ¶¶ 10-158, it only conclusorily alleges that Boeing hid those issues from Timaero in a scheme to defraud, *see id.* ¶¶ 169-73. That is precisely the kind of "fraud by hindsight" that Rule 9(b) precludes by requiring plaintiffs to *particularize* their allegations. *DiLeo* v. *Ernst & Young*, 901 F.2d 624, 628 (7th Cir. 1990) (omissions). Timaero's failure to do so here requires dismissal of its fraud claims.

### B. Count I fails to plead either fraud claim with plausibility.

In order to plead a viable claim of fraud under Rule 8(a), a plaintiff must allege claims of fraud that are plausible. As noted above, fraud claims under Illinois law have five elements, *see Fifth Third Mortg.*, 934 F.3d at 588, and the factual allegations must "plausibly suggest each of these elements." *Berger* v. *NCAA*, 843 F.3d 285, 289 (7th Cir. 2016) (omissions). As shown below, Timaero fails to plausibly allege that anyone at Boeing made a material false statement (or omission), but alleges only generalized predictions by Boeing of the 737 MAX's qualities that are nonactionable as a matter of law. Compl. ¶ 168.

Moreover, Timaero fails to plausibly allege the element of scienter. Timaero's claim can survive only if it has pleaded facts plausibly suggesting that the Boeing employees "responsible for [Timaero's] account[] made the statement" or omission "at issue knowing or believing it to be untrue." *All Am. Roofing, Inc.* v. *Zurich Am. Ins. Co.*, 934 N.E.2d 679, 690 (Ill. App. Ct. 2010). To satisfy this element, a plaintiff cannot weave together the knowledge of different employees to

create a composite of the requisite intent. Timaero attempts this repeatedly, alleging that "Boeing" as a whole "knew" about the MAX's alleged issues and yet "Boeing" as a whole "concealed" them from its customers. Compl. ¶ 172. But Illinois law does not recognize "collective corporate intent" for fraud; rather, it "demands an individual analysis" of specific employees' conduct. *Frerck* v. *Pearson Educ., Inc*., 63 F. Supp. 3d 882, 892-93 (N.D. Ill. 2014). Thus, in order to adequately plead scienter, Timaero must allege that the individual Boeing personnel who communicated with Timaero "actually" knew or "believed" their statements were false. *See Cannon* v. *Burge*, 752 F.3d 1079, 1091 n.7 (7th Cir. 2014) (omissions). Without such facts—and there are none in the Amended Complaint—there is "no fraud to impute either to them or to Boeing." *City of Livonia*, 711 F.3d at 759.

Timaero's allegations fail to overcome the plausibility threshold for both the falsity and scienter elements of its fraudulent inducement and fraudulent concealment claims. For these independent reasons, the fraud claims also fail.

### 1.    Timaero's fraudulent inducement claim is not plausible.

The essence of Timaero's pre-signing fraud allegations is that it was induced to sign the Purchase Agreement in January 2014 by Boeing's representations about the qualities the 737 MAX would have upon delivery years later. *See* Compl. ¶¶ 166-68, 174.

As Timaero acknowledges, however, in 2014 the MAX was still in development and years away from FAA certification and entry into service. *See* Compl. ¶ 25 (alleging that Boeing expected MAX development to take six years). Therefore, any representations about the MAX while it was being "designed and constructed" were "promises of future performance." *People ex rel. Peters* v. *Murphy-Knight*, 618 N.E.2d 459, 465 (Ill. App. Ct. 1993) (omissions); *Lefebvre Intergraphics, Inc.* v. *Sanden Mach. Ltd.*, 946 F. Supp. 1358, 1365 (N.D. Ill. 1996) (same). A fraud claim based on promises of future performance is a claim for "promissory fraud." *Bower* v. *Jones*, 978 F.2d 1004, 1011 (7th Cir. 1992). Such claims are "disfavored" under Illinois law, and "the burden on a plaintiff claiming promissory fraud is deliberately high." *Id.* at 1012. A plaintiff must

allege facts "establishing that the defendants *never intended* to [] perform[]" as promised, by iden-tifying "specific, objective manifestations of fraudulent intent." *Id.* (emphasis added; omissions). Timaero has not met that high standard.

### a.  Timaero fails to plead a plausible false statement.

Timaero fails to plausibly allege that anyone at Boeing made a material false statement (or omission). Instead, Timaero alleges only that Boeing made generalized predictions of the 737 MAX's qualities, such as that it "would be easily saleable and leasable, a good value for Timaero, and … safe." Compl. ¶ 168. But under Illinois law, statements about "the degree of quality of [a] product," such as promises of "high-quality," "expert worksmanship," or "that one's products are best," are "to be expected of a seller" and cannot support a fraud claim. *Avery* v. *State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846-47 (Ill. 2005) (omissions). That is especially so when they are "projections of future" products in development. *Abazari* v. *Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 273 (Ill. App. Ct. 2015) (omissions).

Timaero also points to alleged predictions that the FAA would approve "Level B non-simu-lator" pilot training requirements for the MAX and would conclude it was "airworthy" and "in compliance with appropriate aviation regulations." Compl. ¶¶ 167-68. These allegations cannot support Timaero's fraud claim for two reasons. First, statements about future determinations to be made by a governmental body like the FAA "cannot be considered as anything more than a pre-diction," *3700 S. Kedzie Bldg. Corp.* v. *Chi. Steel Foundry Co.*, 156 N.E.2d 618, 620 (Ill. App. Ct. 1959) (rejecting fraud claim based on seller's prediction of future tax assessments), and such pre-dictions "do not constitute actionable misrepresentations." *Id.*; *Barrington Press, Inc.* v. *Morey*, 752 F.2d 307, 310 n.1 (7th Cir. 1985) ("[P]rojections cannot ground a fraud claim...."). Second, statements about the FAA's regulatory determinations are "statements of law," like "statements of zoning or building code violations," cannot "sustain a [fraud] claim" even if "false." *Kupper* v. *Powers*, 71 N.E.3d 347, 354-55 (Ill. App. Ct. 2017).

Finally, Timaero has not plausibly alleged that Boeing fraudulently concealed facts during negotiation of the Purchase Agreement. To state a claim for fraudulent concealment where the

10

parties bargained at arm's length, a plaintiff must allege that the defendant made "an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth.'" *Crichton* v. *Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009). Timaero alleges no such all-encompassing statement, nor does it allege that anyone at Boeing made such a statement knowing it was false. Timaero's fraud claim instead is entirely premised on its allegation that Boeing made certain generalized predictions of the MAX's qualities, but such "a summary" does not create an affirmative duty to disclose. *Apotex Corp.* v. *Merck & Co.*, 229 F.R.D. 142, 149 (N.D. Ill. 2005).

### b.    No plausible allegations of fraudulent intent.

Timaero also fails to allege the kind of "specific, objective manifestations of fraudulent intent" necessary for promissory fraud. *Bower*, 978 F.2d at 1012 (omissions).

Timaero alleges only two pre-2014 facts to support its scienter allegations. First, Timaero alleges that the FAA communicated concerns to Boeing about the sufficiency of Level B computer-based training for the MAX as early as 2013. Compl. ¶¶ 32, 81. But the allegation that the FAA initially questioned the adequacy of training in 2013 does not mean that Boeing "never intended" to resolve the FAA's questions by the time it made its final training determination years later. *Bower*, 978 F.2d at 1012. Indeed, the 2015 internal FAA communication that Timaero relies upon for its allegation of what the FAA communicated to Boeing in 2013 explicitly notes that the training issues "have not yet been evaluated." Compl. ¶ 32. And Timaero does not allege that any of the individuals responsible for the alleged misstatements to Timaero about pilot training requirements were even aware of the FAA's purported concerns.

Second, Timaero points to wind tunnel tests conducted in 2012 that it says revealed a "tendency … to pitch up during extreme flight conditions." Compl. ¶¶ 52, 160(c)-(d), 167. But it does not allege that any of the Boeing representatives involved in the negotiations with Timaero were aware of this issue. Nor does it allege that they or anyone else at Boeing believed in 2014 that this issue would preclude Boeing from delivering on its design promises years later. To the contrary,

Timaero itself alleges that Boeing initially addressed the issue with an MCAS design that incorporated "significant safety features and fail-safes," *id.* ¶ 58, and that these were removed only with a redesign of the system in 2016, two years later, *id.*¶¶ 52, 58, 171.[5]

Moreover, Timaero presents no plausible theory of motive, i.e., what Boeing—not to mention the individuals allegedly involved—"had to gain" by the alleged fraud. *Tricontinental Indus., Ltd.* v. *PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007). The Seventh Circuit has refused to infer fraudulent intent where the short-term benefit of the alleged fraud pales in comparison to the long-term damage it would do. *Id.* For Boeing, a reputation for safety is its "greatest asset." *Id.* (omissions). Yet Timaero alleges that Boeing engaged in a scheme that it knew would "permanently compromise[] the safety and reputation of the 737 MAX" in order "to retain its market share against Airbus." Compl. ¶¶ 24, 160(e). That defies "common sense." *Iqbal*, 556 U.S. at 679. "It would have been irrational" to concoct a scheme that, if discovered, would bring "a halt to" all MAX sales, and indulging such a "ready inference[] of irrationality would too easily allow" fraud claims for nearly all alleged product defects. *DiLeo*, 901 F.2d at 629. Also, the parties' contract requires Boeing to provide a four-year warranty for each aircraft, covering defects "at no charge to Customer." *See* Compl. ¶ 12 (referencing AGTA). Committing to bear such costs is inconsistent with a premeditated scheme to develop and deliver a plane with "design defects." Compl. ¶ 168.

The Seventh Circuit has previously recognized the implausibility that Boeing would intentionally embark upon a fraud related to airplane safety that "would undermine Boeing's credibility with its customers and expose the company to a multi-hundred million dollar lawsuit." *City of*

---

[5] Indeed, Timaero alleges that Boeing's Chief Technical Pilot for the 737 MAX was not aware of an alleged flaw in MCAS until November 2016. That post-dates even Supplemental Agreement No. 1, adding two airplanes to the MAX purchase, which Timaero signed in September 2016. This further negates any suggestion of fraud in the inducement of Timaero to sign the Purchase Agreement or Supplemental Agreement No. 1. Compl. ¶¶ 90-91 (quoting Compl. Ex. 1 at 1); *id.* ¶ 175.

*Livonia*, 711 F.3d at 758. Here, where the financial and reputational impacts of the MAX accidents and grounding have been orders of magnitude greater, the allegation is even less plausible.[6]

### 2.    Timaero's post-2014 fraud clam is not plausible.

Count I's other fraud claim focuses on the time "after signing the Purchase Agreement" in January 2014. Compl. ¶ 170. The claim's premise is that "Boeing's initial representations" regarding the MAX's qualities, "combined with the circumstances of a long-term contractual relationship during certification that involved Boeing finishing the design and Timaero's pre-delivery payments, gives Boeing a duty to tell Timaero of problems that undermine its representations, including Boeing concealing that it is not conducting the FAA certification process properly." *Id.* ¶ 174. Timaero has failed to adequately plead fraud based on this ongoing "duty to disclose" theory.

### a.    Continued contract performance is not reliance.

First, Timaero fails to allege any reliance other than its continued performance of the Purchase Agreement it had already signed. Under Illinois law, "Plaintiffs cannot claim that they were fraudulently induced to do something that they were obligated to do in any event." *Louis Glunz Beer, Inc.* v. *Martlet Importing Co.*, 864 F. Supp. 810, 816 (N.D. Ill. 1994); *accord Marc Dev., Inc.* v. *Wolin*, 904 F. Supp. 777, 793 (N.D. Ill. 1995); *Connick* v. *Suzuki Motor Co.*, 675 N.E.2d 584, 594 (Ill. 1996) (fraud claims cannot be "based upon statements *after* the dates of purchase"); 27 Williston on Contracts § 69:32 (4th ed. 1993) ("Those induced by false representations to do an act that it was their duty to do have had no legal rights infringed."). Timaero's "performance of a pre-existing legal obligation" does not "constitute legally cognizable damages" for fraud. *Sinclair* v. *State Bank of Jerseyville*, 566 N.E.2d 44, 46-47 (Ill. App. Ct. 1991).[7]

---

[6] Further highlighting the implausibility—and indeed incoherence—of Timaero's scienter allegations is that Boeing allegedly formed its supposed plot to mislead the FAA about the MAX in "August 2017," Compl. ¶ 171, even though the FAA had already certified the MAX five months earlier, *id.* at p. 52.

[7] The seven Supplemental Agreements also do not plausibly support a fraud claim. Supplemental Agreement No. 1 is addressed above. *See supra* n.5. And Timaero fails to allege *any* facts about Supplemental Agreement Nos. 2 through 6. *See* Compl. ¶ 175.

        **b.**        **No ongoing duty of disclosure.**

Second, Timaero's concealment claim, in addition to not identifying an affirmative statement triggering a duty to disclose, *see supra* at 10-11, would impose the type of "general duty of disclosure" on Boeing that the Seventh Circuit has rejected. *FDIC* v. *W.R. Grace & Co.*, 877 F.2d 614, 619 (7th Cir. 1989). Timaero asserts Boeing had "a duty to tell Timaero of problems" it encountered while "finishing the design" and testing of the MAX. Compl. ¶ 174. But Illinois law does not establish such a generalized disclosure obligation under the circumstances that Timaero has alleged. *See W.R. Grace,* 877 F.2d at 619. And the Seventh Circuit has rejected a fraud claim that would require Boeing to "disclose[] in real time" "every hitch or glitch" in the development of a new airplane. *City of Livonia*, 711 F.3d at 759. Also, the Purchase Agreement specifies that it "contains the entire agreement between the parties and supersedes all previous … representations whatsoever, oral or written, and may be changed only in writing signed by authorized representatives of the parties." *Cf.* Compl. ¶ 11 (referencing Purchase Agreement). Nor does Timaero allege facts establishing that the alleged issues were "known to" the Boeing personnel communicating with Timaero. *Addison* v. *Distinctive Homes, Ltd.*, 836 N.E.2d 88, 92 (Ill App. Ct. 2005); *Frerck*, 63 F. Supp. 3d at 892-93. Imposing a duty to disclose under such facts would not only "turn every bargaining relationship into a fiduciary one," *W.R. Grace*, 877 F.2d at 619, but also "convert all product manufacturer's duty to warn claims into fraud claims," *Burton* v. *R.J. Reynolds*, 397 F.3d 906, 913 (10th Cir. 2005).

        **c.**        **No reliance on disclosures to others.**

Third, Timaero repeatedly alleges that Boeing intentionally misled the FAA and other customers about the nature of MCAS. *See, e.g.*, Compl. ¶¶ 92, 98. But fraud claims are based on statements made *to the plaintiff* that are intended to—and that do—induce *reliance by the plaintiff*. *See Fifth Third Mortg. Co.*, 934 F.3d at 588. Timaero alleges no facts plausibly suggesting that statements to the FAA or other customers were intended to, or did, induce *Timaero's* reliance.

In sum, Timaero's fraud claims are neither particularized nor plausible. For each of those reasons, they should be dismissed.

14

## II.    Count II fails to state a claim for good faith and fair dealing.

The Amended Complaint attempts to salvage the Original Complaint's good faith and fair dealing claim by pleading it within the breach of contract claim, rather than as a separate cause of action. Apart from their location in the new pleading, the allegations are materially identical, *compare* Compl. ¶¶ 192-93, *with* Dkt. 1 ¶¶ 127-28, and they are still insufficient as a matter of law. As Boeing explained in its original motion to dismiss, breach of contract and breach of the covenant of good faith and fair dealing are two "distinct[]" claims under Washington law.[8] *Microsoft Corp.* v. *Motorola, Inc.*, 963 F. Supp. 2d 1176, 1189 (W.D. Wash. 2013). Washington law is clear that "the duty of good faith and fair dealing" applies only "when one party has discretionary authority to determine a future contract term." *Rekhter* v. *State, Dep't of Soc. & Health Servs.*, 323 P.3d 1036, 1041 (Wash. 2014). That is because the duty is "derivative … of specific contract obligations." *Hard2Find Accessories, Inc.* v. *Amazon.com, Inc.*, 691 F. App'x 406, 408 (9th Cir. 2017) (omissions). Timaero fails to identify any such contract term as the basis for its good faith and fair dealing claim. *See* Compl. ¶¶ 192-93. Rather, its generalized assertions are an attempt to impose the very kind of "free-floating obligation of good faith on the parties" that the Washington Supreme Court has rejected. *Rekhter*, 323 P.3d at 1041.

## CONCLUSION

For the foregoing reasons, Boeing respectfully requests that this Court dismiss with prejudice Count I, as well as Count II's claim for breach of the covenant of good faith and fair dealing.

Respectfully submitted,

By:  /s/ Kathleen A. Stetsko
     One of the Attorneys for
     The Boeing Company

---

[8] As Timaero concedes, Washington law governs the good faith and fair dealing claim under the choice of law provision in the parties' Purchase Agreement. Compl. ¶ 192.

Eric B. Wolff
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Fax: 206.359.9000
Email: EWolff@perkinscoie.com

Kathleen A. Stetsko
PERKINS COIE LLP
131 S Dearborn Street # 1700
Telephone: 312.324.8400
Fax: 312.324.9400
Email: KStetsko@perkinscoie.com

Dan K. Webb
Christopher B. Essig
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
Email: DWebb@winston.com
Email: CEssig@winston.com

## CERTIFICATE OF SERVICE

I, Kathleen A. Stetsko, certify that on June 25, 2020, I electronically filed the foregoing

**MEMORANDUM IN SUPPORT OF BOEING'S MOTION TO DISMISS** with the Clerk of

the Court using the CM/ECF system, which will send notification of such filing to all attorneys of

record.

I certify under penalty of perjury that the foregoing is true and correct.

/s/    Kathleen A. Stetsko
PERKINS COIE LLP
131 South Dearborn Street, Suite No. 1700
Chicago, Illinois 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400
