## IN THE UNITED STATES DISTRICT COURT FOR THE
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

TIMAERO IRELAND LIMITED,

               Plaintiff,

v.

THE BOEING COMPANY,

               Defendant.

Case No. 1:19-cv-08234

Honorable Rebecca R. Pallmeyer

## TIMAERO'S OPPOSITION TO BOEING'S MOTION TO DISMISS
## COUNT I IN FULL AND COUNT II IN PART

# **Table of Contents**

I.      INTRODUCTION ................................................................................................ 1

II.     RELEVANT FACTUAL AND PROCEDURAL BACKGROUND ...................................... 2

III.    LEGAL STANDARDS ......................................................................................... 3

IV.     TIMAERO SUFFICIENTLY PLED FRAUD UNDER RULES 8(a) AND 9(b) ................... 4

    A.  The Fraudulent Inducement Allegations Unquestionably Rise Above Speculation ............ 5

        1.  Boeing's Knowledge of the MAX Was Definite in 2013-2014 Such that
            Boeing's False Statements Were About Existing Facts ................................................. 5

        2.  Boeing Knowingly Made Numerous False Statements of Material Fact to Timaero ....... 6

        3.  Boeing's False Statements Intended to Induce Timaero to Make Purchases; Timaero
            Justifiably Relied on Boeing's False Statements to Its Damage .................................... 9

    B.  Timaero Plausibly Pled Promissory Fraud ................................................................. 12

        1.  Boeing's Repeated False Statements to Timaero and Others were Made in the
            Context of a Fraudulent Scheme and Never Intended to Be True ................................ 12

    C.  Timaero Plausibly Pled Fraudulent Concealment ....................................................... 14

V.      BOEING IMPERMISSIBLY SEEKS PARTIAL DISMISSAL ........................................ 15

VI.     TIMAERO MAY AMEND THE COMPLAINT ......................................................... 15

VII.    CONCLUSION ................................................................................................. 15

# Table of Authorities

**Cases**

*Abazari v. Rosalind Franklin Univ. of Med. & Sci.*,
  40 N.E.3d 264 (Ill. App. 2015) ................................................. 7

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)................................................................. 3

*Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*,
  928 F.3d 670 (7th Cir. 2019) ................................................... 4

*Avery v. State Farm Mut. Auto. Ins. Co.*,
  216 Ill. 2d 100 (2005) ............................................................. 7

*BBL, Inc. v. City of Angola*,
  809 F.3d 317 (7th Cir. 2015) ................................................. 15

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007)................................................................. 3

*Blaz v. Michael Reese Hosp. Found.*,
  191 F.R.D. 570 (N.D. Ill. 1999) .............................................. 4

*Boucher v. Finance Syst. of Green Bay, Inc.*,
  880 F.3d 362 (7th Cir. 2018) ................................................... 3

*Cannon v. Burge*,
  752 F.3d 1079 (7th Cir. 2014) ................................................. 8

*City of Livonia Employees' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*,
  711 F.3d 754 (7th Cir. 2013) ................................................. 11

*Corley v. Rosewood Care Center, Inc. of Peoria*,
  142 F.3d 1041 (7th Cir. 1998) ............................................... 13

*DiLeo v. Ernst & Young*,
  901 F.2d 624 (7th Cir. 1990) ................................................. 11

*Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*,
  No. 17-cv-6285, 2019 WL 3037075 (N.D. Ill. July 11, 2019) ................................................. 8, 12

*Frerck v. Pearson Educ., Inc.*,
  63 F. Supp. 3d 882 (N.D. Ill. 2014)...................................... 8, 9

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
  128 F.3d 1074 (7th Cir. 1997) ................................................. 3

*Hemmings v. Insys Therapeutics, Inc.*,
  No. 18-cv-2036, 2019 WL 296562 (N.D. Ill. Jan. 23, 2019)................................................. 4

*Hill v. The Tribune Co.*,
  No. 05-cv-2602, 2006 WL 2861016 (N.D. Ill. Sept. 29, 2006)................................................. 9

*Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*,
  237 F.R.D. 173 (N.D. Ill. 2006) .................................................................................. 4, 8

*Kupper v. Powers*,
  71 N.E.3d 347 (Ill. App. 2017) .......................................................................................... 8

*Learjet Corp. v. Spenlinhauer*,
  901 F.2d 198 (1st Cir. 1990) ............................................................................................ 10

*LoggerHead Tools, LLC v. Sears Holding Corp.*,
  19 F. Supp. 3d 775 (N.D. Ill. 2013) ................................................................................ 12

*Makor Issues & Rights, Ltd. v. Tellabs Inc.*,
  513 F.3d 702 (7th Cir. 2008) .............................................................................................. 9

*MAN Roland Inc. v. Quantum Color Corp.*,
  57 F. Supp. 2d 576 (N.D. Ill. 1999) .................................................................................. 6

*Martinez v. Freedom Mortg. Team, Inc.*,
  527 F. Supp. 2d 827 (N.D. Ill. 2007) ................................................................................ 7

*Meridian Labs., Inc. v. OncoGenerix USA, Inc.*,
  No. 18-cv-6007, 2020 WL 2468174 (N.D. Ill. May 13, 2020) ................................. 3, 12

*Newman v. Metro. Life Ins. Co.*,
  885 F.3d 992 (7th Cir. 2018) ..................................................................................... passim

*Norwegian Air Shuttle ASA et al. v. The Boeing Company et al.*,
  No. 20-cv-4108-ARW-HKM (N.D. Ill.) ......................................................................... 13

*People ex rel. Peters v. Murphy-Knight*,
  248 Ill. App. 3d 382 (1993) ................................................................................................ 6

*Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*,
  786 F.3d 510 (7th Cir. 2015) ............................................................................................ 15

*Sojka v. Bovis Lend Lease, Inc.*,
  686 F.3d 394 (7th Cir. 2012) ............................................................................................ 15

*St. Joseph Hosp. v. Corbetta Const. Co., Inc.*,
  21 Ill. App. 3d 925 (1974) ................................................................................................ 10

*Stephenson v. Hartford Life & Annuity Ins. Co.*,
  No. 02-cv-3917, 2004 WL 2260616 (N.D. Ill. Oct. 1, 2004) ........................................... 8

*Swierkiewicz v. Sorema N.A.*,
  534 U.S. 506 (2002) ............................................................................................................ 3

*Thacker v. Menard, Inc.*,
  105 F.3d 382 (7th Cir. 1997) .............................................................................................. 8

*Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*,
  475 F.3d 824 (7th Cir. 2007) ............................................................................................ 11

*Wigod v. Wells Fargo Bank, N.A.*,
  673 F.3d 547 (7th Cir. 2012) ..................................................................................... 12, 14

**Rules**

Fed. R. Civ. P. 12..................................................................................................... 2, 15

Fed. R. Civ. P. 8....................................................................................................... 3, 15

Fed. R. Civ. P. 9................................................................................................ 3, 4, 8, 15

Plaintiff Timaero Ireland Limited ("Timaero") hereby opposes the Motion to Dismiss, Dkts. 60-61 ("Motion" or "Mot."), filed by The Boeing Company ("Boeing").

## I.    <u>INTRODUCTION</u>

The 737 MAX ("MAX") fraud perpetrated by Boeing on its customers is one of the most consequential illicit acts in recent history. Boeing bred a culture that believed it was above safety regulations[1] and which resulted in this fraud action.

Boeing's prior 737-models had a reputation for reliability, which was recognized by Timaero who had purchased the previous model known as the 737 NG ("NG"). However, Boeing lost its way with the MAX and sacrificed safety for market share. Boeing was losing sales to Airbus's new A320neo, so Boeing needed to protect its bottom line. Boeing was so obsessed with profits that it bred a culture of deceit and engaged in a scheme to sell airplanes it knew could not be adequately certified and could never meet the false representations of its salespeople.

Because Boeing let speed-to-market and salability drive the MAX's design rather than safety, Boeing decided to modify its existing NG to fast-track the MAX. At the heart of Boeing's MAX fraud were false representations that the MAX would have ***both*** exceedingly-good fuel efficiency while not requiring additional pilot simulator training for NG pilots, which was already approved. Boeing needed these representations that it would save customers millions of dollars in fuel and training costs in order to make sales. However, Boeing refused to hit the brakes even as it encountered monumental and foundational design flaws that rendered its statements objectively false. Boeing decided not to inform customers of the mounting flaws, about which only Boeing could know, and instead fraudulently concealed material facts because its statements were the key to making sales.

---

[1] For example, in 2015, facing more than a dozen legal actions worth tens-of-millions of dollars for failing to comply with safety regulations, Boeing paid an unprecedented $12 million penalty to the FAA.

Boeing's fraud inevitably led to catastrophe. Two MAX planes crashed, killing all on board, as a direct result of Boeing's corporate malfeasance. All MAXs have been grounded indefinitely since March 2019, but the fallout from Boeing's fraud is just beginning. Boeing is being investigated for its failure to design and build a safe and airworthy aircraft by Congress, a federal grand jury, and the FBI. Boeing's illicit actions have already been confirmed in numerous, ongoing reports. For instance, the House Committee has already found that Boeing fostered a "culture of concealment" and misrepresented the truth to customers and the FAA. Boeing's CEO was fired and numerous other key employees have since been fired, demoted, or forcibly retired.

Now, Boeing continues to shirk responsibility for the fraud it perpetrated on Timaero. Boeing goes so far as to allege that it cannot be held responsible because the damage it caused itself is too great. However, Boeing can no longer avoid liability. Despite its efforts to do so, Boeing cannot "Jedi mind trick" this Court. Timaero brings this action to redress Boeing's fraud and breach of contract. Boeing has provided no reason why Timaero's well-pleaded claims should be dismissed. Boeing's Motion must be denied.

## II.    **RELEVANT FACTUAL AND PROCEDURAL BACKGROUND**

Timaero commenced this action after learning Boeing intentionally misrepresented and/or omitted material information about the MAX and after Boeing failed to deliver aircraft under the contract. Boeing has refused to refund Timaero's $189,224,800 deposit.

Timaero filed its Original Complaint on December 17, 2019. (Dkt. 1.) Boeing moved to dismiss the Original Complaint under 12(b)(6) arguing, *inter alia*, that Timaero did not provide enough detail. Although Timaero disagreed, it amended the Original Complaint to add even more specificity. However, as Boeing has made clear in its Motion, even in view of the mountain of evidence against it, no amended pleading will satisfy Boeing. The First Amended Complaint, Dkt. 42, added 38 pages of

facts, including findings of Boeing's fraud and "culture of concealment" from The House Committee. The facts in support of Timaero's claims are set forth in the First Amended Complaint and are well-pled. Boeing should be ordered to answer and defend itself in front of a jury of its peers.

## III.    LEGAL STANDARDS

On motions to dismiss this Court accepts factual allegations as true and draws inferences in the plaintiff's favor. *Boucher v. Finance Syst. of Green Bay, Inc.*, 880 F.3d 362, 365 (7th Cir. 2018). Rule 8 requires only a "short and plain statement" showing entitlement to relief. Fed. R. Civ. P. 8(a)(1). Plaintiffs must only "nudg[e] their claims across the line from conceivable to plausible." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). Indeed, a complaint must only provide "fair notice of what the . . . claim is and the grounds upon which it rests." *Id.* at 555. A motion to dismiss tests a claim's sufficiency of notice, not whether plaintiff will ultimately prevail. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A defendant meets its dismissal burden "only if it is clear" there is no relief. *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 514 (2002).

Rule 9(b) requires a plaintiff to allege fraud "with particularity" with "the identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated." *Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997). However, "a plaintiff need not exclude all possibility of honesty . . . to give the particulars of fraud, nor need it explain in the complaint ***why*** the misrepresentation was false[.] It is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and public obloquy." *Meridian Labs., Inc. v. OncoGenerix USA, Inc.*, No. 18-cv-6007, 2020 WL 2468174, at *7 (N.D. Ill. May 13, 2020). Courts in the Seventh Circuit has been advised not to take "an overly rigid view of the formulation" and that "the precise details that must be included in a complaint may vary on the facts of

a given case." *Hemmings v. Insys Therapeutics, Inc.*, No. 18-cv-2036, 2019 WL 296562, at *2 (N.D. Ill. Jan. 23, 2019) (omissions). Moreover, "[m]alice, intent, [and] knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b).

Notably, Rule 9(b) is relaxed when a plaintiff does not have access to factual details, such as when facts are within the defendant's exclusive knowledge. *Judson Atkinson Candies, Inc. v. Latini-Hohberger Dhimantec*, 237 F.R.D. 173, 175 (N.D. Ill. 2006). Institutional identifications thus meet the Rule 9(b) standard. *Blaz v. Michael Reese Hosp. Found.*, 191 F.R.D. 570, 574 (N.D. Ill. 1999).

## IV.    TIMAERO SUFFICIENTLY PLED FRAUD UNDER RULES 8(a) AND 9(b)

Boeing's arguments are unfounded and premature as they require the court to resolve disputed facts at the pleading stage. Timaero is not required to plead legal theories. *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019). Timaero need only plead plausible facts supporting its claims.

Rule 9(b) is satisfied here because Timaero stated the particulars of Boeing's fraud such that Boeing has been reasonably notified of Timaero's claim. Timaero identified the who, what, where, when, and how of Boeing's fraud. To summarize briefly, Timaero's allegations, which must be taken as true, are that Boeing misrepresented that its MAX aircraft would have ***all*** the following specifications: class-leading fuel efficiency, no simulator training for NG pilots, would be easily saleable and leasable, a good value for Timaero, would be airworthy, safe, free from design defects, and in compliance with aviation regulations, i.e. the "what" (collectively, "False Statements"). (Dkt. 42, "Compl." ¶¶ 7, 29-50, 162, 168.). Boeing employees made the False Statements to Timaero as follows:

| When | Who | Where | How |
|------|-----|-------|-----|
| 6/19/2013 | R. Conner | Le Bourget | Writing (letter of intent) |
| 6/19/2013 | A. Basyuk, E. Alexandrova, D. Krol | E-mail | Writing (draft news release) |
| 8/8/2013 | A. Basyuk, C. Brown, A. Jabenko, J. Acosta, M. Papyan | E-mail | Writing (bus. proposal) |

| When | Who | Where | How |
|---|---|---|---|
| 8/12/2013 | A. Basyuk, J. Acosta | Moscow | Meeting |
| 8/19/2013 | A. Basyuk | Moscow | Meeting |
| 9/12/2013 | A. Basyuk | Moscow | Meeting |
| 9/12/2013 | A. Basyuk,, C. Brown, A. Jabenko, J. Acosta, M Papyan | E-mail | Writing (bus. proposal) |
| 11/10/2013 - 11/14/2013 | G. Peppes | Muscat | Meetings |
| 11/19/2013 | S. Fancher, R. Tinseth | E-mail | Writing (slide-deck) |
| 11/21/2013 | J. Weltman, M. Papyan, T. Myers, A. Ivanischeva, J. Acosta, R. Hammond | Moscow | Meeting |
| 1/10/2014 | F. Siki | Executed in Ireland | Writing (Purchase Agmt.) |
| 1/21/2014 | A. Basyuk | Moscow | Meeting |
| 1/28/2014 | J. Acosta | Moscow | Meeting |
| 3/22/2014 - 3/29/2014 | A. Basyuk, S. Clark, C. Leach, K. Hamavand, W. Bare, J. Acosta, M. Wilks, F. Siki, A. Jabenko, F. Wolz, M Papyan | Seattle | Meetings |

(*See* Compl. ¶¶ 34-48.) Boeing's argument that Timaero must allege more is unavailing.

     A.   *The Fraudulent Inducement Allegations Unquestionably Rise Above Speculation*

     Boeing contests the "plausibility" of Timaero's fraudulent inducement claim by arguing that Timaero only pled "promissory fraud" and failed to satisfy its elements. (*See* Mot. at 15[2].) Boeing is wrong. Not only is Timaero's fraud claim not limited to promissory fraud, Timaero sufficiently pled both types of fraud, as well as fraudulent concealment.

     1.   Boeing's Knowledge of the MAX Was Definite in 2013-2014 Such that Boeing's False Statements Were About Existing Facts

     In Illinois, a claim for fraudulent inducement requires "(1) a false statement of material fact; (2) known or believed to be false by the person making it; (3) an intent to induce the plaintiff to act; (4) action by the plaintiff in justifiable reliance on the truth of the statement; and (5) damage to the plaintiff resulting from such reliance." *Newman v. Metro. Life Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018). Statements about "a machine of known physical characteristics" "***must*** be considered representations

---

[2] Citations to Motion are to the ECF page numbers.

of existing fact, and thus actionable as fraud" if the machine is "*of a known, specified, and certain type*." *People ex rel. Peters v. Murphy-Knight*, 248 Ill. App. 3d 382, 388–89 (1993) (emphases added); *MAN Roland Inc. v. Quantum Color Corp.*, 57 F. Supp. 2d 576, 584 (N.D. Ill. 1999).

Here, each of the False Statements, including those made in the 2014 Purchase Agreement that the MAX would not require additional simulator training, concerned "a machine of known physical characteristics and [] capabilities" and "of a known, specified, and certain type." For instance, as shown in the Complaint, Boeing knew by at least 2012 that it could not manufacture an airplane with its represented specifications because it knew the MAX (1) had aerodynamic problems created by placing larger, more fuel-efficient engines on the NG frame, (2) experienced abnormal nose-up pitching, (3) was substantially different and would not fly similarly to the NG, and would therefore (4) require additional pilot training due to the foregoing and/or the addition of the MCAS system to stabilize the aircraft. (Compl. ¶¶ 51-58.) The FAA warned Boeing in 2013 that adding features, e.g., MCAS, to the aircraft would result in additional simulator training. (Compl. ¶¶ 32-33, 81-83, 96, 158.)

However, despite knowing that it could not build a properly certified MAX with class-leading fuel efficiency *and* only computer-based training for NG pilots, Boeing marketed those very specifications to Timaero to induce execution of the Purchase Agreement.[3] (Compl. ¶¶ 34-50, 165-182.) Boeing's pre-Purchase Agreement knowledge of the MAX's design flaws, which must be taken as true, was sufficiently definite to make Boeing's representations about "existing facts." Thus, fraudulent inducement cannot be dismissed from Timaero's fraud claim.

2.  Boeing Knowingly Made Numerous False Statements of Material Fact to Timaero

The Complaint describes in detail how Boeing's statements were known misrepresentations of material fact. (Compl. ¶¶ 29-101, 157-158.) A misrepresentation is "material" if the plaintiff would

---

[3] The Purchase Agreement includes an affirmative representation that the MAX would not require additional simulator training. (Compl. ¶ 43.)

have acted differently had he been aware of it, or if it concerned information upon which he would be expected to rely. *Martinez v. Freedom Mortg. Team, Inc.*, 527 F. Supp. 2d 827, 837 (N.D. Ill. 2007). In Illinois, a defendant knowingly misrepresents a fact if it makes a statement knowingly or "with a reckless disregard" for its truth or falsity. *Newman*, 885 F.3d at 1003. Here, Boeing knowingly made the False Statements to persuade Timaero to purchase airplanes. Boeing knew marketing the False Statements would induce customers to believe the MAX was a better value over the A320neo. (*See, e.g.*, Compl. ¶¶ 22-24, 34-48, 104, 157.) Had Boeing's representations been true, the MAX would save Timaero and its customers millions of dollars in operating and training costs over other alternatives. Timaero would have acted differently had it known the truth, including by making different price calculations or not purchasing the MAX. (*Id.* ¶¶ 162, 175.) Thus, Timaero satisfied its "materiality" pleading obligations.

Boeing asserts four reasons why it did not make an actionable false statement: (1) the statements were mere puffery or (2) statements of law, or (3) non-actionable predictions.[4] Even if the statements were factual, Boeing argues that (4) Timaero did not allege the speakers actually knew of the falsity. (Mot. at 14-18.) Boeing is wrong on all counts and cites no supportive case law.

Boeing's False Statements to Timaero were not mere "puffery," which are "meaningless superlatives that no reasonable person would take seriously" and "rosy descriptions of possible outcomes," and are in no way comparable to Boeing's cited cases. *Avery v. State Farm Mut. Auto. Ins. Co.*, 216 Ill. 2d 100, 174 (2005) (analyzing "quality" products as having a "high performance criteria"); *Abazari v. Rosalind Franklin Univ. of Med. & Sci.*, 40 N.E.3d 264, 273 (Ill. App. 2015) (analyzing "unprecedented" and "limitless" opportunities). Timaero has alleged present and preexisting factual statements by Boeing concerning foundational specifications of the airplanes. (Compl. ¶¶ 165-182.)

---

[4] The actionability of "predictions" collapses into the analysis regarding promissory fraud, *infra*.

Neither were the False Statements "statements of law," which are statements a plaintiff can know are true or false. *Kupper v. Powers*, 71 N.E.3d 347, 355 (Ill. App. 2017) (cited by Boeing); *Stephenson v. Hartford Life & Annuity Ins. Co.*, No. 02-cv-3917, 2004 WL 2260616, at *9 (N.D. Ill. Oct. 1, 2004) (questioning law/fact dichotomy and holding that resolution of that question "would be premature absent further factual development."). The False Statements concern features of the aircraft known only to Boeing, not the requirements of the FAA. Timaero could not have known the facts underlying the False Statements, the truth or falsity of which was always within Boeing's exclusive knowledge. Further, Boeing's False Statements are factual as it was "reasonable for [Timaero] to interpret these statements as factual representations." *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, No. 17-cv-6285, 2019 WL 3037075, at *3 (N.D. Ill. July 11, 2019); *see also Thacker v. Menard, Inc.*, 105 F.3d 382, 386 (7th Cir. 1997) (statements by salesperson may be factual if it would be reasonable to treat it as such."). Nevertheless, whether a statement is of fact or law is a highly factual analysis not appropriately resolvable on the pleadings. *See, e.g., Dyson*, 2019 WL 3037075, at *4.

Finally, Boeing argues Timaero must prove the person who made the statements "actually" knew the statement's falsity. (Mot. at 14-15.)[5] However, all Timaero must allege is a statement made with "reckless disregard" for its truth or falsity, *Newman*, 885 F.3d at 1003, which it did. (Compl. ¶¶ 8, 32, 36, 49, 82, 169.) In any event, Timaero plausibly pled intent. Timaero pled that the speakers "knew" their statements were false (Compl. ¶¶ 31, 34-50, 165-182) and "link[ed] specific higher up[s]" at Boeing to the fraud "whose wrongful intent could [ ] be inferred." *See Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 893 (N.D. Ill. 2014) (decided on summary judgment); *see also* Fed. R. Civ. P. 9(b) ("Malice, intent, [and] knowledge . . . may be alleged generally."); *Judson*, 237 F.R.D. at 175 (Rule

---

[5] Boeing cites a footnote in *Cannon v. Burge* in support, but the footnote states the opposite, that Timaero must show the statements were "***not*** actually believed by [the speaker] on reasonable grounds to be true." 752 F.3d 1079, 1091 n.7 (7th Cir. 2014) (emphasis added).

9(b) relaxed when facts within defendant's exclusive knowledge).

Timaero's allegations concern Boeing's officers and directors such as the Vice President and General Manager of the MAX Program, the MAX Program Manager, the MAX Chief Technical Pilot, and Boeing's sales directors. (Compl. ¶¶ 31, 34-50.) These allegations are sufficient because "[a] corporation's scienter" may be "based on knowledge or scienter of *a senior officer or director* of the corporation, *or* an employee" that issued the statement. *Hill v. The Tribune Co.*, No. 05-cv-2602, 2006 WL 2861016, at *12 (N.D. Ill. Sept. 29, 2006) (emphasis added); *Makor Issues & Rights, Ltd. v. Tellabs Inc*., 513 F.3d 702, 708 (7th Cir. 2008) (the corporate scienter inquiry must focus on "the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like)"). Boeing lobbies for an absurd reading of the law whereby a corporation can avoid liability if it keeps knowledge of the fraud at the officer/director level. This is patently unjust. Timaero's allegations are sufficient under Illinois law.

Additionally, each of the False Statements come from Boeing's agents acting within the scope of their employment, which is a "basic principle" of corporate liability in Illinois. *Frerck*, 63 F. Supp. 3d at 893. As the cases Boeing cites on this issue show, facts concerning intent and corporate liability should be decided following significant discovery and/or on summary judgment. None of Boeing's cited cases are persuasive to dismiss Timaero's claims.

### 3. Boeing's False Statements Intended to Induce Timaero to Make Purchases; Timaero Justifiably Relied on Boeing's False Statements to Its Damage

Boeing's intent (or "motive") and Timaero's reliance cannot be disputed. Timaero's reliance need only be "justifiable"—which is satisfied if the relying party cannot know the truth of the misrepresentation. *Newman*, 885 F.3d at 1003 ("[I]t is reasonable to rely . . . if nothing impugns [] veracity."). As stated above, Boeing knowingly made the False Statements—the falsity of which were

known only to Boeing—to induce Timaero to purchase MAX aircraft. (Compl. ¶¶ 31, 34-50, 165-182.) Boeing knew Timaero would rely on its False Statements in deciding to purchase the MAX over alternatives. (Compl. ¶¶ 162-164, 175.) Boeing's False Statements made Timaero believe the MAX would save Timaero and its customers millions of dollars in operating and training costs, which made the MAX more easily saleable and leasable and a better value over the A320neo. (Compl. ¶¶ 48, 168.)

Furthermore, Timaero justifiably relied on Boeing's statements to the FAA, which also establish Boeing's liability. *See Learjet Corp. v. Spenlinhauer,* 901 F.2d 198, 200 (1st Cir. 1990) (finding claim for fraud where plaintiff relied indirectly on defendant's statements to FAA to obtain airworthiness certificate); *see also St. Joseph Hosp. v. Corbetta Const. Co., Inc.*, 21 Ill. App. 3d 925 (1974) (a party is liable for its indirect "false representations to another [when it has] the intent or knowledge that they be exhibited or repeated to a third party for the purpose of deceiving him.") Here, Boeing's misrepresentations to the FAA were made with the intention that they reach Timaero. (Compl. ¶¶ 31-33, 165-182.) Clearly, Timaero would not have purchased or accepted delivery on uncertified aircraft, or aircraft that was fraudulently certified. Timaero has to rely on Boeing properly obtaining proper certification from the FAA at least because Timaero has no means of verifying Boeing's compliance with FAA requirements. (*Id.* ¶¶ 174-175.)

Boeing also erroneously argues that Timaero's reliance is contract performance. (Mot. at 19.) Timaero alleged that its reliance includes execution of the initial Purchase Agreement and supplemental agreements, including the conversion of Boeing 737-800 aircraft into MAXs. (Compl. ¶ 175.) Timaero was under no legal obligation to execute these agreements. Timaero's reliance is further shown through its decision to unknowingly resell unsafe MAX airplanes. (Compl. ¶¶ 162, 175.) The cases cited by Boeing provide no support and are otherwise inapplicable. Timaero's justifiable reliance is well-pled.

Shockingly, Boeing relies on authorities specific to fraud claims against auditors, whose interest in fees is insufficient to show intent to conceal or join a client's fraud, to argue that Boeing could not have acted with fraudulent intent because the consequences here were too great. (Mot. at 18); *see Tricontinental Indus., Ltd. v. PricewaterhouseCoopers, LLP*, 475 F.3d 824, 841 (7th Cir. 2007); *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990). This self-righteous, can-do-no-wrong attitude is precisely what perpetuated Boeing's fraud. Boeing's illegal acts are not some opportunistic accounting practice. Boeing intentionally lied to Timaero and the FAA in the name of corporate greed. 394 people died as a result. Boeing's comparison of its acts to that of an accountant is patently offensive and indicative of the depths to which Boeing will go to evade liability.[6]

Boeing also cites *City of Livonia* like a "get-out-of-jail-free card" because the Court there was skeptical about the pled intent underlying a baseless class-action securities fraud claim. *City of Livonia Employees' Ret. Sys. & Local 295/Local 851 v. Boeing Co.*, 711 F.3d 754, 755 (7th Cir. 2013).[7] *City of Livonia* concerned securities claims with a unique requirement of pleading a "strong inference" of intent that is ***not*** required for common law fraud. *See id.* at 755-57. The complaint was dismissed only after completion of specific discovery, including the deposition of the sole source of proof that the relevant speakers knew their statements were false, which revealed the operative complaint had ***zero*** support for any inference of intent, let alone a "strong inference." *Id.* at 759-62.[8] Here, Timaero sufficiently pled allegations of knowing, material, false statements by persons at Boeing that satisfy even the inapplicable "strong inference" standard.

---

[6] Though not raised by Boeing, Timaero's damages also cannot be in dispute. Boeing wrongfully withholds hundreds of millions of dollars of Timaero's money pursuant to its illicit fraud. (Compl. ¶ 9.)

[7] The Court remanded the action for determination of whether the complaint satisfied Rule 11. *Id.* at 762.

[8] Moreover, even in the context of this inapplicable "strong inference" standard, the Court stated that "the fact that a prediction may prove untrue does not justify representing as true a prediction that one knows, to a reasonable certainty, is false." *Id.* at 759.

B. *Timaero Plausibly Pled Promissory Fraud*

Timaero also adequately pled promissory fraud. The pleading elements of promissory fraud are the same as those for fraudulent inducement in addition to a requirement that the plaintiff allege the fraud was "part of a scheme to defraud." *Wigod v. Wells Fargo Bank, N.A.*, 673 F.3d 547, 570 (7th Cir. 2012). "To invoke the scheme exception, the plaintiff must allege and then prove that, at the time the promise was made, the defendant did not intend to fulfill it." *Id.* Evidence of a fraudulent scheme includes a "pattern of fraudulent statements, or one particularly egregious fraudulent statement." *LoggerHead Tools, LLC v. Sears Holding Corp.*, 19 F. Supp. 3d 775, 783 (N.D. Ill. 2013); *see also Meridian Labs.*, 2020 WL 2468174, at *7; *Dyson*, 2019 WL 3037075, at *4.

1. Boeing's Repeated False Statements to Timaero and Others were Made in the Context of a Fraudulent Scheme and Never Intended to Be True

Timaero sufficiently alleges that Boeing orchestrated "a pattern of fraudulent statements" to show existence of a scheme. Timaero alleged a series of lies directed and issued by Boeing employees, including senior management, acting within the scope of their employment to persuade Timaero to purchase and accept delivery of MAX aircraft and to obtain a deceitful airworthiness certification from the FAA. (Compl. ¶¶ 31, 50, 90-101, 157-158, 165-182.)

Boeing's material misrepresentations were not mere "generalized predictions" (Mot. at 14), but rather statements of essential specifications set by senior management. The Complaint alleges that specific senior managers, including Keith Leverkuhn and Michael Teal, pressured the MAX team to ensure that no new simulator training for NG pilots was required. (Compl. ¶¶ 31-33, 90-101.) Emails from the MAX Chief Technical Pilot, who was responsible for getting the MAX approved without simulator training, expressed the pressures he felt from senior management. (*Id.*) Internal FAA emails

show that FAA employees were concerned how Boeing was misrepresenting the MAX's features to customers. (Compl. ¶ 32.) Timaero was one of those misled customers.[9]

Boeing made the False statements to Timaero knowing that they were false, or with reckless indifference to their truth or falsity. Boeing never intended to conform to its misrepresentations, at any time, as Boeing knew it could not manufacture an aircraft with class-leading fuel efficiency without requiring additional pilot simulator training. (*See supra*.) Boeing made the False Statements to Timaero even ***after*** the FAA communicated the falsity of the statements.[10]

Although the Seventh Circuit has upheld pleadings based on evidence reasonably anticipated, Timaero's allegations of a fraudulent scheme are already supported. *See Corley v. Rosewood Care Center, Inc. of Peoria*, 142 F.3d 1041, 1050-1051 (7th Cir. 1998). For example, the House Committee concluded: "Boeing's business objective for the 737 MAX from the start was to build an airplane that required no simulator training for pilots who were already flying the 737 NG"; the MAX program suffered from a "culture of concealment" and Boeing "intentionally concealed information from the FAA, its customers [such Timaero], and pilots"; Boeing purposely "formulated a plan to help avoid increased FAA certification and pilot training requirements" by mischaracterizing MCAS and only giving small amounts of information to different disconnected FAA employees; and Boeing had undue influence over the FAA. (Compl. ¶¶ 83, 157-158.)[11] Timaero's promissory fraud theory is well-pled.

---

[9] Others deceived include Norwegian Air, which recently sued for the same fraud. *See Norwegian Air Shuttle ASA et al. v. The Boeing Company et al.*, No. 20-cv-4108-ARW-HKM (N.D. Ill.), Dkt. 1-1 at 69-73.

[10] Boeing is now recommending simulator training now that its scheme has been exposed. (Compl. ¶ 49.)

[11] Facts about Boeing's fraudulent scheme continue to be exposed. The U.S. Dep. of Trans. Office of Inspector General published a report on June 29, 2020 finding that Boeing purposely misled and concealed material information from the FAA to obtain Level B training (no simulator training), asserted "undue pressure on [FAA] personnel," and failed to inform customers, such as Timaero, of key issues related to the MAX although it was Boeing's practice to inform customers of such issues.
(https://www.oig.dot.gov/sites/default/files/FAA%20Oversight%20of%20Boeing%20737%20MAX%20Certification%20Timeline%20Final%20Report.pdf.)

### C.  Timaero Plausibly Pled Fraudulent Concealment

Boeing is also guilty of fraudulent concealment. To plead fraudulent concealment, in addition to meeting the elements of fraudulent misrepresentation, a plaintiff must allege the defendant intentionally omitted or concealed a material fact that it was under a duty to disclose. *Wigod,* 673 F.3d at 571. "A duty to disclose would arise if plaintiff and defendant are in a fiduciary or confidential relationship or in a situation where plaintiff places trust and confidence in defendant, thereby placing defendant in a position of influence and superiority over plaintiff." *Wigod,* 673 F.3d at 571 (omissions). A duty may also arise when a defendant makes a statement "that it passes off as the whole truth while omitting material facts," resulting in "a misleading half-truth." *Newman,* 885 F.3d at 1004.

Boeing had a duty to disclose the material information above to Timaero. Timaero sufficiently pled that Boeing and Timaero have a special relationship as Timaero placed trust and confidence in Boeing, thereby placing Boeing in a position of influence and superiority. Only Boeing knew, or could have known, of the problems with the MAX, that additional flight training was required, and its fraudulent scheme of misleading customers and the FAA. Timaero was at the mercy of Boeing's disclosures (and omissions) such that a duty arose by law for Boeing to inform Timaero of the MAX's material defects, which were not "hitch[es] or glitch[es]" as Boeing speciously alleges. (Mot. at 20.)

Moreover, Boeing's statements concerning at least the certification of the MAX were half-truths passed off as the whole truth while omitting material facts. While Boeing was in truth getting the MAX certified, the whole truth was that it was not certifying the actual aircraft rolling off the production line with all its capabilities and features (e.g., MCAS's full capabilities that were never disclosed to the FAA). (Compl. ¶¶ 62-66, 84, 158.) Boeing's misleading half-truth about certification created a duty at law to disclose to Timaero.

## V.     BOEING IMPERMISSIBLY SEEKS PARTIAL DISMISSAL

Boeing impermissibly seeks piecemeal dismissal of Timaero's claims. There is no basis in the federal rules to "partially" dismiss a claim that gives rise to right to relief under one of multiple legal theories. *See BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015) ("Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims[.]"). "One claim supported by multiple theories does not somehow become multiple claims." *Sojka v. Bovis Lend Lease, Inc.*, 686 F.3d 394, 399 (7th Cir. 2012) As shown above, Timaero adequately pled fraud under multiple legal theories. Dismissal is improper.

Furthermore, Boeing moves against Timaero's breach of contract claims to exclude a theory of breach of good faith and fair dealing. Boeing's acknowledgement that Count II sufficiently pleads a claim for breach of contract precludes dismissal, whether or not a good faith and fair dealing theory is part of that claim. The Motion must be denied in its entirety.

## VI.     TIMAERO MAY AMEND THE COMPLAINT

The Motion should be denied because the Complaint is sufficient under Rules 8(a) and 9(b). However, if the Complaint is subject to dismissal on any of the grounds asserted by Boeing, Timaero may amend the pleadings to overcome any deficiency. The established rule in the Seventh Circuit is that a plaintiff whose complaint is dismissed under Rule 12(b)(6) should be given at least one opportunity to try to amend the complaint before the entire action is dismissed. *See Runnion v. Girl Scouts of Greater Chi. and Nw. Ind.*, 786 F.3d 510, 519 (7th Cir. 2015).

## VII.     CONCLUSION

For the forgoing reasons, Plaintiff Timaero Ireland Limited respectfully requests that this Court deny Defendant The Boeing Company's Motion to Dismiss in its entirety.

Dated: July 30, 2020

Respectfully submitted,

*/s/ Wesley W. Whitmyer, Jr.*

Wesley W. Whitmyer, Jr. (*pro hac vice*)
Michael J. Kosma (*pro hac vice*)
Christopher J. Stankus (*pro hac vice*)
Robert D. Keeler (*pro hac vice*)
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
Telephone: (203) 703-0800
Facsimile: (203) 703-0801
Email: litigation@whipgroup.com
        mkosma@whipgroup.com
        cstankus@whipgroup.com
        rkeeler@whipgroup.com

Patrick F. Solon
Gretchen L. Schmidt
Vitale, Vickrey, Niro, Solon & Gasey LLP
311 S. Wacker Dr., Ste. 2470
Chicago, IL 60606
Telephone: 312-236-0733
Facsimile:  312-236-3137
Email: solon@vvnlaw.com
schmidt@vvnlaw.com

*Attorneys for Plaintiff,*
*Timaero Ireland Limited*

16

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that on July 30, 2020 the foregoing

### TIMAERO'S OPPOSITION TO BOEING'S MOTION TO DISMISS
### COUNT I IN FULL AND COUNT II IN PART

was filed electronically with the Clerk of the Court for the Northern District of Illinois using the Court's Electronic Case Filing System, and was served on the following counsel by electronic transmission:

Eric B. Wolff
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
(206) 359-8000
Fax: (206) 359-9000
EWolff@perkinscoie.com

Kathleen A. Stetsko
PERKINS COIE LLP
131 S. Dearborn St., Suite 1700
Chicago, IL 60603-5559
(312) 324-8400
Fax: (312) 324-9400
KStetsko@perkinscoie.com

Dan K. Webb
Christopher B. Essig
WINSTON & STRAWN LLP
35 W. Wacker Dr.
Chicago, IL 60601
(312) 558-5600
DWebb@winston.com
CEssig@winston.com

Dated:  July 30, 2020

/s/ Wesley W. Whitmyer, Jr.
*Attorneys for Plaintiff,*
*Timaero Ireland Limited*

17