**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| TIMAERO IRELAND LIMITED,<br><br>　　　　　　　　Plaintiff,<br><br>　　v.<br><br>THE BOEING COMPANY,<br><br>　　　　　　　　Defendant. | No. 19-cv-08234<br><br>Honorable Rebecca R. Pallmeyer<br><br>Magistrate Judge Jeffrey T. Gilbert |

**BOEING'S REPLY
IN SUPPORT OF ITS MOTION TO DISMISS
COUNT I IN FULL AND COUNT II IN PART**

**TABLE OF CONTENTS**

                                                                                                               **Page**

INTRODUCTION ...................................................................................................................1

ARGUMENT .........................................................................................................................2

    I.      Count I fails to plead fraud with particularity ...........................................2

    II.     Count I fails to plead a plausible claim for fraud ......................................4

          A.      Timaero does not plausibly allege fraudulent inducement ............4

                1.      Timaero does not plausibly allege a false representation ....................................................................4

                2.      Timaero does not plausibly allege wrongful intent ............7

          B.      Timaero fails to plausibly allege fraudulent misrepresentations or omissions after contract execution ...........11

                1.      Timaero has not identified any cognizable, plausible reliance based on the alleged fraud .................................11

                2.      Timaero has not alleged facts establishing that Boeing had a duty to disclose all issues that arose during the development of the MAX ..............................12

                3.      Boeing's alleged misrepresentations to the FAA cannot support Timaero's fraud claim ............................13

    III.    Count II's good faith and fair dealing claim should be dismissed ...........14

CONCLUSION ....................................................................................................................15

**INTRODUCTION**

Timaero's Opposition Brief fails to establish that its claims for fraud and breach of the duty of good faith and fair dealing should survive dismissal. The brief only confirms that Timaero's fraud claims impermissibly assert "fraud by hindsight" and fail to satisfy the plausibility and particularity requirements of Rules 8(a) and 9(b) of the Federal Rules of Civil Procedure. As to its good faith and fair dealing claim, Timaero does not even attempt to defend it, simply arguing that the claim cannot be dismissed now because Timaero combined the claim with its breach of contract claim in Count II of the Amended Complaint ("Complaint"). As shown below, Timaero's arguments fail, and these claims should be dismissed.

Timaero does not dispute that it must satisfy the particularity requirements of Rule 9(b) for each of its fraud allegations. To show that it has cleared this hurdle, Timaero's brief prominently displays a table listing various purportedly false statements by Boeing, along with certain information about the individuals involved in the statements, and when and where the statements were made. But conspicuously absent from the table—and from Timaero's Complaint—is any particularized allegation regarding *the content* of the statements. Under well-established precedent, the Complaint must allege not only "the identity of the person making the misrepresentation," but also "the time, place, *and content* of the misrepresentation, and the method by which the misrepresentation was communicated." *Schiffels v. Kemper Fin. Servs., Inc.*, 978 F.2d 344, 352 (7th Cir. 1992) (internal quotation marks omitted; emphasis added). "Vague and general" allegations of the content of purportedly fraudulent statements do not satisfy Rule 9(b). *A.I. Credit Corp. v. Hartford Comput. Grp., Inc.*, 847 F. Supp. 588, 597 (N.D. Ill. 1994).

Timaero's allegations of fraud likewise fail to satisfy Rule 8(a)'s plausibility requirement. Effectively abandoning most of the purported misrepresentations alleged in its Complaint, Timaero focuses almost exclusively on its allegation that Boeing committed fraud by misrepresenting its expectation that the FAA would not require simulator training for NG pilots transitioning to the MAX. But Timaero fails to grapple with this essential problem: the FAA—not Boeing— was responsible for determining the MAX's training requirements, and that decision was still years

1

down the road in 2014 when the parties negotiated their Purchase Agreement. Timaero's allegation thus amounts at most to a claim that Boeing incorrectly predicted the outcome of a future regulatory determination. The other alleged false statements that Timaero relies upon likewise concerned the future capabilities of an airplane that was still under development. Because the MAX during the period in question was the classic example of a machine "yet to be designed and constructed," Timaero's fraud claims fall squarely "within the traditional rule that an action for fraud may not be based upon opinion or representations relating to future contingent events." *Peters v. Murphy-Knight*, 618 N.E.2d 459, 465 (Ill. App. Ct. 1993) (quotation marks omitted).

At bottom, Timaero's lawsuit complains that Boeing did not deliver the airplanes it promised under the parties' contract. Even if that were true, it is not fraud. In Illinois, a "common-law fraud claim" requires a "fraudulent act distinct from the alleged breach of contract," not just "a reformulation of the contract claim." *Greenberger v. GEICO Gen. Ins. Co.*, 631 F.3d 392, 401 (7th Cir. 2011). Timaero's broad, conclusory accusations of misrepresentation and fraud lack the particularity and plausibility required to survive dismissal, and they cannot convert a breach of contract case into a viable claim for fraud. Accordingly, those claims, as well as Timaero's good faith and fair dealing claim, should be dismissed.

## ARGUMENT

### I. Count I fails to plead fraud with particularity.

Timaero contends that it has satisfied the requirements of Rule 9(b) because its Complaint "stated the particulars of Boeing's fraud such that Boeing has been reasonably notified of Timaero's claim." ECF No. 68 ("Opp. Br.") 4. That argument misstates the applicable standard and fails to accurately describe Timaero's Complaint.

Timaero does not deny that it must satisfy the requirements of Rule 9(b) for "*each* fraud allegation." ECF No. 61 ("Mot. Br.") 6 (quoting *Menzies v. Seyfarth Shaw LLP*, 943 F.3d 328, 338 (7th Cir. 2019) (emphasis added)). But as Boeing pointed out in its Motion, the closest Timaero comes to satisfying this requirement are its allegations concerning several meetings and other communications between the parties that it says occurred from mid-2013 through March 2014. In an

2

effort to explain how these allegations suffice to satisfy Rule 9(b), Timaero's Opposition Brief lists them in a prominent table, then asserts in conclusory fashion that "Boeing's argument that Timaero must allege more is unavailing." Opp. Br. 4-5. Timaero's efforts fall short.

While Timaero has included some information about the dates, locations, and individuals involved in these communications, it still has failed to plead their "*specific* content," as Rule 9(b) requires. *See* Mot. Br. 7 (quoting *Graue Mill Dev. Corp. v. Colonial Bank & Tr. Co.*, 927 F.2d 988, 993 (7th Cir. 1991)). Timaero's table conspicuously omits any information about the content of each of the communications listed. Instead, Timaero relies on a single generic sentence to summarize the purported content of *all* the communications between the parties—14 separate communications in total, occurring over the span of almost a year, both before and after the parties entered into the Purchase Agreement. *See* Opp. Br. 4-5. Such a "general description[] of [the] purported misstatements" does not satisfy Rule 9(b). *Gandhi v. Sitara Capital Mgmt., LLC*, 721 F.3d 865, 870 (7th Cir. 2013); *see also A.I. Credit Corp.*, 847 F. Supp. at 597 ("vague and general" allegations do not satisfy Rule 9(b)).

To avoid Rule 9(b)'s requirements, Timaero argues that it is enough if "Boeing has been reasonably notified of Timaero's [fraud] claim." Opp. Br. 4. But notice is only one function of Rule 9(b); the heightened pleading standard also prevents plaintiffs from filing a conclusory complaint as a pretext for using discovery to uncover wrongs, and it protects defendants from reputational injury based on "spurious fraud claims." *Presser v. Acacia Mental Health Clinic*, 836 F.3d 770, 776 (7th Cir. 2016) (citation omitted). Here, Timaero can be expected to know what was said in these communications and how it believes it was misled by them, yet it has failed to include any of these necessary allegations in its Complaint. *See A.I. Credit Corp.*, 847 F. Supp. at 597 ("There is no excuse for such vagueness, since . . . these representations were made to the Plaintiffs themselves.").

Timaero also impermissibly tries to insulate its fraud claims from dismissal by seeking to treat Count I's multiple fraud claims—which involve various statements and omissions spread across approximately eight years, before and well after the Purchase Agreement was executed—

3

as "multiple theories" supporting a single "claim," which Timaero contends can only be dismissed in its entirety. Opp. Br. 15 (quotation marks omitted). But that argument contravenes the requirement noted above that "*each* fraud allegation" must satisfy Rule 9(b). Mot. Br. 6 (quoting *Menzies*, 943 F.3d at 338). Allegations "constitute a single claim [only] to the extent that they are premised on the same facts." *Zurbriggen v. Twin Hill Acquisition Co., Inc.*, 2020 WL 1939390, at *9 (N.D. Ill. Apr. 22, 2020); *N.A.A.C.P. v. Am. Family Mut. Ins. Co.*, 978 F.2d 287, 292 (7th Cir. 1992) (noting that "two 'claims' may arise out of the same transaction" if they rely on "substantially different facts"). Here, Timaero is asserting at least two separate fraud claims, for fraudulent inducement and for misrepresentations or omissions made after contract execution; these claims are based on conduct occurring years apart and involving different alleged facts. *Compare* Compl. ¶¶ 166-68 (alleging that Boeing fraudulently induced Timaero to enter the Purchase Agreement before January 2014), with *id.* ¶¶ 170-71, 174 (alleging that Boeing fraudulently failed to "disclose" "problems" that arose "[a]fter 2016 test flights").

As Boeing has shown, Timaero has failed to satisfy the pleading requirements with respect to any of its fraud claims. But even if Timaero had pleaded one of the claims with particularity, this Court should still dismiss the other fraud claims that have not been properly pleaded. To do otherwise would defeat the gatekeeping function of Rule 9(b)—preventing discovery on spurious claims of fraud.

## II. Count I fails to plead a plausible claim for fraud.

Timaero's Complaint also fails to meet Rule 8(a)'s plausibility requirement with respect to its fraud claims, and nothing in Timaero's Opposition Brief remedies that defect.

### A. Timaero does not plausibly allege fraudulent inducement.

#### 1. Timaero does not plausibly allege a false representation.

Timaero pins its fraudulent inducement claim on four alleged misrepresentations about the MAX made in late 2013 and early 2014: that it (i) would "have class-leading fuel efficiency";

4

(ii) "would not require additional simulator training for pilots already certified to fly its predecessor 737 NG"; (iii) "would be easily saleable and leasable," and thus "a good value for Timaero"; and (iv) "would be airworthy, safe, free from design defects, and in compliance with aviation regulations." *See* Opp. Br. 4. In its Opposition Brief, Timaero focuses primarily on the first two categories of alleged misstatements regarding fuel efficiency and training. *See id.* 6 ("[D]espite knowing that it could not build a properly certified MAX with class-leading fuel efficiency ***and*** only computer-based training for NG pilots, Boeing marketed those very specifications to Timaero to induce execution of the Purchase Agreement."); *see also id.* at 13 (similar). As noted in Boeing's Motion, Timaero has failed to plausibly allege that Boeing made actionable false statements on these or any other subjects. Mot. Br. 8-9.

First, although Timaero repeatedly references its allegations regarding fuel efficiency, *see* Opp. Br. 1, 4, 6, it does not dispute Boeing's contention that the Complaint *does not allege that the MAX is not fuel efficient*. *See* Mot. Br. 7 n.4. Thus, any statements about fuel efficiency are not even alleged to have been "false" and cannot support a fraud claim. *Peters*, 618 N.E.2d at 463.

Second, Boeing's alleged representation that simulator training would not be required for NG pilots transitioning to the MAX is insufficient to support a fraud claim, because the FAA—not Boeing—was responsible for determining the MAX's training requirements, and that decision was still years down the road when the parties negotiated their Purchase Agreement in 2014. Boeing cannot be held liable in fraud for inaccurately predicting a future regulatory action. *See Toulon v. Cont'l Cas. Co.*, 877 F.3d 725, 738 (7th Cir. 2017) (affirming dismissal of a fraud claim based on an insurer's statement about rates, because the insurer could not "know" about "regulatory approval . . . years in the future").

Timaero tries to avoid this problem by arguing that the level of training required for pilots transitioning from the NG to the MAX—as well as the subjects of Boeing's other purported misrepresentations—constituted "features of the aircraft." Opp. Br. 8. But that characterization is incorrect. The FAA determines the level of training required for transitioning pilots, including whether simulator training is required, *see* FAA Advisory Circular No. 120-53B, Appendix 2 at 7

5

(Nov. 5, 2013), *available at* https://www.faa.gov/documentLibrary/media/Advisory_Circular/AC_120-53B.pdf (last accessed Aug. 11, 2020), and in 2014 that regulatory determination was still years away. *See* Compl. ¶ 170. Such a determination by a government regulator is akin to statements of "zoning or building code violations," which cannot sustain a fraud claim as a matter of law. *Kupper v. Power*s, 71 N.E.3d 347, 355 (Ill. App. Ct. 2017). Like statements about the "future zoning" of property for sale, Boeing's statements projecting the FAA's training requirements are "not … actionable," as they were a "prognostication concerning a future happening." *Tim Thompson, Inc. v. Vill. of Hinsdale*, 617 N.E.2d 1227, 1246-47 (Ill. App. Ct. 1993).

The three cases that Timaero cites on this point are inapposite. The first involved a claim that an insurance company defrauded a policyholder by misrepresenting the effect of an *already* issued IRS notice. *Stephenson v. Hartford Life & Annuity Ins. Co.*, 2004 WL 2260616, at *5, *9 (N.D. Ill. Oct. 1, 2004). The second addressed a business's statements regarding its *past* "experience working in retail supply chain logistics," the *current* "capabilities" of "its IT system," and its *past* success with "launch[es]" and "projects." *Dyson, Inc. v. Syncreon Tech. (Am.), Inc.*, 2019 WL 3037075, at *3 (N.D. Ill. July 11, 2019). And the third involved a contractor's estimate for the cost of building a house—which is far from a prediction of a future determination by an independent regulator. *See Thacker v. Menard, Inc.*, 105 F.3d 382, 383, 386 (7th Cir. 1997). Timaero thus has failed to identify any Illinois precedent supporting the viability of its claim that Boeing committed fraud in predicting the likely outcome of a regulatory process that was still years from resolution.

Finally, the two remaining alleged Boeing misrepresentations—which Timaero does not specifically defend—also cannot support a fraud claim. The highly generalized predictions about the MAX's qualities—that it would be "saleable and leasable, a good value for Timaero, and … safe" (Opp. Br. 4)—do not qualify as actionable statements of fact that can serve as the basis for a fraud claim. *See* Mot. Br. 10. Illinois courts have long held that a "'judgment as to … value'" is not a statement of fact. *Neptuno v. Arbor*, 692 N.E.2d 812, 816 (Ill. App. Ct. 1998) (quotation marks omitted); *see* Mot. Br. 10 (citing *Avery v. State Farm Mut. Auto. Ins. Co.*, 835 N.E.2d 801, 846-47 (Ill. 2005) (collecting precedent rejecting fraud claims based on similar statements)). And

6

any statements that the MAX would be "airworthy, safe, … and in compliance with aviation regulations," Opp. Br. 4, were—like the alleged training representations—non-actionable promises of future performance and regulatory outcomes, not statements of existing fact. *See Tim Thompson*, 617 N.E.2d at 1246-47; *Peters*, 618 N.E.2d at 465 ("representations" about a machine are not actionable in fraud if the machine has "yet to be designed and constructed" or the representations are "dependent upon any future conduct of defendant").

### 2.     Timaero does not plausibly allege wrongful intent.

As Boeing explained in its Motion, Timaero has failed to adequately plead intent with respect to its fraudulent inducement claim because it does not allege the kind of "specific, objective manifestations of fraudulent intent" necessary for promissory fraud. Mot. Br. 11 (quoting *Bower*, 928 F.3d at 1012). Timaero's arguments to the contrary fail because not a single allegation in its Complaint plausibly suggests wrongful intent on the part of an individual who made, or is legally responsible for, Boeing's alleged misrepresentations to Timaero.

First, Timaero seeks to avoid these requirements of Illinois law by contending that Boeing's alleged misrepresentations concerned "existing facts" about the MAX, not future performance, and therefore that Timaero's claims do not allege promissory fraud. Opp. Br. 5-6. That argument defies common sense and misreads the very case that Timaero relies upon. Timaero's fraud claim is predicated on statements that Boeing allegedly made while the MAX was still being developed and designed, years before the FAA certified the airplane and determined the training requirements for MAX pilots. *See* Compl. ¶¶ 61-64, 158. The statements were thus not about "a machine" "of a known, specified, and certain type," as Timaero contends, Opp. Br. 6 (emphasis and quotation marks omitted); rather, they concerned an airplane that had "yet to be designed and constructed" and were unquestionably "dependent upon" Boeing's (and the FAA's) "future conduct." *Peters*, 618 N.E.2d at 465 (quotation marks omitted). Timaero's fraud claims, therefore, fall squarely "within the traditional rule that an action for fraud may not be based upon opinion or representations relating to future contingent events." *Id.* (quotation marks omitted).

Second, Timaero repeatedly contends that a defendant's "reckless disregard" for a statement's "truth or falsity" can support a fraud claim. Opp. Br. 7 (quotation omitted); *see also id.* 8, 13. But that is not true for promissory fraud claims, which require an "intentionally false promise," not mere recklessness. *Bower v. Jones*, 978 F.2d 1004, 1012 (7th Cir. 1992) (quotation omitted). This court should reject Timaero's attempt to expand state-law liability for promissory fraud by lowering the pleading requirement, *see Todd v. Societe Bic, S.A.*, 21 F.3d 1402, 1412 (7th Cir. 1994) (en banc), especially given the doctrine's "disfavored" status under Illinois law, *Bower*, 978 F.2d at 1012.

Third, as Boeing pointed out in its Motion, Timaero has failed to allege that any of the Boeing sales personnel who purportedly made misrepresentations to Timaero were aware at the time that those statements were false. *See* Mot. Br. 9. Timaero asserts that it has sufficiently alleged such knowledge because Timaero has "linked specific higher ups at Boeing to the fraud." Opp. Br. 8 (alterations and quotation marks omitted). Timaero has failed to establish that Illinois law imputes to the company as a whole the knowledge of senior officials who had no involvement in the allegedly fraudulent communications at issue. *See, e.g., Pugh v. Tribune Co.,* 521 F.3d 686, 697 (7th Cir. 2008) ("[T]he corporate scienter inquiry must focus on 'the state of mind of the individual corporate official or officials who make or issue the statement (or order or approve it or its making or issuance, or who furnish information or language for inclusion therein, or the like) rather than generally to the collective knowledge of all the corporation's officers and employees acquired in the course of their employment.'") (citation omitted); *C&K Nuco, LLC v. Expedited Freightways, LLC*, 2016 WL 3364766, at *10 (N.D. Ill. June 17, 2016) (holding that "[t]he Seventh Circuit's reasons for rejecting the concept of collective intent in securities fraud cases supports rejecting collective intent in [Illinois] common-law fraud cases, as well"). And even if this collective intent theory were the law, Timaero has not come close to plausibly alleging that senior Boeing officials had such knowledge here. Timaero has not alleged, for example, that any senior Boeing official received the purported FAA warning in 2013 about the training effects of adding features to the MAX. *See* Compl. ¶¶ 32-33, 81, 167. Nor has it plausibly alleged any facts tending to show that

8

any senior Boeing official knew that the MAX "had aerodynamic problems" and, as a result, that it "would not fly similarly to the NG" and would require simulator training. *Id.* ¶ 167.[1]

Fourth, to plead actionable fraud based on these alleged representations, Timaero must plausibly allege that, at the time the alleged promises were made, Boeing had "no intention of honoring" them. *Corley v. Rosewood Care Ctr., Inc. of Peoria*, 388 F.3d 990, 1007 (7th Cir. 2004). Timaero claims to have alleged that Boeing knew as early as 2012 that additional simulator training would be required because of the MAX's "aerodynamic problems." Opp. Br. 6. But while Timaero's fraudulent inducement claim hinges on this "core bit of speculation," *Ceas v. Chrysler Group LLC*, 78 F. Supp. 3d 869, 882 (N.D. Ill. 2015), its own allegations betray its implausibility. According to the Complaint, the original MCAS design addressed a pitch-up tendency that was present only "during extreme flight conditions" involving "certain high-speed maneuvers," and this original design incorporated "significant safety features and fail-safes." Compl. ¶¶ 52-53; *see also id.* ¶ 58. Timaero further alleges that, in response to flight testing in 2016, *id.* ¶ 61, Boeing made "major design changes" to the airplane that removed these safeguards, *see id.* ¶ 63; *see also id.* ¶ 64.[2] That sequence, which portrays the alleged deviations from the initial design as not having occurred until 2016 or later, forecloses Timaero's speculation that Boeing already fully understood the alleged aerodynamic flaw with the MAX when the parties entered into their Purchase Agreement more than two years earlier.

---

[1] Timaero alleges that Boeing's Chief Technical Pilot for the 737 MAX became aware of an alleged flaw with MCAS in November 2016. But in addition to the timing problem that this allegation presents for Timaero's fraudulent inducement claim, *see* Mot. Br. 9, Timaero does not allege that the MAX's Chief Technical Pilot had any communications with Timaero or that the position is sufficiently senior to establish wrongful intent on the part of the company as a whole. *See* Opp. Br. 9; Compl. ¶¶ 31, 69, 90-94.

[2] Timaero wrongly asserts that its allegation of Boeing's "knowledge of the MAX's design flaws … must be taken as true." Opp. Br. 6. Rule 8(a) requires factual allegations supporting "a *plausible* inference of knowledge." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 686 (7th Cir. 2014) (emphasis added); *see also Ashcroft v. Iqbal*, 556 U.S. 662, 687 (2009) (noting the "strictures of Rule 8" apply to "condition of mind" allegations (quotation omitted)).

Timaero also asserts that it has adequately pleaded wrongful intent because of its allegation that "[t]he FAA warned Boeing in 2013 that adding features, e.g., MCAS, to the aircraft would result in additional simulator training." Opp. Br. 6 (citing Compl. ¶¶ 32-33, 81-83, 96, 158). But Timaero does not deny—in fact, it alleges—that the very same FAA communication also noted that the training issue "ha[d] not yet been evaluated." Compl. ¶ 32. Furthermore, the Complaint alleges in numerous places that Boeing spent considerable time and effort attempting to *secure* computer-based training, which is inconsistent with the assertion that Boeing did not intend to perform as promised. *See, e.g.*, Compl. ¶¶ 94, 97. Finally, the FAA approved computer-based training for the MAX at its entry into service in 2017.[3] Timaero does not identify any Illinois precedent recognizing a claim for promissory fraud where the defendant delivered on its promise. *See generally* Opp. Br. 12-13.

In addition, Timaero makes no effort to identify a plausible motive for Boeing to "permanently compromise[] the safety and reputation of the 737 MAX," *compare* Compl. ¶ 24, *with id.* ¶ 160(e), through alleged misrepresentations that, upon their inevitable discovery, would bring "a halt to" all MAX sales, *DiLeo v. Ernst & Young*, 901 F.2d 624, 629 (7th Cir. 1990). Nor does Timaero deny that the four-year warranty Boeing provides customers for each aircraft is fundamentally inconsistent with the alleged fraudulent scheme. Mot. Br. 12. "If fraud was [Boeing's] aim, it went about the process in a very unlikely manner by giving [customers a warranty] that would protect them from injury." *Corley*, 388 F.3d at 1007. Instead, Timaero criticizes Boeing's corporate integrity and what it calls Boeing's "self-righteous, can-do-no-wrong attitude," Op. Br. 11, as if that somehow explains away the irrationality of Timaero's fraud allegations. But Ti-

---

[3] *See* U.S. Dep't of Transport., Timeline of Activities Leading to the Certification of the Boeing 737 MAX 8 Aircraft and Actions Taken After the October 2018 Lion Air Accident at 11 (June 29, 2020). This Court should take judicial notice of the official timeline in this report, which is cited by Timaero, *see* Opp. Br. 13 n.11, and therefore "is not subject to reasonable dispute," *Denius v. Dunlap*, 330 F.3d 919, 926 (7th Cir. 2003) (taking judicial notice of official records on an agency website).

10

maero's *ad hominem* attacks on Boeing cannot paper over the deficiencies in its pleading. Timaero's claim for fraudulent inducement is implausible and deficient under Illinois law and should be dismissed.

### B. Timaero fails to plausibly allege fraudulent misrepresentations or omissions after contract execution.

Timaero's complaint also alleges that Boeing committed fraud by making false representations and omissions to Timaero after signing the Purchase Agreement in January 2014. Compl. ¶ 170. Timaero's Opposition Brief largely neglects this claim, and the few arguments Timaero makes do not establish the plausibility required by Rule 8(a).

#### 1. Timaero has not identified any cognizable, plausible reliance based on the alleged fraud.

As Boeing pointed out in its Motion, Timaero has no claim for fraud based on alleged misrepresentations or omissions after the contract was signed unless it can identify "reliance other than its continued performance of the Purchase Agreement." Mot. Br. 13. Timaero does not even attempt to refute this proposition and devotes only a single paragraph to the reliance issue. Timaero claims reliance based on its remaining a party to the Purchase Agreement, making payments, and accepting airplane deliveries. *See* Opp. Br. 10. But those actions are part of the "preexisting legal duty" Timaero had under the Purchase Agreement and therefore cannot show reliance sufficient to recover legally cognizable damages for fraud.[4] *Sinclair v. State Bank of Jerseyville*, 566 N.E.2d 44, 46 (Ill. App. Ct. 1991); *see also Greenberger*, 631 F.3d at 401 (finding no "actual reliance" or "damages resulting from that reliance" where the fraud allegation was "a reformulation of the contract claim").

The Supplemental Agreements do not provide a plausible basis for reliance either. *See* Opp. Br. 10. Timaero references Supplemental Agreement No. 1, which substituted 737 MAXs for two

---

[4] Contrary to Timaero's claim, *see* Opp. Br. 11 n.6, Boeing did challenge this aspect of its damages allegations, *see* Mot. Br. 13. When it comes to fraud claims involving preexisting legal duties, allegations of reliance and damages are often interwoven, as both are derivative of the underlying legal obligation. *See, e.g.*, *Greenberger*, 631 F.3d at 401.

11

Boeing 737-800 aircraft. *See* Opp. Br. 10; *see also* Compl. ¶ 175. But Timaero does not deny that the parties executed Supplemental Agreement No. 1 in September 2016, *before* Boeing personnel allegedly discovered issues with the MCAS design and made "major design changes." Compl. ¶ 175; *see also* Mot. Br. 12 n.5. Timaero cannot base reliance on complying with an agreement that preexisted the alleged factual predicate for its fraud claim. *See Sinclair*, 566 N.E.2d at 46. And Timaero does not deny that the Complaint lacks any factual allegations regarding the remaining "seven Supplemental Agreements" that would demonstrate reliance. *See* Mot. 13 n.7.[5]

Timaero also cannot establish reliance by claiming it resold airplanes to its customers. *See* Opp. Br. 10. Timaero alleges no specifics about when it entered into these contracts, as required by Rule 9(b), *see* Mot. Br. 6,[6] and by Illinois precedent, *see Ludlow Coop. Elevator Co. v. Burkland*, 87 N.E.2d 238, 241 (Ill. App. Ct. 1949) (holding there was no reliance where plaintiff agreed to resell corn before alleged misrepresentation). Also, the alleged lost sales cannot qualify as fraud damages, as they are not "distinct from" the consequences Timaero claims from the alleged breach of contract. *Greenberger*, 631 F.3d at 401; *compare* Compl. ¶ 178 (claiming lost business from fraud because of the MAX's alleged defects), *with id.* ¶ 194 (claiming same from breach of contract). Illinois does not permit plaintiffs to use fraud claims "to supplement every breach of contract claim with a redundant remedy." *Greenberger*, 631 F.3d at 399 (quotation marks omitted).

### 2. Timaero has not alleged facts establishing that Boeing had a duty to disclose all issues that arose during the development of the MAX.

Timaero's claim also relies on the premise that Boeing was under an affirmative duty to disclose details about the MAX's development. *See* Compl. ¶ 174. Timaero offers two rationales for the existence of such a duty to Timaero, *see* Opp. Br. 14, neither of which is legally viable.

---

[5] Even if this Court were to conclude that Timaero has adequately pleaded reliance based on one or more of the Supplemental Agreements, that would not support a fraud claim challenging the entire Purchase Agreement. It would at most support a fraud claim challenging that particular Supplemental Agreement.

[6] Timaero mentions unspecified "discussions" with "potential clients" being put "on hold." Compl. ¶ 195; *see also id.* ¶ 179 ("Nordstar has put the entire discussion on hold"). But it does not identify any binding contracts formed or actual sales made in reliance on Boeing's alleged misrepresentations.

First, Timaero asserts it has "a special relationship" with Boeing based on Boeing's greater understanding of the MAX and the "trust and confidence" Timaero had "in Boeing." *Id.* But Timaero does not cite any Illinois case recognizing a "special relationship" between a manufacturer and a sophisticated corporate customer such as Timaero. *See id.* To the contrary, Illinois precedent makes clear that "asymmetric information alone does not … establish a special trust relationship" imposing affirmative disclosure obligations. *Toulon*, 877 F.3d at 738 (quotation omitted). Indeed, the Illinois Supreme Court has rejected the claim that an auto manufacturer has a special relationship with the customers who purchase its vehicles, *see Connick v. Suzuki Motor Co., Ltd.*, 675 N.E.2d 584, 593 (Ill. 1996)—which establishes *a fortiori* that a commercial airplane manufacturer does not have such a special relationship with its customers.

Second, Timaero contends that Boeing's statements about the FAA certification process were "half-truths" triggering a duty to disclose. Opp. Br. 14. But the Complaint does not contain, nor does Timaero identify, "an affirmative statement" that a Boeing employee made *to Timaero* about FAA certification that was "passe[d] off as the whole truth." *Crichton* v. *Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009). And regardless of any such statement, the lack of cognizable reliance by Timaero, *see supra* Part II.B.1, precludes any claim based on a supposed duty to disclose developments in the FAA certification process.

### 3. Boeing's alleged misrepresentations to the FAA cannot support Timaero's fraud claim.

Timaero asserts that Boeing's alleged misconduct in the certification of the MAX can support a fraud claim because Timaero "relied on Boeing's statements to the FAA." Opp. Br. 10. But neither the facts it has alleged, nor the authority it cites, supports that conclusion.

To begin with, both cases that Timaero cites involved alleged misrepresentations *before* the plaintiffs entered into the contracts at issue. *See St. Joseph Hosp. v. Corbetta Const. Co., Inc.*, 316 N.E.2d 51, 62 (Ill. App. Ct. 1974); *Learjet Corp. v. Spenlinhauer*, 901 F.2d 198, 199 (1st Cir. 1990). Here, by contrast, Timaero alleges that Boeing made misrepresentations to the FAA *after* it entered into the Purchase Agreement.

13

Moreover, Timaero does not allege any facts plausibly suggesting that Boeing intended its statements to the FAA to reach Timaero, or that the statements did in fact reach Timaero. *See* Compl. ¶¶ 62-66. While *Learjet* predicted that Kansas tort law would permit a fraud claim based on misrepresentations to the FAA that were not intended to, and did not themselves, reach the plaintiff, *see* 901 F.2d at 200-03, Illinois law does not permit such a claim. In Illinois, defendants are liable for a "misrepresentation" to a third party only if: (1) the "statement by the defendant [was] made with the *intention* that it reach the plaintiff and influence his action"; (2) the statement "*does reach him*"; and (3) "he does rely upon it, to his damage." *St. Joseph Hosp.*, 316 N.E.2d at 72 (emphases added); *see also Shannon v. Boise Cascade Corp.*, 805 N.E.2d 213, 219 (Ill. 2004) (no claim if the "alleged misrepresentations did not … reach" plaintiff). Multiple courts in other jurisdictions have refused to follow *Learjet* because of similar requirements under the state law at issue. *See, e.g.*, *Rocky Mountain Helicopters*, 24 F.3d 125, 132 & n.4 (10th Cir. 1994); *Sebago, Inc. v. Beazer E., Inc.*, 18 F. Supp. 2d 70, 87 (D. Mass. 1998).[7]

Accordingly, Timaero's allegations that Boeing made misrepresentations to the FAA during the MAX certification process cannot support its fraud claims.[8]

### III. Count II's good faith and fair dealing claim should be dismissed.

In its Opposition Brief, Timaero does not defend the viability of its good faith and fair dealing claim. Instead, it simply argues that the claim cannot be dismissed because it was combined with

---

[7] *Learjet* also predates the Supreme Court's decision in *Buckman Co. v. Plaintiffs' Legal Committee*, which held that federal law preempts "fraud-on-the-agency claims" that seek to impose liability under state tort law for misrepresentations during a federal agency's regulatory processes. 531 U.S. 341, 353 (2001). In fact, the Third Circuit decision that *Buckman* reversed relied on *Learjet,* thus casting further doubt on the viability of *Learjet. See In re Orthopedic Bone Screw Liab. Litig.*, 159 F.3d 817, 826 (3d Cir. 1998) (citing *Learjet*), *rev'd sub nom. Buckman*, 531 U.S. 341.

[8] Timaero contends that government investigations and reports into the development and certification of the MAX support its fraud claims. *See* Opp. Br. 13 & n.11. But none of those reports suggests that Boeing defrauded any of its customers, let alone that it defrauded Timaero specifically. Nor do the reports provide any support for the critical elements of Timaero's fraud claims, including Timaero's contention—unsupported by well-pleaded facts—that Boeing knew that the MAX would not qualify for computer-based training for NG pilots when it entered into the Purchase Agreement.

its breach of contract claim in Count II of the Amended Complaint. Opp. Br. 15; *see also* Mot. Br. 4, 15. But even though the Seventh Circuit has noted in dictum that "Rule 12(b)(6) doesn't permit piecemeal dismissals of *parts* of claims," *BBL, Inc. v. City of Angola*, 809 F.3d 317, 325 (7th Cir. 2015), district courts in this Circuit have determined that they *can* dismiss "what the parties call[] 'part' of a claim" if it is "in fact a standalone claim," *Kenall Mfg. Co. v. Cooper Lighting, LLC*, 354 F. Supp. 3d 877, 897-98 (N.D. Ill. 2018) (collecting cases). So if a single count "asserts two distinct claims," moving to dismiss one of those claims "does not amount to 'piecemeal dismissal of *parts of* claims.'" *W.P. v. Anthem Ins. Companies Inc.*, 2017 WL 605079, at *4 (S.D. Ind. Feb. 15, 2017) (quoting *BBL*, 809 F.3d at 325)).

That rule applies to Count II. Timaero does not deny that breach of the duty of good faith and fair dealing is a separate cause of action, distinct from breach of contract, with separate legal elements requiring different factual allegations. *See* Mot. Br. 15; *see also Nicholson v. Thrifty Payless, Inc.*, 2014 WL 618775, at *9 (W.D. Wash. Feb. 18, 2014) (noting that, under Washington law, "a breach of the duty of good faith and fair dealing gives rise to a separate and independent cause of action"). Nor does Timaero deny that it has failed to identify a contract term that would support a claim of breach of the duty of good faith and fair dealing. *See* Mot. Br. 15; Opp. Br. 15. Timaero's failure to identify such a term—in its Original Complaint, First Amended Complaint, and Opposition Brief—confirms that the claim should be dismissed and that granting leave to amend it would be futile. *See Glover v. Carr*, 949 F.3d 364, 367-68 (7th Cir. 2020).

## CONCLUSION

For the reasons given, this Court should dismiss Count I in its entirety and dismiss Count II's claim for breach of the duty of good faith and fair dealing.

Respectfully submitted,

By: /s/ Kathleen A. Stetsko
    One of the Attorneys for
    The Boeing Company

15

Eric B. Wolff
PERKINS COIE LLP
1201 Third Avenue, Suite 4900
Seattle, WA 98101-3099
Telephone: 206.359.8000
Fax: 206.359.9000
Email: EWolff@perkinscoie.com

Kathleen A. Stetsko
PERKINS COIE LLP
131 South Dearborn Street, Suite 1700
Chicago, Illinois 60603-5559
Telephone: 312.324.8400
Fax: 312.324.9400
Email: KStetsko@perkinscoie.com

Dan K. Webb
Christopher B. Essig
WINSTON & STRAWN LLP
35 West Wacker Drive
Chicago, IL 60601
Telephone: (312) 558-5600
Fax: (312) 558-5700
Email: DWebb@winston.com
Email: CEssig@winston.com

## CERTIFICATE OF SERVICE

I, Kathleen A. Stetsko, certify that on August 20, 2020, I electronically filed the foregoing REPLY IN SUPPORT OF BOEING'S MOTION TO DISMISS with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to all attorneys of record.

I certify under penalty of perjury that the foregoing is true and correct.

 /s/     Kathleen A. Stetsko
PERKINS COIE LLP
131 South Dearborn Street, Suite No. 1700
Chicago, Illinois 60603-5559
Tel: (312) 324-8400
Fax: (312) 324-9400