1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Hon. Ricardo S. Martinez

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

TIMAERO IRELAND LIMITED,

                    Plaintiff,

        v.

THE BOEING COMPANY,

                    Defendant.

No. 2:21-00488-RSM

TIMAERO'S OPPOSITION TO
BOEING'S MOTION TO DISMISS
COUNTS I, II, III, AND V IN FULL

JURY TRIAL DEMANDED

TIMAERO'S OPPOSITION TO BOEING'S MOTION
TO DISMISS COUNTS I, II, III, AND V IN FULL
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

1

## <u>Table of Contents</u>

I.      Introduction ................................................................................................................... 1

II.     Relevant Factual and Procedural Background .......................................................... 2

III.    Legal Standards ............................................................................................................ 2

        A.  Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6) ..................................... 2

        B.  Pleading Requirements Under Fed. R. Civ. P. 9(b) ..................................... 3

IV.     Timaero's Second Amended Complaint Adequately Alleges Fraud Under Washington and Illinois Law ............................................................................................................... 4

        A.  Timaero's Choice of Washington Law Controls ........................................... 4

        B.  Timaero's Allegations are Sufficient for Fraud and Negligent Misrepresentation Under Washington Law ......................................................................................... 8

        C.  Timaero's Allegations are Sufficient for Fraud and Negligent Misrepresentation Under Illinois Law ............................................................................................. 10

            1.  Boeing Had a Duty to Disclose Half-Truths to Timaero After It Lied to the FAA Regarding MCAS .......................................................................... 10

            2.  Boeing Had a Duty to Correct Statements Which Become False or Misleading Based on New Information ................................................................. 12

        D.  Timaero's Second Amended Complaint Adequately Alleges Pre-Contract Misrepresentations Inducing It to Enter the Purchase Agreement and Supplemental Agreements ................................................................................................... 13

            1.  Boeing's Misrepresentations of Existing Facts Between 2013 and 2018 Are Actionable .......................................................................................... 15

        E.  Timaero Sufficiently Pled Fraud and Negligent Misrepresentation Under Rule 9(b) 17

V.      Timaero Alleges Sufficient Harm to Support the WPLA Claims. ......................... 20

VI.     Timaero's Second Amended Complaint States a Claim for Unjust Enrichment. .... 22

VII.    Conclusion .................................................................................................................. 24

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page ii
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

# **Table of Authorities**

**Cases**

*A.F.A.B., Inc. v. Town of Old Orchard Beach*,
    639 A.2d 103 (Me. 1994) ........................................................................................ 23

*Allstate Ins. Co. v. Tacoma Therapy, Inc.*,
    No. C13-5214 RBL, 2013 WL 4763607 (W.D. Wash. Sept. 4, 2013) ........................................ 3

*American Cyanamid Co. v. McGhee*,
    317 F.2d 295 (5th Cir. 1963) .................................................................................... 6

*Arthur v. United States by and Through Veterans Admin.*,
    45 F.3d 292 (9th Cir. 1995) ..................................................................................... 23

*Ashcroft v. Iqbal*,
    129 S.Ct. 1937 (2009) ......................................................................................... 3, 15

*Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*,
    928 F.3d 670 (7th Cir. 2019) .................................................................................... 17

*Bailie Commc'ns v. Trend Business Sys.*,
    61 Wn. App. 151 (Wash. App. 1991) .......................................................................... 23

*Bechuck v. Home Depot U.S.A., Inc.*,
    814 F.3d 287 (5th Cir. 2016) ..................................................................................... 6

*Bell Atl. Corp. c. Twombly*,
    550 U.S. 544 (2007) ........................................................................................... 3, 15

*Broam v. Bogan*,
    320 F.3d 1023 (9th Cir. 2003) .................................................................................... 3

*Crichton v. Golden Rule Ins. Co.*,
    576 F.3d 392 (7th Cir. 2009)) ................................................................................... 10

*Eastwood v. Horse Harbor Found., Inc.*,
    241 P.3d 1256 (Wash. 2010) ................................................................................... 20

*Frerck v. Pearson Educ., Inc.*,
    63 F. Supp. 3d 882 (N.D. Ill. 2014) ........................................................................... 11

*Gen. Elec. Capital Corp. v. Lease Resolution Corp.*,
    128 F.3d 1074 (7th Cir. 1997) .................................................................................... 3

*Glacier Nw., Inc. v. Int'l Bhd. Of Teamsters Loc. Union No. 174*,
    198 Wn.2d 768 (2021) ......................................................................................... 15

*Hemmings v. Insys Therapeutics, Inc.*,
    No. 18-cv-2036, 2019 WL 296562 (N.D. Ill. Jan. 23, 2019) .................................................. 4

*Hendrickson v. Tender Care Animal Hosp. Corp.*,
    312 P.3d 52 (Wash. App. 2013) ................................................................................ 22

*In re Boeing 737 Max Pilots Litig.*,
    No. 19-cv-5008, 2022 U.S. Dist. LEXIS 197454 (N.D. Ill. Oct. 31, 2022) .................................. 19

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page iii
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

*Int'l Driver Training Inc. v. J–BJRD Inc.*,
  202 Fed. Appx. 714 (5th Cir.2006)........................................................................7

*Johnson v. Nasi*,
  50 Wn.2d 89 (1957)..............................................................................................22

*Judson Atkinson Candies, Inc. V. Latini-Hohberger Dhimantec*,
  237 F.R.D. 173 (N.D. Ill. 2006)............................................................................4

*Judson Atkinson Candies, Inc. V. Latini-Hohberger Dhimantec*,
  237 F.R.D. 173 (N.D. Ill. 2006)............................................................................4

*Kearns v. Ford Motor Co.*,
  567 F.3d 1120 (9th Cir. 2009)...............................................................................3

*Lee v. City of Los Angeles*,
  250 F.3d 668, 677 (9th Cir. 2001)..........................................................................3

*Lott v. Levitt*,
  556 F.3d 564 (7th Cir. 2009)..................................................................................7

*Martinez v. Freedom Mortg. Team, Inc.*,
  527 F. Supp. 2d 827 (N.D. Ill. 2007)...................................................................15

*McCoy v. Iberdrola Renewables, Inc.*,
  760 F.3d 674 (7th Cir. 2014).................................................................................7

*Meridian Labs., Inc. v. OncoGenerix USA, Inc.*,
  No. 18-cv-6007, 2020 WL 2468174 (N.D. Ill. May 13, 2020)..............................4

*Meridian Labs., Inc. v. OncoGenerix USA, Inc.*,
  No. 18-cv-6007, 2020 WL 2468174 (N.D. Ill. May 13, 2020)..............................3

*Moore v. Kayport Package Express, Inc.*,
  885 F.2d 531 (9th Cir. 1989).................................................................................4

*Neubronner v. Milken*,
  6 F.3d 666 (9th Cir. 1993)...................................................................................19

*Newman v. Metro. Life Ins. Co.*,
  885 F.3d 992 (7th Cir. 2018)...............................................................................16

*Nobl Park, L.L.C. v. Shell Oil Co.*,
  122 Wn.App. 838 (Wash. App. 2004)..................................................................20

*Northwood Estate, LLC v. Lennar Nw., Inc.*,
  No. 52000-1-II, 2020 Wash. App. LEXIS 535 (Wash. App. Oct. 29, 2019)........23

*Pedrina v. Chun*,
  987 F.2d 608 (9th Cir. 1993).................................................................................6

*Ross v. Raymer*,
  32 Wn.2d 128 (1948)............................................................................................22

*Sanford v. MemberWorks, Inc.*,
  625 F.3d 550 (9th. Cir. 2010)................................................................................3

*Scott v. Carr*,
  No. C20-0236-RSM, 2020 U.S. Dist. LEXIS 203236 (W.D. Wash. Oct. 30, 2020)........23

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page iv
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

*Smartwings, A.S. v. Boeing Co.*,
No. C21-918 RSM, 2022 U.S. Dist. LEXIS 33640 (W.D. Wash. Feb. 25, 2022) .......................... 9

*Sprewell v. Golden State Warriors*,
266 F.3d 979 (9th Cir.) ....................................................................................................... 3

*Taylor v. Intuitive Surgical, Inc.*,
187 Wn.2d 743 (2017) ...................................................................................................... 22

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*,
119 Wn.2d 334 (1992) ...................................................................................................... 21

*Van Dusen v. Barrack*,
376 U.S. 612, 639 (1964) ................................................................................................... 5

*Vernon v. Qwest Commc'ns Int'l, Inc.*,
643 F. Supp. 2d 1256 (W.D. Wash. 2009) ........................................................................ 23

*Wash. Water Power Co. v. Graybar Elec. Co.*,
112 Wn.2d 847 (Wash. 1989) ..................................................................................... 20, 21

*Williams v. Boeing Co.*,
517 F.3d 1120 (9th Cir. 2008) .......................................................................................... 17

*Wilmington Trust Co. v. Boeing Co.*,
No. C20-402 RSM-MAT, 2021 U.S. Dist. LEXIS 36777 (W.D. Wash. 2021) ................. 9, 19, 20

*Wilson v. City of San Jose*,
111 F.3d 688 (9th Cir. 1997) ............................................................................................. 6

*Wool v. Tandem Computers Inc.*,
818 F.2d 1433 (9th Cir. 1987) ........................................................................................... 4

*Young v. Young*,
191 P.3d 1258 (Wash. 2008) ............................................................................................ 23

**Rules**

Fed. R. Civ. P. 1 .............................................................................................................. 5

Fed. R. Civ. P. 12 ............................................................................................................ 2

Fed. R. Civ. P. 41 ............................................................................................................ 5

Fed. R. Civ. P. 8(d)(2) .................................................................................................... 23

Fed. R. Civ. P. 9(b) ................................................................................................ 3, 4, 17

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page v
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

Plaintiff Timaero Ireland Limited ("Timaero") hereby opposes the Motion to Dismiss, Dkt. 120 ("Motion" or "Mot."), filed by The Boeing Company ("Boeing").

**I.    <u>Introduction</u>**

The 737-8 MAX ("MAX") fraud perpetrated by Boeing on its customers is one of the most consequential illicit acts in recent history directly causing the deaths of hundreds.

Boeing's prior 737-models had a reputation for reliability, recognized by Timaero as a purchaser of the previous model (the 737 NG ("NG")). However, Boeing bred a culture that allowed its employees to believe it was above safety regulations[1] and which resulted in this and numerous other fraud actions. During development of the MAX program, Boeing lost its way and sacrificed safety for expediency in a bid to keep up with competitor Airbus. Boeing's bottom line, impacted by sales of Airbus's A320neo, was its only consideration in self-certifying and releasing the MAX. Boeing was so obsessed with profits that it bred a culture of deceit, engaging in a scheme to sell airplanes it knew could not be adequately certified and could never meet Boeing's false representations.

Boeing's decision to let speed-to-market and salability drive the MAX's design, rather than safety, required modification of the existing NG to fast-track the MAX. At the heart of Boeing's MAX fraud were false representations that the MAX would have ***both*** exceedingly-good fuel efficiency while not requiring additional pilot simulator training for certified NG pilots. Boeing needed its customers to believe that they would save millions of dollars in fuel and training costs to make sales. However, Boeing refused to hit the brakes even as it encountered monumental and foundational design flaws that rendered its statements false. Boeing intentionally did not inform its customers of the mounting flaws, about which only Boeing could know, and instead fraudulently concealed material facts because its statements were the key to making sales.

Boeing's fraud led to inevitable catastrophe. Two MAX planes crashed, killing all on board, as a direct result of Boeing's corporate malfeasance. All MAXs were grounded from March 2019 to

---

[1] For example, in 2015, facing more than a dozen legal actions worth tens-of-millions of dollars for failing to comply with safety regulations, Boeing paid an unprecedented $12 million penalty to the FAA.

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 1
(Case No. 2:21-00488-RSM)

November 2020, but the fallout from Boeing's fraud is just beginning. Boeing's illicit actions have already been confirmed in numerous, ongoing reports. For instance, the House Committee has already found that Boeing fostered a "culture of concealment" and misrepresented the truth to customers and the FAA. Boeing's CEO was fired and numerous other key employees have since been fired, demoted, or forcibly retired. Boeing even admits that it conspired to defraud the FAA AEG in a deferred criminal prosecution agreement. (Dkt. 117, "Second Amended Complaint" or "SAC" ¶¶ 11-18, Exhibit 1.)

Some three years later, Boeing continues to shirk responsibility for the fraud it perpetrated on its customers, including Timaero. However, Boeing can no longer avoid liability. Despite its efforts to do so, Boeing cannot "Jedi mind trick" this Court. Timaero brings this action to redress Boeing's fraud and breach of contract. Boeing's Motion should be denied.

## II.    Relevant Factual and Procedural Background

Timaero commenced this action after learning Boeing intentionally misrepresented and/or omitted material information about the MAX. Boeing has refused to refund Timaero's $189,224,800 deposit. Additional details are well-known to this Court, which has on its docket numerous cases regarding Boeing's failures with the MAX, and are explained in Timaero's well-pled complaint. (SAC ¶¶ 9, 18, 103, 114, 123-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 304-313.) For brevity's sake, these facts are not repeated here.

This case was originally filed on December 17, 2019 in the Northern District of Illinois. While some claims were dismissed without prejudice, the case was transferred to this Court on March 15, 2021. (Dkt. 82 (authorizing "the filing of an amended complaint.").) Following transfer, Timaero amended its complaint on October 21, 2022 to further support its well-pled allegations. (Dkt. 117.) Boeing should be ordered to answer and defend itself in front of a jury.

## III.    Legal Standards

### A.    *Motions to Dismiss Under Fed. R. Civ. P. 12(b)(6)*

Rule 12(b)(6) motions are disfavored, as Courts in this circuit have long preferred cases be decided on the merits. *Allstate Ins. Co. v. Tacoma Therapy, Inc.*, No. C13-5214 RBL, 2013 WL

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 2
(Case No. 2:21-00488-RSM)

4763607, at *1 (W.D. Wash. Sept. 4, 2013) (citing *Broam v. Bogan*, 320 F.3d 1023, 1028 (9th Cir. 2003)). Timaero's allegations of material fact must be taken as true and construed in the light most favorable to it. *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir.), *amended on denial of reh'g*, 275 F.3d 1187 (9th Cir. 2001); *Lee v. City of Los Angeles*, 250 F.3d 668, 677, 690 (9th Cir. 2001). A plaintiff's claim survives a Rule 12(b)(6) challenge where, assuming all factual allegations to be true, a plausible claim for relief has been established. *See Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009). A claim has "facial plausibility" when the party seeking relief "pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* A Rule 12 motion should be denied if there is "any set of facts consistent with the allegations in the complaint" that would entitle the plaintiff to relief. *Bell Atl. Corp. c. Twombly*, 550 U.S. 544, 563 (2007).

### B.  Pleading Requirements Under Fed. R. Civ. P. 9(b)

Rule 9(b) requires a plaintiff asserting a claim of fraud to allege sufficiently "the time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentation." *Sanford v. MemberWorks, Inc.*, 625 F.3d 550, 558 (9th. Cir. 2010); *see Gen. Elec. Capital Corp. v. Lease Resolution Corp.*, 128 F.3d 1074, 1078 (7th Cir. 1997) (finding a plaintiff required to allege fraud "with particularity" with "the identity of the person who made the misrepresentation, the time, place, and content . . . and the method by which [it] was communicated."). "Rule 9(b) demands that the circumstances constituting the alleged fraud be specific enough to give defendants notice of the particular misconduct . . . so that they can defend against the charge and not just deny that they have done anything wrong." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009) (internal quotation marks omitted); *see Meridian Labs., Inc. v. OncoGenerix USA, Inc.*, No. 18-cv-6007, 2020 WL 2468174, at *7 (N.D. Ill. May 13, 2020) (holding "a plaintiff need not exclude all possibility of honesty . . . to give the particulars of fraud, nor need it explain in the complaint *why* the misrepresentation was false[.] It is enough to show, in detail, the nature of the charge, so that vague and unsubstantiated accusations of fraud do not lead to costly discovery and

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 3
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

public obloquy."). Notably, Rule 9(b) is relaxed when a plaintiff does not have access to factual details, such as when facts are within the defendant's exclusive knowledge. In such situations, plaintiffs cannot be expected to have personal knowledge of the relevant facts. *Wool v. Tandem Computers Inc.*, 818 F.2d 1433, 1439 (9th Cir. 1987); *Moore v. Kayport Package Express, Inc.*, 885 F.2d 531, 540 (9th Cir. 1989); *see Hemmings v. Insys Therapeutics, Inc.*, No. 18-cv-2036, 2019 WL 296562, at *2 (N.D. Ill. Jan. 23, 2019) (advising not to take "an overly rigid view of the formulation" and that "the precise details that must be included in a complaint may vary on the facts of a given case."); *see also Judson Atkinson Candies, Inc. V. Latini-Hohberger Dhimantec*, 237 F.R.D. 173, 175 (N.D. Ill. 2006) (noting Rule 9(b) is relaxed when facts are within the defendant's exclusive knowledge). Moreover, "[m]alice, intent, [and] knowledge . . . may be alleged generally." Fed. R. Civ. P. 9(b).

## IV.   Timaero's Second Amended Complaint Adequately Alleges Fraud Under Washington and Illinois Law

Timaero's Second Amended Complaint ("SAC") includes detailed and more-than-plausible allegations regarding Boeing's negligent and/or fraudulent misrepresentations of material facts. *See* (SAC ¶¶ 187-189, 195-218, 219-232, 233-251, 281-283) (setting forth factual allegations); *see also* (SAC ¶¶ 284-317) (alleging fraud); (SAC ¶¶ 318-347) (alleging negligent misrepresentation). These misrepresentations were relied upon by Timaero, and induced Timaero to enter into the Purchase Agreement, Supplemental Agreements, and accept delivery of two aircraft. (SAC ¶¶ 318-347.) Timaero's claims are governed by Washington law, and Boeing fails to provide any credible reason as to why Illinois law should apply. However, if Illinois law applies, Timaero's well-pled allegations are sufficient under Illinois law.

### A.   *Timaero's Choice of Washington Law Controls*

Boeing does not contest that Washington law applies to Timaero's contractual claims. Boeing also does not argue Timaero's Washington Product Liability Act claim must be brought under the products liability laws of another state. Boeing does, however, take issue with Timaero's new fraud and negligent misrepresentation claims brought under Washington law,

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO DISMISS COUNTS I, II, III, AND V IN FULL – Page 4 (Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

1    which it argues should be governed by Illinois law.

2        As outlined in *Van Dusen* and its progeny, Plaintiff's choice of law is paramount. *Van*

3    *Dusen* does not stand for the rigid rule that the transferor Court's laws must apply. Instead, *Van*

4    *Dusen* holds that Plaintiff's has the right to choose the applicable law. The Court's holding is

5    also subject to the qualification that "state laws of the transferor State which would significantly

6    affect the outcome of the case" need not apply. *Van Dusen v. Barrack*, 376 U.S. 612, 639, n. 40

7    (1964); *id.* at 639 ("In so ruling, however, we do not and need not consider whether in all cases §

8    1404 (a) would require the application of the law of the transferor, as opposed to the transferee,

9    State"). Here, Timaero chose Washington law, and as further evidence under Rule 41, its choice

10    should be accepted without question. In addition, because the differences between Washington

11    and Illinois would not significantly affect the outcome of the case, Washington law applies.

12        Boeing cites no binding legal precedent for restricting Timaero's claims to Illinois law

13    and removing its ability to choose law at this early stage of litigation.[2] In fact, none of Boeing's

14    cited cases even have similar procedural histories. In addition, this Court is deeply familiar with

15    not only Washington law, but other cases involving highly similar facts that have been brought in

16    this District, which Timaero is willing to accept for judicial economy and the "just, speedy, and

17    inexpensive determination" of this action. Fed. R. Civ. P. 1.

18        Indeed, the Federal Rules of Civil Procedure and prior precedent confirms that Timaero is

19    allowed to bring its claims under Washington law. Under Fed. R. Civ. P. 41,[3] Timaero as a

---

[2] Boeing's statements regarding the law of the case doctrine are misplaced. Courts routinely revisit factual and legal issues in complaints following a motion to dismiss when leave is granted to amend. Such is the case here, especially considering Timaero's claims in the Second Amended Complaint are under Washington law. As discussed herein, the Second Amended Complaint shows that Timaero's claims are well-pled and should be litigated. Moreover, Courts in this district routinely ignore argument in footnotes. *See, e.g., Ames v. Lindquist*, No. C16-5090BHS, 2016 U.S. Dist. LEXIS 94876, at *9 (W.D. Wash. July 20, 2016) ("Footnotes may be used for citation purposes only. Any substantive material contained in a footnote will be ignored."); *Dick Corp. v. SNC-Lavalin Constructors, Inc.*, No. C06-715-MJB, 2006 U.S. Dist. LEXIS 104166, at *7 (W.D. Wash. Oct. 2, 2006) ("The Court gives little weight to arguments that a party only chooses to present in a footnote.")

[3] Rule 41 allows a Plaintiff to file – "Without a Court Order" – "a notice of dismissal before the opposing party serves either an answer or a motion for summary judgment." Fed. R. Civ. P. 41(a)(1)(A)(1). Such as dismissal is without prejudice. Fed. R. Civ. P. 41(a)(1)(B). Nothing prevents a Plaintiff from dismissing a well-pled complaint to pursue an action elsewhere, provided that a complaint has not been previously dismissed. *Id.*

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 5
(Case No. 2:21-00488-RSM)

matter of right, can at all times prior to Boeing filing an answer or motion for summary

judgment, voluntarily dismiss this action and file a new complaint with whatever claims and

under whatever law it chooses. Timaero would "suffe[r] no impairment beyond [their] fee for

filing," with the prior court's findings, holdings, or dicta having no bearing on the re-filed

complaint "leav[ing] the parties as though no action had been brought." *Pedrina v. Chun*, 987

F.2d 608, 610 (9th Cir. 1993) (quoting *American Cyanamid Co. v. McGhee*, 317 F.2d 295, 297

(5th Cir. 1963)); *c.f.* Fed. R. Civ. P. 41(d) (providing financial penalties for – but not prohibiting

– dismissal and refiling).

Here, *Bechuck v. Home Depot U.S.A., Inc.* is instructive. 814 F.3d 287 (5th Cir. 2016).

Bechuck voluntarily dismissed a case against a party and the District Court sought to impose a

refiling restriction requiring re-field claims be brought in the same Court. *Id.* at 289. The

Appellate Court removed the restriction, noting that the District Court lacked jurisdiction

following a voluntary dismissal under Rule 41(a)(1)(A)(1). *Id.* at 292-94.

In doing so, the Court noted that "Rule 41(a)(1) essentially permits forum shopping."

This forum shopping is not without protections, however, for twice-dismissed claims (*Id.* at 293),

the early stage of the litigation (*Id.* at 293 n.8), and costs requirements (Fed. R. Civ. P. 41(d)).

"While this may seem distasteful to opposing parties, we have consistently held

that Rule 41(a)(1) means what it says . . . [and] [d]efendants who desire to prevent plaintiffs from

invoking their unfettered right to dismiss actions under Rule 41(a)(1) may do so by taking the

simple step of filing an answer." *Id.* at 293. For example, "[i]t is not uncommon for plaintiffs to

use voluntary dismissal to secure their preferred forum, such as when they seek to undo removal

and return to state court." *Id.* at 293 (internal quotations and citations omitted); *accord Wilson v.

City of San Jose*, 111 F.3d 688, 694 (9th Cir. 1997) ("Indeed [the right of voluntary dismissal]

frequently is used in this situation when a plaintiff, who is unwilling to prosecute the action in

federal court, wishes to dismiss in order to start a new action in state court and preclude removal

by the joinder of nondiverse parties, a change in the amount sought, or otherwise." (quoting 9

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 6
(Case No. 2:21-00488-RSM)

Wright & Miller, Federal Practice & Procedure § 2363 at 257-58 (footnotes omitted); *see Int'l Driver Training Inc. v. J–BJRD Inc.*, 202 Fed. Appx. 714, 716 (5th Cir. 2006) (per curiam)). Such a result is consistent with the overarching principle that a plaintiff has the right to choose its forum and the same result should be found here as Timaero, now in a new forum, is allowed to bring its preferred claims.

While Boeing relies on *McCoy* for its argument, it is not applicable in this matter. Unlike the case at hand, the litigation in *McCoy* was at a very advanced stage, with "[o]nly Outland's numerous third-party counterclaims against Gamesa [] at issue [on] appeal." *McCoy v. Iberdrola Renewables, Inc.*, 760 F.3d 674, 677 (7th Cir. 2014). The "procedural gamesmanship" the *McCoy* court concerned the fact that "Outland's third-party counterclaims [were] not part of the original case or controversy, so Outland needed an independent basis for federal subject matter jurisdiction to assert them as part of this lawsuit." 760 F.3d at 678. The loss(es) Outland suffered "on the merits under Illinois law" were numerous and at late stages in litigation. A motion by the opposing party for judgment on the pleadings under Rule 12(c) was granted, resulting in dismissal of all but one of Outland's counterclaims, while Outland's request for a preliminary injunction was ultimately denied following a *five-day* hearing. 760 F.3d at 679. The "merits" under which Outland was barred from arguing for application of Illinois law included a *settlement* (with a finding of good faith) which protected Outland from further claims by opposing parties *for contribution under the Illinois JTCA*. 760 F.3d at 679.

*Lott* is similarly not applicable in this matter. The *Lott* court was presiding over litigation that was at a very advanced stage, describing the events Boeing references as occurring "[s]even months after [dismissal of a defamation claim on grounds that the allegedly-defamatory statement could reasonably be read in another light], and shortly before discovery was set to end, [when] a flurry of activity ensued," with the activity including "[a] settlement of the remaining claim." *Lott v. Levitt*, 556 F.3d 564, 567 (7th Cir. 2009).

Unlike *McCoy* and *Lott*, Boeing has not filed an answer, no discovery has occurred, no

1   settlements have been reached, and Timaero first raised the application of Washington law (and

2   did not restrict to Illinois law other claims not explicitly citing Washington law) in its original

3   Complaint rather than in a response to Boeing's first motion for dismissal of claims.

4        Accordingly, Timaero's claims should be under Washington law.

5                    B.   *Timaero's Allegations are Sufficient for Fraud and Negligent*

6                         *Misrepresentation Under Washington Law*

7        Boeing and Timaero executed the initial Purchase Agreement for the sale of twenty (20) 737

8   MAX aircraft on January 10, 2014. (SAC ¶¶ 107-109.). Subsequently, Boeing and Timaero executed

9   seven (7) Supplemental Agreements between September 2016 and November 2018, with each of these

10  Supplemental Agreements providing that "[t]he Purchase Agreement is amended as set forth above,

11  and all other terms and conditions of the Purchase Agreement remain unchanged and are in full force

12  and effect." (SAC ¶¶ 187, 233-238.) Timaero made all advance payments in accordance with the

13  schedule set forth in the Purchase and Supplemental Agreements, and took delivery of two (2) MAX

14  aircraft following the execution of the Acceptance and Delivery form. (SAC ¶¶ 240-241.) Tellingly,

15  Boeing ignores these Supplemental Agreements, instead choosing to focus solely on the January 2014

16  contract. In this way, Boeing concludes that any representations it made to Timaero came before March

17  2016 – when MCAS was expanded to dangerous levels.

18       However, Boeing stayed silent regarding the Supplemental Agreements, concealing from

19  Timaero that MCAS had been expanded. (SAC ¶¶ 188, 241.) Yet, the Supplemental Agreements were

20  not benign or routine. For example, the parties enlarged the sale to include two (2) additional 737 MAX

21  aircraft and to include optional features. (SAC ¶¶ 187.) And in each one, Boeing readopted and

22  reaffirmed its commitments in the original Purchase Agreement. (SAC ¶¶ 187, 233-238 ("The

23  Purchase Agreement is amended as set forth above [].").)

24       Boeing fails in its efforts to resuscitate its flawed and previously rejected theory that fraud must

25  have come before the original contract between Timaero and Boeing in order to be actionable. As noted

26  in *Smartwings*, "Boeing does not adequately establish that fraudulent inducement must occur at

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 8
(Case No. 2:21-00488-RSM)

contract formation." *Smartwings, A.S. v. Boeing Co.*, No. C21-918 RSM, 2022 U.S. Dist. LEXIS 33640, at \*24 (W.D. Wash. Feb. 25, 2022). Instead, relying on the logic in *Wilmington*, the Court found that "even after Boeing and Smartwings executed their agreements, events relevant to Boeing's performance and Smartwings' ultimate acceptance continued to occur." *Id.* at 25 (citing *Wilmington Trust Co. v. Boeing Co.*, No. C20-402 RSM-MAT, 2021 U.S. Dist. LEXIS 36777 (W.D. Wash. 2021)). As explained in *Smartwings*, "[c]entral to [the *Wilmington*] decision was the fact that the *Wilmington* plaintiffs did 'not limit their deficiency allegations to the aerodynamic deficiencies created by the addition and placement of larger engines' but also 'pointed to 'the use of MCAS in lieu of making aerodynamic changes; the impact of MCAS, such as how it could cause the [737]MAX to enter into a dive with a fault or malfunction in one of the aircrafts two AOA sensors; and the absence of any education or training on MCAS or emergency procedures for its malfunction.'" *Id.* at 25 (citing *Wilmington*, 2021 U.S. Dist. LEXIS 36777, 2021 WL 754030 at \*5).[4]

The same is true here. (SAC ¶¶ 9, 18, 103, 114, 123-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 304-313.) Timaero's allegations include that Boeing intentionally and deliberately withheld information regarding MCAS, including (just as in *Wilmington*):

- the use of MCAS in lieu of making aerodynamic changes; (SAC ¶¶ 93-96.)

- the impact of MCAS, such as how it could cause the MAX to enter into a dive with a fault or malfunction in one of the aircrafts two AOA sensors; and (SAC ¶¶ 171-172, 178.)

- the absence of any education or training on MCAS or emergency procedures for its

---

[4] Boeing's arguments that Illinois law would come to the same result (dismissal) as Washington law follows the same rationale that was rejected by this Court in *Smartwings*. Namely, Boeing argues that "after the contract was formed, all that remained was performance and that Smartwings cannot be improperly induced to perform its own contractual obligations." *Smartwings, A.S. v. Boeing Co.*, No. C21-918 RSM, 2022 U.S. Dist. LEXIS 33640, at \*24. However, as reasoned in *Smartwings*, "the purchase of yet to be manufactured aircraft that would satisfy contractual specifications and obtain FAA certification" is different from "the common purchase of a production vehicle [in *Short v. Hyundai*]." Likewise, contracts regarding bank loan repayments and the applications thereof, as discussed in the two cases cited by Boeing, are even further attenuated. *See Sinclair v. State Bank of Jerseyville*, 566 N.E.2d 44 (1991); *Marc Dev., Inc. v. Wolin*, 904 F. Supp. 777 (1995).

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO DISMISS COUNTS I, II, III, AND V IN FULL – Page 9 (Case No. 2:21-00488-RSM)

malfunction (SAC ¶¶ 211-214, 253.)

Accordingly, Timaero's fraud and negligent misrepresentation claims should survive under Washington law.

C. *Timaero's Allegations are Sufficient for Fraud and Negligent Misrepresentation Under Illinois Law*

As recited by Judge Pallmeyer, "In Illinois, fraudulent concealment 'requires a plaintiff to 'allege that the defendant concealed a material fact when he was under a duty to disclose that fact to plaintiff.'" Dkt. 82 at 13. Judge Pallmeyer cites three limited circumstances under which such a duty to disclose arises: (1) a duty to disclose half-truths, (2) duty to correct based on new information, and (3) the existence of a special trust relationship. *Id.* at 13-16.[5] Notably, Boeing's brief only focuses on the third.

1. Boeing Had a Duty to Disclose Half-Truths to Timaero After It Lied to the FAA Regarding MCAS

Boeing had a duty to disclose its half-truths regarding its unairworthy planes when it entered Supplemental Agreements with Timaero between 2016 and 2018. "A duty to disclose can . . . arise where the defendant makes an affirmative statement that it passes off as the whole truth while omitting material facts that render the statement a misleading 'half-truth." Dkt. 82 at 13 (citing *Crichton v. Golden Rule Ins. Co.*, 576 F.3d 392, 398 (7th Cir. 2009). The Illinois Court was "sympathetic to th[e] argument" that "Boeing's statements surrounding the certification of the 737 MAX qualified as such half-truths," namely that "[w]hile Boeing did get the 737 MAX certified without requiring simulator training, Timaero alleges that Boeing did so only by hiding material information from the FAA." (Dkt. 82 at 13-14.)

As Judge Pallmeyer recognized, "[u]nder Illinois law, fraudulent concealment claims still must meet the elements of fraudulent misrepresentation" with "[o]ne such element [being]

---

[5] Boeing incorrectly states that "the existence of a special relationship is a prerequisite to a duty to disclose under Illinois Law." Dkt. 120 at 21.

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

fraudulent intent." (Dkt. 82 at 14 (internal quotations and citations omitted).) In Illinois, "a party can satisfy the fraudulent intent element by proving that a misrepresentation [or half-truth] was made knowingly or with reckless disregard for its truth or falsity." *Frerck v. Pearson Educ., Inc.*, 63 F. Supp. 3d 882, 892 (N.D. Ill. 2014). Boeing does not contend that any element of fraudulent misrepresentation besides fraudulent intent is absent from Timaero's claims under Illinois law.

Judge Pallmeyer's analysis solely focused on the initial contract and statements between Boeing and Timaero in 2014. Dkt. 82 at 14-15. As Judge Pallmeyer correctly noted, the expansion of MCAS beyond the original, FAA-approved design began after Boeing received negative flight test results in 2016, two years after the initial contract and statements. *Id.* at 14. Accordingly, Judge Pallmeyer held that "Timaero has failed to allege that anyone at Boeing knew or should have known that the statements about FAA approval were misleading half-truths when they made those statements to Timaero in 2013 and 2014." *Id.* at 15.

Timaero's Second Amended Complaint cures these alleged deficiencies. (SAC ¶¶ 9, 18, 103, 114, 123-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 304-313.) The Second Amended Complaint also alleges that, as stated in the DPA,[6] Boeing conspired to defraud the FAA AEG "[f]rom at least in and around November 2016 through at least in and around December 2018," after it secretly expanded MCAS in March 2016 and released in August 2016. (SAC ¶ 306-308, DPA-A ¶ 16.) Despite the fact that Boeing knew of material defects in the 737 MAX long before, Boeing's admitted fraud occurred concurrently with the execution of the Supplemental Agreements (September 15, 2016 through November 29, 2018) and delivery of two 737 MAX aircraft to Timaero in December 2018. (SAC ¶¶ 240, 304, 306-307.)

For example, regarding Supplemental Agreement No. 1, "Boeing knew that the expansion of MCAS's operation on March 30, 2016 and the version of MCAS released on

---

[6] Boeing entered into a deferred prosecution agreement ("DPA") in the United States District Court for the Northern District of Texas admitting that Boeing "fraudulently obtained" an FAA determination that the 737 MAX did not require simulator training through a conspiracy from at least November 2016 to December 2018. (SAC ¶ 13, Exhibit 1.).

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 11
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

August 15, 2016 precluded Level B non-simulator training in all 22 of the 737 MAX aircraft that were to be delivered to Timaero. Boeing thus knew at least as early as March 30, 2016 and without question by August 15, 2016, that it could not deliver aircraft to Timaero that only required Level B non-simulator training." (SAC ¶ 307.) "Nevertheless, Boeing represented as of September 15, 2016 in Supplemental Agreement No. 1 that 'all other terms and conditions of the [2014] Purchase Agreement,' including the promise of delivering 20 aircraft that require only Level B non-simulator training 'remain unchanged and [] in full force and effect.' Boeing knew that its representation was not true and that its promise to deliver 20 aircraft from the 2014 Purchase Agreement and the two aircraft from Supplemental Agreement No. 1 with only Level B non-simulator training would not be fulfilled. Boeing never intended that its promises would be fulfilled." (SAC ¶ 307.)

Timaero relied on these promises and would not have entered Supplemental Agreement No. 1, had Boeing disclosed its secret expansion of MCAS. (SAC ¶¶ 9, 18, 103, 114, 123-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 304-313.) The same is true for the other six Supplemental Agreements dating through November 2018, which all included the same half-truths. (*Id.*)

Accordingly, Timaero's claims for fraud and negligent misrepresentation should not be dismissed under Illinois law.

2.  <u>Boeing Had a Duty to Correct Statements Which Become False or Misleading Based on New Information</u>

Boeing ignores that, under Illinois law, "a party who had made a statement which at that time is true, but who subsequently acquires new information which makes it untrue or misleading, must disclose such information to anyone whom he knows to be acting on the basis of the original statement or be guilty of fraud." *Druckzentrum Harry Jung GmbH & Co. KG v. Motorola Mobility LLC*, 774 F.3d 410, 418–19 (7th Cir. 2014). It is unclear why Boeing chooses

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO DISMISS COUNTS I, II, III, AND V IN FULL – Page 12 (Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

to ignore this precedent, as Judge Pallmeyer cited this case law in her Order. Dkt. 82 at 15, n. 8.

Boeing never corrected any of its statements to Timaero, including those regarding MCAS' expanded operation, simulator training, and flight worthiness. (SAC ¶¶ 93-96, 171-72, 178, 211-214, 253). In fact, Boeing hid this information from everyone, including the FAA AEG, "[f]rom at least in and around November 2016 through at least in and around December 2018," after it secretly expanded MCAS in March 2016 and released in August 2016. (SAC ¶ 306, DPA-A ¶ 16.) There is no doubt that Timaero acted upon Boeing's later-discovered falsehoods, which were never corrected. (SAC ¶¶ 9, 18, 103, 114, 123-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 301, 304-313.)

Timaero amended its complaint to allege Boeing's legal duty and failure to correct any misrepresentations. Illinois law dictates that this Court should uphold Timaero's claims.

> D. _Timaero's Second Amended Complaint Adequately Alleges Pre-Contract Misrepresentations Inducing It to Enter the Purchase Agreement and Supplemental Agreements_

The MAX program began as early as January 2012 when Boeing filed an Amended Type Certification application for the aircraft with the FAA in an effort to rapidly develop a commercial response to competitor Airbus's A320neo through retrofitting of the existing (50-year old) 737 airframe. (SAC ¶¶ 51-55, 56, 58-60.) Boeing made at least three decisions at the onset of the MAX program that would go on to have substantial impacts on the airworthiness of the aircraft.

**_First_**, Boeing's decision to retrofit the 737 airframe with larger LEAP-1B engines while simultaneously refusing to modify wing and fuselage heights (necessitated by Boeing's desire to stay within the existing 737-type FAA certificate) required the engines be moved forward and up relative to the legacy placement. (SAC ¶¶ 58-60, 76, 80.) Boeing and its engineers were aware of the negative impacts this change would have on the MAX airframe in 2012 as a result of wind tunnel testing demonstrating the tendency of the MAX to pitch up during certain flight

conditions, creating a risk of stall and crash. (SAC ¶¶ 60-65.) Boeing nevertheless prioritized price points, training and certification expediency, and time to market over safety, engineering, and design sufficiency. (SAC ¶¶ 62.)

**Second**, Boeing's decision to certify the MAX as an amended type required the re-use of the 737 airframe's flight controls, precluding the use of fly-by-wire controls (as used in Airbus's A320neo). (SAC ¶¶ 67-69.) Boeing understood that it was essential to its customers and the FAA that differences between the flight controls of the 737 NG and the 737 MAX be minimal or nonexistent as to minimize or eliminate differences-training. (SAC ¶¶ 48-49.) The 737 NG legacy flight controls were mechanically and hydraulically connected to the control surfaces of the aircraft, and could not be adjusted or modified in any appreciable manner such that the changes in aerodynamic behavior of the MAX relative to the legacy airframe would be "invisible" or negligible to a pilot trained on the legacy airframe. (SAC ¶¶ 66, 68-69.) As a result, the aerodynamic changes to the MAX (caused by the use of the larger LEAP-1B engines and their placement) required changes in pilot techniques. (SAC ¶¶ 49, 53, 64, 66.)

**Third**, Boeing's decision to represent the MAX as requiring no (significant) additional pilot training or emergency procedures required them to mislead customers, including Timaero, about the reality of the situation. (SAC ¶¶ 89-90, 113, 115-118.) Boeing was relying on obtaining a less rigorous level of (i.e. "level B") differences-training for the MAX, which would result in the aircraft being a more attractive option for existing 737 NG customers through cost and time savings in maintenance and pilot transitioning. (SAC ¶¶ 90.)

As a result of the first two decisions, Boeing knew very early in the MAX program development process that it would not be able to honor the representations made to customers, including Timaero, that the MAX would not require any additional training or depart significantly from the operation and flight characteristics of the 737 NG. (SAC ¶¶ 87.) Rather than honestly conveying the MAX program development issues to customers, Boeing chose to continue making the initially-aspirational differences-training representations to Timaero in

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 14
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

conjunction with the execution of the Purchase Agreement and each of the Supplemental

Agreements, and engaged in a large-scale effort to mislead regulatory bodies laid bare in now-

available internal communications. (SAC ¶¶ 93, 289, 323.) These representations and their

timing, from 2012 through 2016, "move the needle" toward and past plausibility. *Iqbal*, 556 U.S.

at 678; *Twombly*, 550 U.S. at 556. Taken together with email communications directed at

Timaero by Boeing containing the same or similar representations, Timaero has plausibly alleged

that Boeing knew, or should have known, that these pre-contract representations to Timaero

concerning the differences-training needs for MAX pilots as well as Boeing's ability to provide a

safe and trustworthy aircraft on a represented timeframe were at least misleading if not false at

the time the representations were made. (SAC ¶¶ 129.)  Whether Boeing genuinely believed that

they and their engineers would achieve the impossible and deliver on the initially-aspirational

differences-training representations is a question of credibility. Timaero has sufficiently pled

facts which, if taken to be true, support an inference that Boeing did not genuinely believe such

an achievement was possible and thus sufficiently state a claim of fraud and misrepresentation.

1.  Boeing's Misrepresentations of Existing Facts Between 2013 and 2018 Are Actionable

Boeing repeats its argument that its misrepresentations amount to "general praise of

goods" and "puffing," and as such do not give rise to liability for fraud under Washington or

Illinois law. The Second Amended Complaint describes in detail misrepresentations of material

fact made knowingly by Boeing. (SAC ¶¶ 189, 307-310, 340-342.) Under Washington law, "[a]

fraudulent misrepresentation claim and a negligent misrepresentation claim both require the

misrepresentation to be one of existing fact []." *Glacier Nw., Inc. v. Int'l Bhd. Of Teamsters Loc. Union

No. 174*, 198 Wn.2d 768, 800 (2021). Under Illinois law, a misrepresentation is material (and thus

actionable) if the plaintiff would have acted differently had he been aware of it, or if it concerned

information upon which he would be expected to rely. *Martinez v. Freedom Mortg. Team, Inc.*, 527

F. Supp. 2d 827, 837 (N.D. Ill. 2007). Misrepresentations are made knowingly includes representations

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 15
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

1    made "with a reckless disregard" for the truth or falsity of the representation. *Newman v. Metro. Life*

2    *Ins. Co.*, 885 F.3d 992, 1003 (7th Cir. 2018).

3        Boeing did not simply represent that "minimal pilot training would be required." (Dkt. 120.)

4    Instead, Boeing represented a very specific level of pilot training, marketing the MAX as not requiring

5    *any* additional simulator training for pilots already certified to fly its predecessor 737 NG (Level B non-

6    simulator pilot training requirements). (SAC ¶¶ 121.) Boeing further represented to Timaero as of

7    January 10, 2014, that Boeing would deliver 20 MAX aircraft that required only Level B non-

8    simulator training, memorialized in the 2014 Purchase Agreement. (SAC ¶¶ 117.)

9        Boeing may prefer to categorize their representations as aspirational at the time they were

10   made, and perhaps some were, including those relating to the level of fuel efficiency the MAX would

11   achieve in service, and that the MAX would appear to have "the basic design . . . of the 737 NG." (Dkt.

12   120.) However, the representations at issue here which have harmed Timaero concerned existing facts

13   which Boeing knew to be untrue at the time they were made, and are thus actionable. (SAC ¶¶ 9, 18,

14   103, 114, 123-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 304-313.) Timaero

15   was not particularly concerned about what the aircraft would "look" like, but rather how quickly and

16   cost-efficiently the MAX would integrate into their fleets. (SAC ¶¶ 103, 122-124, 126.) The MAX

17   was known by Boeing to feature sufficient aerodynamic changes to necessitate simulator time for pilots

18   as part of their differences-training. (SAC ¶ 127.)  Further, Boeing knew that the project development

19   schedules advertised to Timaero were based upon regulatory approval of the MAX airframe under an

20   Amended Type Certificate, though Boeing knew the MAX airframe was substantially different from

21   the 737 NG airframe as to at least probably require additional certification. (SAC ¶¶ 26-28, 84, 94,

22   97.) Maintaining such a schedule would only be possible through a comprehensive scheme of

23   deception of regulators, buyers, and end-users and operators. (SAC ¶¶ 228-231.)  Both of these

24   representations, and others, were known by Boeing *at the time they were made* to be at least untrue,

25   reflected by the now-apparent internal communications and early stage wind tunnel testing. (SAC ¶¶

26   62, 75-92.) This is reflected in communications from the FAA to Boeing, stating that "[the FAA has]

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 16
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

reason to believe that Boeing's assessment of B Level training differences (Computer Based Training) between the MAX and NG will be insufficient. This has been communicated to Boeing over the past two years [since 2013] through a series of formal letters and issue Papers." (SAC ¶¶ 62, 95-96, 104, 126.)  The Court should reject Boeing's arguments in service of avoiding this claim.

### E.   Timaero Sufficiently Pled Fraud and Negligent Misrepresentation Under Rule 9(b)

Timaero's Second Amended Complaint identifies the "who, what, where, and how" of Boeing's representations to Timaero. Boeing rehashes many of the same arguments raised in earlier motions (Dkt. 69), and as before, Boeing's arguments are unfounded and premature as they attempt to require the resolution of disputed facts at the pleading stage. Timaero is not required to plead legal theories, and need only plead plausible facts supporting its claims. *Williams v. Boeing Co.*, 517 F.3d 1120, 1131 (9th Cir. 2008); *Auto Driveaway Franchise Sys., LLC v. Auto Driveaway Richmond, LLC*, 928 F.3d 670, 675 (7th Cir. 2019).

Rule 9(b) is satisfied here because Timaero stated the particulars of Boeing's fraud such that Boeing has been reasonably notified of Timaero's claim. (SAC ¶¶ 9, 18, 99-103, 107-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 304-313.) Timaero identified the "who, what, where, when, and how" of Boeing's fraud. To summarize briefly, Timaero's allegations, which must be taken as true, are that Boeing misrepresented that its MAX aircraft would have ***all*** the following specifications: the MAX would feature class-leading fuel efficiency from, among other improvements, the LEAP-1B engines; pilots would only be required by the FAA to complete Level B differences-training, meaning adopters of the MAX airframe (like Timaero) would not need to require their existing 737 NG pilots to undergo simulator training; the MAX airframe would be easily saleable and leasable and a good value for Timaero; the MAX airframe would be airworthy, safe, free from design defects, and in compliance with aviation regulations. These collectively comprise the "what" ("False Statements"). (SAC ¶¶ 9, 18, 99-103, 107-28, 187-89, 233-38, 241-43, 268, 248-51, 285, 289-94, 301, 304-313.). Boeing employees made the False Statements, and reaffirmed them time and time

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 17
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

again, to Timaero, at least as follows:

| When | Who | Where | How |
|---|---|---|---|
| 6/19/2013 | R. Conner | Le Bourget | Writing (letter of intent) |
| 6/19/2013 | A. Basyuk, E. Alexandrova, D. Krol | E-mail | Writing (draft news release) |
| 8/8/2013 | A. Basyuk, C. Brown, A. Jabenko, J. Acosta, M. Papyan | E-mail | Writing (bus. proposal) |
| 8/12/2013 | A. Basyuk, J. Acosta | Moscow | Meeting |
| 8/19/2013 | A. Basyuk | Moscow | Meeting |
| 9/12/2013 | A. Basyuk | Moscow | Meeting |
| 9/12/2013 | A. Basyuk,, C. Brown, A. Jabenko, J. Acosta, M Papyan | E-mail | Writing (bus. proposal) |
| 11/10/2013 - 11/14/2013 | G. Peppes | Muscat | Meetings |
| 11/19/2013 | S. Fancher, R. Tinseth | E-mail | Writing (slide-deck) |
| 11/21/2013 | J. Weltman, M. Papyan, T. Myers, A. Ivanischeva, J. Acosta, R. Hammond | Moscow | Meeting |
| 1/10/2014 | F. Siki | Executed in Ireland | Writing (Purchase Agmt.) |
| *1/10/2014* | *Execution of Purchase Agreement* | | |
| *1/10/2014* | *Execution of VEB-AGTA* | | |
| 1/21/2014 | A. Basyuk | Moscow | Meeting |
| 1/28/2014 | J. Acosta | Moscow | Meeting |
| 3/22/2014 - 3/29/2014 | A. Basyuk, S. Clark, C. Leach, K. Hamavand, W. Bare, J. Acosta, M. Wilks, F. Siki, A. Jabenko, F. Wolz, M Papyan | Seattle | Meetings |
| *3/30/2016* | *Expansion of MCAS* | | |
| *8/15/2016* | *Release of MCAS Update Precluding Level B Training* | | |
| *11/2016-12/2018* | *Conspiracy to Defraud the FAA Regarding MCAS* | | |
| 9/15/2016 | J. Larson | Executed in Ireland | Writing (Supplemental Agreement No. 1) |
| 8/28/2017 | M. Emre Yildirim | Executed in Ireland | Writing (Supplemental Agreement No. 2) |
| *11/12/2017* | M. Emre Yildirim | Executed in Ireland | Writing (Supplemental Agreement No. 3) |
| 2/26/2018 | F. Siki | Executed in Ireland | Writing (Supplemental Agreement No. 4) |
| 9/15/2018 | M. Yamashita | Executed in Ireland | Writing (Supplemental Agreement No. 5) |
| 9/28/2018 | M. Yamashita | Executed in Ireland | Writing (Supplemental Agreement No. 6) |

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 18
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

| When | Who | Where | How |
|------|-----|-------|-----|
| *11/29/2018* | L. Lange | Executed in Ireland | Writing (Supplemental Agreement No. 7) |

(*See* SAC ¶¶ 99-102, 107-123.) Boeing's argument that Timaero must allege more is unavailing.

Boeing further references other litigation involving the disastrous MAX program, quoting the opinion from yet "another matter arising out of the grounding of the 737 MAX." (Dkt. 120.) There, Boeing says, "[w]hen it comes to Rule 9(b), a thick coat of gloss won't do. A complaint needs to point to what the alleged fraudster actually said. A high-level paraphrase doesn't cut it." (Dkt. 120.) In that case, the reason the plaintiffs were unable to "point to what the alleged fraudster actually said" was a function of the plaintiffs' positions as pilots, to whom Boeing *never said anything at all* "because non-Boeing instructors ran the [training] course[s]" that each of the pilots attended. *In re Boeing 737 Max Pilots Litig.*, No. 19-cv-5008, 2022 U.S. Dist. LEXIS 197454 , *74 (N.D. Ill. Oct. 31, 2022). The same is not true here, where Boeing made numerous statements to Timaero in the process of obtaining Timaero's approval for the initial Purchase Agreement and subsequent Supplemental Agreements. (SAC ¶¶ 93-106.)

This Court has considered a similar motion on Rule 9(b) grounds, noting that "the Rule 9(b) standard may be relaxed where information is within a defendant's control and a plaintiff 'cannot be expected to have personal knowledge of the relevant facts." *Wilmington*, 2021 U.S. Dist. LEXIS 36777 (internal quotations and references removed) (citing *Neubronner v. Milken*, 6 F.3d 666, 672 (9th Cir. 1993)). There, "[p]laintiffs alleged facts demonstrating that the cause of the relevant defects was known as early as 2012, Boeing's obfuscation of the issues to avoid more intensive certification and training issues, continuing discovery of the scope of the MCAS issues, and continuing nondisclosure of the issues or even the MCAS system." *Id*. As Timaero has done here, "[p]laintiffs have alleged that the issues and defects were known in several portions of Boeing's operations, including engineering, testing, FAA compliance, and sales. This breadth, combined with the importance of the 737 MAX's success and the directive to avoid rigorous FAA certification and training requirements, lead to the

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 19
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

1    reasonable inference, *at this stage of the case*, that knowledge of the issues can be imputed to the

2    company as a whole." *Id.* (internal quotations and citations omitted). Accordingly, the same standard

3    should apply in this case.

4    **V.    Timaero Alleges Sufficient Harm to Support the WPLA Claims.**

5         Boeing argues that Timaero's "claim for product liability under the Washington Product

6    Liability Act ("WPLA") fails "for alleging 'purely economic damages.'" (Dkt. 120.) The determination

7    of whether a harm is "purely economic" requires a "holistic 'risk of harm analysis' considering (1)

8    whether the product's failure was 'sudden and dangerous' or (2) a more general evaluation of the

9    nature of the defect, the type of risk presented, and the manner in which the injury arose." *Wilmington*,

10   2021 WL 754030 at \*6.

11        Boeing's assertion that purely economic damages are not recoverable under the WPLA is false,

12   and the opinion cited in support of this assertion distinguishable. *Nobl Park, L.L.C. v. Shell Oil Co.*, 122

13   Wn.App. 838, 849 (Wash. App. 2004) (discussing the purchaser of an existing apartment complex

14   bringing suit against the original supplier of polybutylene plumbing installed in the complex some 25-

15   years prior, the plumbing itself the subject of a prior class action and settlement by which plaintiff was

16   bound).

17        Timaero is neither the second owner of either of the two MAX aircraft which Boeing delivered,

18   nor has there been some prior class action lawsuit precluding Timaero from pursuing WPLA claims

19   regarding the defective MAX products. "Generally speaking, 'economic loss' describes the diminution

20   of product value that results from a product defect." *Wash. Water Power Co. v. Graybar Elec. Co.*, 112

21   Wn.2d 847, 856 n.5 (Wash. 1989). While Boeing may prefer a world in which "'the economic loss rule

22   [] bar[s] recovery for alleged breach of tort duties where a contractual relationship exists and the losses

23   are economic losses,'" such a reading, "while perhaps understandable, is not correct." *Eastwood v.*

24   *Horse Harbor Found., Inc.*, 241 P.3d 1256, 1256 (Wash. 2010). "[T]he fact that an injury is an

25   economic loss or the parties also have a contractual relationship is not an adequate ground, by itself, for

26   holding that a plaintiff is limited to contract remedies." *Id.* at 1261. "When a product defect results in

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 20
(Case No. 2:21-00488-RSM)

injury only to the product itself, . . . the risk of harm must be carefully analyzed," allowing for recovery for economic losses associated with the product's failure where the product poses an unreasonable risk of harm implicating the "safety interests of the WPLA." *Id*. at 1265. "Under this analysis, in the products liability context, if the product was hazardous and caused harm [including harm to the product itself], the defendant breached the duty of care and tort law [like the WPLA] applie[s]." *Id*. at 1274.

While Boeing may argue that the MAX airframe is the type of product that "merely disappointed the consumer in light of the contractual bargain" and thus merely implicates the law of contracts and potentially breached warranties, the reality makes such a position untenable. The fundamentally faulty design of the MAX airframe, detailed in the Second Amended Complaint and including inherent aerodynamic instability papered over with poorly-engineered solutions leading to the tragic loss of life as a result of these defects in two identical MAX aircraft, is the type of "real, nonspeculative threat to persons and property" that implicates the "safety-insurance policies of the WPLA []." *Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Const., Inc.*, 119 Wn.2d 334, 352-54 (1992); (SAC ¶¶ 168-186, 190-194). A plaintiff need not wait until catastrophe has occurred, nor do they need to limit damages to the cost of repair. *Id*. at 353 (discussing the preemptive rebuild of the defendant's building to "bring[] it up to the standards the [plaintiff] claims it should have met in the first place []."). The MAX airframe was inherently "unsafe from the time it was constructed" and the defects in Boeing's product are actionable under the WPLA. *Id*. at 354. The two MAX aircraft which Boeing did manage to deliver to Timaero were in fact defective, and much like a defectively-constructed grain tower, Timaero did not need to wait for the Boeing products to harm (or worse) innocent bystanders and passengers to commence this action under the WPLA. (SAC ¶¶ 240, 249.)

The MAX aircraft were rendered inoperable for nearly two years (as of the filing of the original Complaint), and required numerous repairs before they were able to fly with some marginal degree of safety (including, among others, changes to the MCAS software, inclusion of additional AOA sensor monitors, new systems to disable MCAS, changes to procedures in the Flight Manual), as a result of these defects. (SAC ¶¶ 265-267, 271.) These repairs were not simply updates or improvements, but

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 21
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

rather *requirements* of federal regulatory agencies that Boeing was *forced* to implement before the MAX aircraft could even be flown. Boeing's arguments that such concerns are an attempt by Timaero to recover for the emotional distress suffered by its employees and customers is simply false; nowhere in the Second Amended Complaint does Timaero request any such relief, and instead uses these discussions to highlight the scope and "nature of the injury" that the WPLA's "evaluative approach" examines. (SAC ¶¶ 169, 172.)

Boeing's arguments further color the WPLA as a much narrower body of law and collection of remedies than the case law supports. "Recognizing the shortcomings of the economic loss rule, the *Eastwood* court held that the more appropriate inquiry when determining if tort remedies are recoverable when a contractual relationship also exists is whether an independent legal duty exists, outside the parties contractual relationship []." *Hendrickson v. Tender Care Animal Hosp. Corp.*, 312 P.3d 52, 58 (Wash. App. 2013). Boeing's post-contractual omissions and failure to correct their false representations of the MAX program give rise to liability under the WPLA, which "provides a statutory duty that manufacturers must warn purchasers of its dangerous products []" and, through adoption of the *Restatement's* liability standard for a manufacturer case, introduces "case law regarding product harm cases [] from *Restatement* principles." *Taylor v. Intuitive Surgical, Inc.*, 187 Wn.2d 743, 754 (2017).

## VI.   Timaero's Second Amended Complaint States a Claim for Unjust Enrichment.

Timaero and Boeing entered into an agreement under which Boeing would provide a number of airplanes to Timaero in exchange for a sum of money from Timaero. Timaero did in fact provide the sum of money Boeing expected to receive under the agreement, and Boeing was aware that Timaero expected to receive the contractually specified number of airplanes in exchange. (SAC ¶¶ 304.) Subsequently, Boeing did not in fact provide to Timaero the contractually specified number of airplanes. (SAC ¶¶ 312.) These are the elements of a valid quantum meruit argument, and Timaero has stated a sufficient claim for recovery based in a theory of quantum meruit. *See Johnson v. Nasi*, 50 Wn.2d 89, 91 (1957) (citing *Ross v. Raymer*, 32 Wn.2d 128, 137 (1948)). "Quantum meruit denotes

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 22
(Case No. 2:21-00488-RSM)

recovery for the value of services or materials provided under an actual, implied-in-fact contract" and thus is founded in the law of contracts and not exclusively on notions of justice and equity. *A.F.A.B., Inc. v. Town of Old Orchard Beach*, 639 A.2d 103, 105 n.3 (Me. 1994). Further, "the mere existence of a contract does not automatically invalidate an unjust enrichment claim." *Vernon v. Qwest Commc'ns Int'l, Inc.*, 643 F. Supp. 2d 1256, 1266-1267 (W.D. Wash. 2009). "Washington courts have historically used these terms [unjust enrichment and quantum meruit] synonymously." *Young v. Young*, 191 P.3d 1258, 1261 (Wash. 2008); *see also Bailie Commc'ns v. Trend Business Sys.*, 61 Wn. App. 151, 160 (Wash. App. 1991) ("Thus while quantum meruit, inasmuch as it involves retention of benefits in the form of services received, falls within the unjust enrichment doctrine, unjust enrichment applies to a far broader category of cases.").

Washington courts routinely allow plaintiffs to argue these quasi-contractual theories of recovery in the alternative to breach of contract claims, including in cases where the laws of other states are implicated. *See Arthur v. United States by and Through Veterans Admin.*, 45 F.3d 292, 296 (9th Cir. 1995) (finding it well established under the Federal Rules that a plaintiff may set forth inconsistent legal theories in its pleadings and will not be forced to choose a single theory on which to seek recovery); *Northwood Estate, LLC v. Lennar Nw., Inc.*, No. 52000-1-II, 2020 Wash. App. LEXIS 535, *1 (Wash. App. Oct. 29, 2019) (describing the posture on appeal as "Northwood sued Lennar for breach of contract and included alternative claims of quantum meruit and unjust enrichment"); *World Access, Inc. v. Midwest Underground Tech., Inc.*, 2016 U.S. Dist. LEXIS 136164, *17 (E.D. Wash. Sept. 30, 2016) (stating that a plaintiff bringing a claim under Iowa law "can plead breach of contract and *quantum meruit* claims as alternative recovery theories."); *Scott v. Carr*, No. C20-0236-RSM, 2020 U.S. Dist. LEXIS 203236, *13-14 (W.D. Wash. Oct. 30, 2020) (declining to dismiss plaintiff's alternative unjust enrichment claim and upholding the plaintiff's entitlement to plead quantum meruit in the alternative). Timaero is similarly entitled to plead quantum meruit "alternatively or hypothetically, either in a single count or defense or in separate ones," pursuant to Fed. R. Civ. P. 8(d)(2).

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 23
(Case No. 2:21-00488-RSM)

LAW OFFICES OF
WHITMYER IP GROUP LLC
600 Summer Street
Stamford, Connecticut 06901
(203) 703-0800

1        However, if the Court finds that adding the title *quantum meruit* to the count would be helpful,

2   Timaero should be granted leave to amend the Second Amended Complaint to address any deficiency.

3   **VII.**   <u>**Conclusion**</u>

4        For the reasons set out above, this Court should deny Boeing's motion and allow proceedings

5   to progress on all of the claims in Timaero's Second Amended Complaint.

6

7   Dated: January 9, 2023               Respectfully submitted,

8                           */s/ Wesley W. Whitmyer, Jr.*

                           Wesley W. Whitmyer, Jr. (*pro hac vice*)

9                         Michael J. Kosma (*pro hac vice*)

                         Robert D. Keeler (*pro hac vice*)

10                       WHITMYER IP GROUP LLC

                       600 Summer Street

11                       Stamford, Connecticut 06901

12                       Telephone: (203) 703-0800

                       Facsimile: (203) 703-0801

13                       Email: litigation@whipgroup.com

14                              mkosma@whipgroup.com

                              rkeeler@whipgroup.com

15                       Gregory J Hollon, WSBA No. 26311

16                       Timothy B Fitzgerald, WSBA No. 45103

                       McNaul Ebel Nawrot & Helgren PLLC

17                       One Union Square

                       600 University Street, Suite 2700

18                       Seattle, Washington 98101

19                       Telephone: (206) 467-1816

                       Facsimile: (206) 624-5128

20                       Email:  ghollon@mcnaul.com

                              tfitzgerald@mncaul.com

21

22                       *Attorneys for Plaintiff,*

                       *Timaero Ireland Limited*

23

24

25

26

TIMAERO'S OPPOSITION TO BOEING'S MOTION TO
DISMISS COUNTS I, II, III, AND V IN FULL – Page 24
(Case No. 2:21-00488-RSM)