1

2

3

4

5

6

7

8

THE HONORABLE RICARDO S. MARTINEZ

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

TIMAERO IRELAND LIMITED,

          Plaintiff,

   v.

THE BOEING COMPANY,

          Defendant.

No. 2:21-cv-00488-RSM

BOEING'S REPLY BRIEF
IN SUPPORT OF ITS MOTION TO
PARTIALLY DISMISS TIMAERO'S
SECOND AMENDED COMPLAINT

NOTE ON MOTION CALENDAR:
JANUARY 20, 2022

[ORAL ARGUMENT REQUESTED]

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**TABLE OF CONTENTS**

2
                                                                         **Page**

3

INTRODUCTION ................................................................................................................. 1

4

ARGUMENT ....................................................................................................................... 2

5

I.      Illinois law governs Timaero's fraud and misrepresentation claims. ................................. 2

6
7

      A.      As the transferee court, this Court must apply the same law
             previously applied by Judge Pallmeyer. ....................................................................... 2

8

II.     Timaero cannot remedy the infirmities in its fraud claims. ................................................ 4

9
10

      A.      The alleged representations came too early in the development
             of the 737 MAX. ........................................................................................................... 4

11

      B.      Timaero's fraudulent concealment allegations fail. ...................................................... 5

12

      C.      The alleged representations are too general. ................................................................. 6

13
14

III.    Timaero's WPLA claim (Count III) fails for the same reasons as the
      WPLA claims in *Wilmington Trust*, *Smartwings*, and *LOT*. ............................................. 8

15

IV.   Timaero cannot state a claim for unjust enrichment (Count V) given
      the undisputed existence of a valid contract. ...................................................................... 10

16

CONCLUSION .................................................................................................................. 11

17

18

19

20

21

22

23

24

25

26

BOEING'S REPLY BRIEF
(No. 2:21-cv-00488-RSM) – i

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Avery v. State Farm Mut. Auto. Ins.*,
    835 N.E.2d 801 (Ill. 2005) ....................................................................................7

*Boyd v. Sunflower Props., LLC*,
    389 P.3d 626 (Wash. Ct. App. 2016) ....................................................................11

*Chandler v. Wash. Toll Bridge Auth.*,
    137 P.2d 97 (Wash. 1943) ....................................................................................11

*In re Boeing 737 Max Pilots Litig.*,
    2022 WL 16553025 (N.D. Ill. Oct. 31, 2022) ......................................................8

*Jarrett v. Terrell*,
    2022 WL 1056645 (9th Cir. Apr. 8, 2022) .......................................................1, 3

*Lott v. Levitt*,
    556 F.3d 564 (7th Cir. 2009) ................................................................................3

*McCoy v. Iberdrola Renewables, Inc.*,
    760 F.3d 674 (7th Cir. 2014) ................................................................................3

*Mountain Hi, LLC v. Linde Gas & Equip. Inc.*,
    2022 WL 17486328 (W.D. Wash. Dec. 7, 2022) ..................................................9

*Muslin v. Frelinghuysen Livestock Managers, Inc.*,
    777 F.2d 1230 (7th Cir. 1985) ..............................................................................3

*Northwood Est., LLC v. Lennar Nw., Inc.*,
    2020 WL 1033579 (Wash. Ct. App. Mar. 3, 2020) .............................................11

*Polskie Linie Lotnicze Lot S.A. v. Boeing Co.*,
    2022 WL 4598486 (W.D. Wash. Sept. 30, 2022) ..........................................2, 8, 9

*Scott v. Carr*,
    2020 WL 6381812 (W.D. Wash. Oct. 30, 2020) ..................................................11

*Smartwings A.S. v. Boeing*,
    2022 WL 6747977 (W.D. Wash. Oct. 11, 2022) ...................................1, 2, 5, 7, 8, 9, 10

*Smartwings, A.S. v. Boeing Co.*,
    2022 WL 579342 (W.D. Wash. Feb. 25, 2022) ..............................................4, 7, 9

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1

**TABLE OF AUTHORITIES (Continued)**

2

**Page(s)**

3

*Touchet Valley Grain Growers, Inc. v. Opp & Seibold Gen. Constr., Inc.*,
4
    831 P.2d 724 (Wash. 1992).........................................................................................9

5
*Van Dusen v. Barrack*,
    376 U.S. 612 (1964).................................................................................1, 3, 4
6

*Vernon v. Qwest Commc'ns Int'l*,
7
    643 F. Supp. 2d 1256 (W.D. Wash. 2009).............................................................11

8
*Wilmington Tr. Co. v. Boeing Co.*,
    2021 WL 754030 (W.D. Wash. Feb. 26, 2021).....................................................9
9

*Young v. Young*,
10
    191 P.3d 1258 (Wash. 2008).................................................................................10

11
**STATUTES**

12
RCW 7.72.010(6).........................................................................................................9

13
**RULES**

14
Fed. R. Civ. P. 9(b) .............................................................................1, 5, 7, 8

15
Fed. R. Civ. P. 12(b)(6).......................................................................................5
16

Fed. R. Civ. P. 41 ...........................................................................................1, 4
17

18

19

20

21

22

23

24

25

26

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

**INTRODUCTION**

In its motion to dismiss, Boeing explained how Timaero's new complaint suffers from the same flaws identified nearly two years ago by Judge Pallmeyer when she dismissed Timaero's fraud claims (Dkt. #82), and the same deficiencies this Court identified when it dismissed fraud claims by another early 737 MAX customer in *Smartwings A.S. v. Boeing*, 2022 WL 6747977 (W.D. Wash. Oct. 11, 2022). Timaero alleges representations and omissions by Boeing that were too early in the development of the MAX and too generalized to be cognizable. And Timaero fails to plead the alleged fraud with the particularity required by Federal Rule of Civil Procedure 9(b). Timaero's opposition does not address these deficiencies in its claims, but instead makes irrelevant (and incorrect) arguments about whether Illinois law applies, Opp. at 4–8, and whether it has adequately alleged the "who," "where," "when," and "how" (*but not the "what"*) of the alleged fraud, *id.* at 18–19. Timaero's arguments fail, and Boeing's motion should be granted.

*First*, Illinois law governs Timaero's fraud claims. As the Supreme Court has explained, a "change of venue under § 1404(a)" is "but a change of courtrooms," and a transferee court (here, this Court) must apply the state law that would have been applied by the transferor court (here, the Northern District of Illinois). *Van Dusen v. Barrack*, 376 U.S. 612, 639 (1964); *Jarrett v. Terrell*, 2022 WL 1056645, at *1 (9th Cir. Apr. 8, 2022) (unpublished) (applying rule of *Van Dusen*). Because Judge Pallmeyer applied Illinois law (at Timaero's suggestion) to Timaero's fraud claims before transfer, this Court must do so as well.

In addition, Timaero's insistence that Federal Rule of Civil Procedure 41 entitles it to change its mind on choice of law is incorrect. Rule 41 does not apply because Timaero did not voluntarily dismiss its case and refile it in this District; this case was transferred pursuant to § 1404(a). Timaero should be held to its choice to file this case in an Illinois court and to seek the application of Illinois law to its claims.

*Second*, Timaero's amendments do not remedy the infirmities in its fraud claims, which Judge Pallmeyer previously dismissed. On Timaero's own allegations, Boeing did not identify

BOEING'S REPLY BRIEF
(No. 2:21-cv-00488-RSM) – 1

1  issues with the MCAS flight control law until November 2016, more than two years *after* Timaero

2  entered into the MAX Purchase Agreement in 2014 and two months *after* Timaero entered into a

3  Supplemental Agreement to convert two 737-800 aircraft to 737 MAX. Timaero also repeats alle-

4  gations concerning representations about the MAX that both Judge Pallmeyer and this Court have

5  already rejected as too general to give rise to a fraud claim. The rationale underlying Judge

6  Pallmeyer's earlier ruling applies equally to Timaero's Second Amended Complaint. This Court

7  should therefore dismiss Timaero's fraud and negligent misrepresentation claims with prejudice.

8      *Third*, Timaero's claim under the WPLA for purely economic losses from the grounding

9  fails for the same reason that similar claims failed in *Smartwings, A.S. v. Boeing Co.*, 2022 WL

10 579342 (W.D. Wash. Feb. 25, 2022), and *Polskie Linie Lotnicze Lot S.A. v. Boeing Co.*, 2022 WL

11 4598486 (W.D. Wash. Sept. 30, 2022).

12     *Fourth*, Timaero's unjust enrichment claim fails because a valid contract exists.

13                              **ARGUMENT**

14 **I.    Illinois law governs Timaero's fraud and misrepresentation claims.**

15     Judge Pallmeyer previously applied Illinois law—at Timaero's request—when dismissing

16 Timaero's fraud and misrepresentation claims. Neither the order transferring the case to this Court

17 nor Timaero's amended complaint changes the law governing those claims, and there is no basis

18 for Timaero's argument that its claims should now be subject to Washington law. Because its

19 amendments do not cure the fundamental defects that resulted in dismissal the last time around,

20 this Court should likewise dismiss Timaero's fraud and misrepresentation claims.

21     **A.    As the transferee court, this Court must apply the**
22         **same law previously applied by Judge Pallmeyer.**

23     Timaero chose to bring its case in the Northern District of Illinois. *See* Dkt. #1. In opposi-

24 tion to Boeing's motion to dismiss and motion to transfer, Timaero argued that "Illinois law applies

25 to Timaero's fraud claim (Count I), which supports keeping the case in Illinois." Dkt. #47 at 7; *see*

26 *also* Dkt. #68. Applying Illinois law, Judge Pallmeyer held that Timaero failed to state a cognizable

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 2

1  fraud claim, *see* Dkt. #82 at 15 n.7, and transferred the case to this District, *id.* at 25. As Boeing

2  explained in its opening brief, Mot. at 6–7, Illinois law continues to apply to Timaero's fraud and

3  misrepresentation claims following transfer to this Court. *Jarrett*, 2022 WL 1056645, at *1 (citing

4  *Van Dusen*, 376 U.S. at 639). Indeed, under *Van Dusen*, the amended complaint is treated as if it

5  had been filed in the Northern District of Illinois. 376 U.S. at 639. By "'submit[ing] to Illinois law

6  and rel[ying] solely on it' at the motion to dismiss stage," Timaero "waived [its] argument for

7  different substantive law" at subsequent stages in the case. *McCoy v. Iberdrola Renewables, Inc.*,

8  760 F.3d 674, 684 (7th Cir. 2014) (quoting *Lott v. Levitt*, 556 F.3d 564, 568 (7th Cir. 2009)); *see*

9  *also Muslin v. Frelinghuysen Livestock Managers, Inc.*, 777 F.2d 1230, 1231 n.1 (7th Cir. 1985)

10  (rejecting "attempt[s] to shift the focus to Illinois law" where the parties had acquiesced to the

11  application of New York law).[1]

12     Timaero appears to argue that *Van Dusen* permits a transferee court to apply a different

13  state's law than the transferor court applied if that law would significantly affect the outcome of

14  the case. Opp. at 5 (asserting that *Van Dusen* "is subject to the qualification that 'state laws of the

15  transferor State which would significantly affect the outcome of the case' need not apply"). *Van*

16  *Dusen* held precisely the opposite. The Supreme Court explained that while a transferee court is

17  entitled to apply different local or procedural rules, it *cannot* apply different substantive laws than

18  the transferor court:

19     Of course the transferee District Court may apply its own rules
       governing the conduct and dispatch of cases in its court. ***We are***
20     ***only concerned here with those state laws of the transferor State***
       ***which would significantly affect the outcome of the case***.
21

22  *Van Dusen*, 376 U.S. at 639 n.40 (emphasis added). *Van Dusen* thus forecloses Timaero's attempt

23  to recast its fraud and misrepresentation claims under Washington law.

24

25     [1] Timaero argues that *McCoy* is factually distinguishable, Opp. at 7, but does not explain why any of its purported factual distinctions are material. Regardless of the underlying facts, *McCoy* stands for the straightforward
26  principle that Timaero cannot seek a different outcome under Washington law after its claims were dismissed under Illinois law. *See* 760 F.3d at 684.

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Next, Timaero puzzlingly argues that Washington law applies to its fraud claims because

2    under Rule 41(a), "Timaero as a matter of right, can at all times prior to Boeing filing an answer

3    or motion for summary judgment, voluntarily dismiss this action and file a new complaint with

4    whatever claims and under whatever law it chooses." Opp. at 4–5. But voluntary dismissal under

5    Rule 41(a) is entirely irrelevant to this case. Timaero did not voluntarily dismiss the Illinois case

6    under Rule 41(a); Judge Pallmeyer transferred it to this Court under § 1404, and then this Court

7    granted Timaero leave to amend its complaint (the same complaint it had filed in Illinois). *Van*

8    *Dusen* thus requires this Court to apply the same law previously applied by Judge Pallmeyer.

9    **II.    Timaero cannot remedy the infirmities in its fraud claims.**

10    Timaero's fraud and misrepresentation claims continue to suffer from the infirmities pre-

11    viously identified by Judge Pallmeyer. In its opposition brief, Timaero simply makes the same

12    arguments that Judge Pallmeyer rejected in her dismissal order. Those arguments fail once again

13    for the same reasons.

14    **A.    The alleged representations came too early in the**
15    **development of the 737 MAX.**

16    Timaero alleges that Boeing made false representations to Timaero between June 2013 and

17    March 2014. Compl. ¶¶ 99–107; *see* Opp. at 18. But Judge Pallmeyer held that "all of Boeing's

18    allegedly fraudulent statements were promises about a future machine rather than descriptions of

19    an existing machine of known characteristics." Dkt. #82 at 8. As Judge Pallmeyer explained, Ti-

20    maero failed to "fulfill[] the first element of promissory fraud: that Boeing had no intention of

21    fulfilling its promises at the time of their making" because "Boeing had no reason to believe these

22    promises to be false until the 737 MAX began experiencing a second round of issues with the

23    MCAS system in [November] 2016." *Id.* at 9. This Court held the same under Washington law.

24    *See, e.g.*, *Smartwings*, 2022 WL 579342, at *8.

25    Timaero argues that it does not need to plausibly allege Boeing's intent at the pleadings

26    stage, because "[w]hether Boeing genuinely believed that they and their engineers would achieve

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 4

the impossible and deliver on the initially-aspirational differences-training representations is a question of credibility." Opp. at 15. But Judge Pallmeyer already rejected this argument under Rules 9(b) and 12(b)(6). Like this Court in *Smartwings*, Judge Pallmeyer correctly held that Timaero's fraud claims are implausibly predicated on representations made in 2013 and 2014, years before Boeing identified issues with MCAS in November 2016. As Judge Pallmeyer explained, "[n]othing about Timaero's allegations supports the conclusion that Boeing knew its promises were false until the time that Boeing changed the MCAS [in 2016]." Dkt. #82 at 9–10. Nothing in Timaero's second amended complaint addresses that problem. Instead, Timaero now appears to accept that it cannot remedy those infirmities in its claims with new factual allegations, and tries to sweep away those infirmities as mere "question[s] of credibility." But Timaero's inadequate allegations are matters of plausibility, not credibility. As this Court and Judge Pallmeyer have held, Boeing could not have intended to defraud 737 MAX customers before November 2016.

**B.    Timaero's fraudulent concealment allegations fail.**

Timaero tries to avoid this timing problem by referring to a September 2016 Supplemental Agreement that converted a prior order for two 737-800 aircraft to an order for two 737 MAX aircraft. Opp. at 10. Timaero contends that it entered into Supplemental Agreements after Boeing made misrepresentations to Timaero. Timaero also argues that Boeing had an affirmative duty to correct its half-truths and misstatements that purportedly caused Timaero to enter into those Supplemental Agreements. *Id.* But Supplemental Agreement No. 1—the only agreement that addressed Timaero's acquisition of additional 737 MAX aircraft—was signed in *September 2016*, and Timaero alleges that Boeing did not discover that MCAS activated at low speeds until *two months later* in *November 2016. See* Compl. ¶ 196; *see also id.* ¶¶ 13, 141, 167, 168, 191. Thus, like the Purchase Agreement, the September 2016 Supplemental Agreement came "too early" in the development of the MAX to support a plausible claim that Boeing possessed fraudulent intent in connection with Timaero's agreement to purchase 737 MAX aircraft.

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 5

1    Timaero also refers to several other Supplemental Agreements, signed between August

2   2017 and November 2018. *Id.* at 10–12. According to Timaero, Boeing "had a duty to disclose

3   half-truths," *id.* at 10–11, and to "correct[]" its prior statements to Timaero, *id.* at 12–13, upon

4   learning about issues with MCAS in November 2016.[2] Timaero alleges that, absent Boeing's

5   breach of this purported "duty to disclose," it "would not have entered Supplemental Agreement

6   No. 1" and that "the same is true for the other six Supplemental Agreements dating through No-

7   vember 2016." *Id.* at 12; *see also id.* at 13. But as mentioned above, Timaero executed Supple-

8   mental Agreement No. 1 before Boeing learned about issues with MCAS, and hence before Boeing

9   could have been under any conceivable affirmative duty to disclose. And as Timaero itself alleges,

10  the other six Supplemental Agreements did not alter the number of aircraft at issue, and hence did

11  not affect Timaero's decision to purchase MAX aircraft. *See* Compl. ¶¶ 233–38. Thus, even if

12  Timaero had plausibly pleaded that Boeing possessed fraudulent intent at the time that it entered

13  into those later agreements, they have no bearing on Timaero's claims in this case.

14        **C.    The alleged representations are too general.**

15    As explained in Boeing's Motion, the fraud claims also must be dismissed because the

16  alleged representations are too general to support them. Timaero argues that Boeing represented

17  that the MAX (1) would be fuel efficient; (2) "would be easily saleable and leasable and a good

18  value for Timaero"; (3) "would be airworthy, safe, free from design defects, and in compliance

19  with aviation regulations"; and (4) would require minimal pilot training. Opp. at 17. Judge

20  Pallmeyer determined that the first two alleged statements "immediately fall short." Dkt. #82 at 7.

21  Because Timaero admits that the 737 MAX was "more fuel-efficient," Compl. ¶ 286, that repre-

22  sentation is not a false statement of material fact. And the remaining representations are not ac-

23  tionable because they are "meaningless superlatives" that are properly classified as "mere puffery."

24

25    [2] In its opposition, Timaero abandons its prior argument that Boeing's affirmative duty to disclose arose out
    of a "special relationship" between Boeing and Timaero. *See* Opp. at 10. Timaero insisted that a "special relationship"

26  existed in earlier dismissal briefing before Judge Pallmeyer, *see* Dkt. # 68 at 14 (arguing that "Timaero sufficiently
    pled that Boeing and Timaero has a special relationship"), but Judge Pallmeyer rejected this argument, Order at 13.

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 6

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

1    Dkt. #82 at 7 (quoting *Avery v. State Farm Mut. Auto. Ins.*, 835 N.E.2d 801, 846 (Ill. 2005)). In-

2    deed, this Court in *Smartwings* held that alleged representations regarding aircraft design, safety

3    record, and pilot training are puffery that cannot amount to fraud. 2022 WL 579342, at *8.

4         Timaero's second amended complaint also fails to satisfy Rule 9(b). Although Timaero's

5    opposition includes a chart purportedly listing the "when," "who," "where," and "how" of the

6    alleged fraud, Opp. at 18, it fails to identify the "what" with the particularity required by Rule 9(b):

| When | Who | Where | How | What |
|------|-----|-------|-----|------|
| 6/19/2013 | R. Conner | Le Bourget | Writing (letter of intent) | No allegation |
| 6/19/2013 | A. Basyuk, E. Alexandrova, D. Krol | E-mail | Writing (draft news release) | No allegation |
| 8/8/2013 | A. Basyuk, C. Brown, A. Jabenko, J. Acosta, M. Papyan | E-mail | Writing (bus. proposal) | No allegation |
| 8/12/2013 | A. Basyuk, J. Acosta | Moscow | Meeting | No allegation |
| 8/19/2013 | A. Basyuk | Moscow | Meeting | No allegation |
| 9/12/2013 | A. Basyuk | Moscow | Meeting | No allegation |
| 9/12/2013 | A. Basyuk, C. Brown, A. Jabenko, J. Acosta, M Papyan | E-mail | Writing (bus. proposal) | No allegation |
| 11/10/2013 – 11/14/2013 | G. Peppes | Muscat | Meetings | No allegation |
| 11/19/2013 | S. Fancher, R. Tinseth | E-mail | Writing (slide-deck) | No allegation |
| 11/21/2013 | J. Weltman, M. Papyan, T. Myers, A. Ivanischeva, J. Acosta, R. Hammond | Moscow | Meeting | No allegation |
| 1/21/2014 | A. Basyuk | Moscow | Meeting | No allegation |
| 1/28/2014 | J. Acosta | Moscow | Meeting | No allegation |
| 3/22/2014 – 3/29/2014 | A. Basyuk, S. Clark, C. Leach, K. Hamavand, W. Bare, J. Acosta, M. Wilks, F. Siki, A. Jabenko, F. Wolz, M. Papyan | Seattle | Meetings | No allegation |
| 9/15/2016 | J. Larson | Executed in Ireland | Writing (Supplemental Agreement No. 1) | No allegation |
| 8/28/2017 | M. Emre Yildirim | Executed in Ireland | Writing (Supplemental Agreement No. 2) | No allegation |
| 11/12/2017 | M. Emre Yildirim | Executed in Ireland | Writing (Supplemental Agreement No. 3) | No allegation |
| 2/26/2018 | F. Siki | Executed in Ireland | Writing (Supplemental Agreement No. 4) | No allegation |
| 9/15/2018 | M. Yamashita | Executed in Ireland | Writing (Supplemental Agreement No. 5) | No allegation |
| 9/28/2018 | M. Yamashita | Executed in Ireland | Writing (Supplemental Agreement No. 6) | No allegation |
| 11/29/2018 | L. Lange | Executed in Ireland | Writing (Supplemental Agreement No. 7) | No allegation |

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 7

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Timaero asserts that it can allege the content of the false statements "collectively" and, on that basis, argues that in some or all of these alleged representations, Boeing said that

> the MAX would feature class-leading fuel efficiency from, among other improvements, the LEAP-1B engines; pilots would only be required by the FAA to complete Level B differences training, meaning adopters of the MAX airframe (like Timaero) would not need to require their existing 737 NG pilots to undergo simulator training; the MAX airframe would be easily saleable and leasable and a good value for Timaero; the MAX airframe would be airworthy, safe, free from design defects, and in compliance with aviation regulations.

Opp. at 18.

But Rule 9(b) requires Timaero to allege fraud with particularity, and not "collectively" across 26 alleged representations occurring over the course of 5 years. Timaero's use of generalized "collective[]" allegations defeats Rule 9(b)'s purpose to give defendants particularized information about the content of the alleged fraud. *In re Boeing 737 Max Pilots Litig.*, 2022 WL 16553025, at *26 (N.D. Ill. Oct. 31, 2022). In any case, Timaero could not plausibly allege any false statements with particularity because it alleges that it signed both the Purchase Agreement and the September 2016 Supplemental Agreement before Boeing knew or had reason to know about the alleged issues involving MCAS. *See supra* at 5–6.[3]

### III.    Timaero's WPLA claim (Count III) fails for the same reasons as the WPLA claims in *Wilmington Trust*, *Smartwings*, and *LOT*.

In its opposition, Timaero attempts to save its WPLA claim by relying on theories of harm that this Court has rejected in similar cases involving the 737 MAX. Timaero does not allege that any of its 737 MAX aircraft were themselves damaged or that they damaged other persons or property. *See* Compl. ¶¶ 348–365. Rather, Timaero proposes that the WPLA may be satisfied by purely economic damages, even where no product failure has occurred. *See* Opp. at 20–21. As this

---

[3] Timaero argues that the Rule 9(b) standard should be relaxed because Boeing knows better than Timaero what it said at the alleged meetings and in the alleged correspondence. Opp. at 17. This argument makes no sense: Timaero alleges that it was participant in, or recipient of, all of the alleged Boeing representations, and that it relied on those representations to its detriment. Thus, Timaero necessarily knows and should be required to allege with particularity the statements it purports to have heard and relied on.

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 8

1    Court and the Washington Supreme Court have repeatedly explained, the WPLA does not permit

2    such claims.

3    The WPLA specifically excludes "direct or consequential economic loss" from the

4    WPLA's definition of "harm." RCW 7.72.010(6). The statute's express exclusion of "economic

5    loss" "confines recovery to physical harm of persons and property and leaves economic loss, stand-

6    ing alone, to the Uniform Commercial Code." *Touchet Valley Grain Growers, Inc. v. Opp &*

7    *Seibold Gen. Constr., Inc.*, 831 P.2d 724, 733 (Wash. 1992). The WPLA and the cases interpreting

8    it are clear that economic loss is "better addressed under the expectation-bargain protection policy

9    of contract law." *Smartwings*, 2022 WL 579342, at *9–11 (internal quotation marks omitted); *see*

10    *also, e.g.*, *Mountain Hi, LLC v. Linde Gas & Equip. Inc.*, 2022 WL 17486328, at *2 (W.D. Wash.

11    Dec. 7, 2022) (rejecting WPLA claim where no harm occurred and "[t]he crux of plaintiff's WPLA

12    claim … is that the butane supplied by [defendant] did not comport with the standards applicable

13    to instrument-grade butane").

14    Timaero also fails to address this Court's prior orders rejecting claims for purely economic

15    losses allegedly suffered by 737 MAX purchasers, like Timaero, during the grounding. *See Smart-*

16    *wings*, 2022 WL 579342, at *9–11; *Smartwings, A.S. v. Boeing Co.*, 2022 WL 6747997, at *3

17    (W.D. Wash. Oct. 11, 2022); *Polskie Linie Lotnicze Lot S.A.*, 2022 WL 4598486, at *8; *Wilmington*

18    *Tr. Co. v. Boeing Co.*, 2021 WL 754030, at *7–8 (W.D. Wash. Feb. 26, 2021). Just as in those

19    cases, Timaero's "inability to operate their aircraft … represents a failure to meet their contractual

20    expectations, not a risk of harm from an inherently unsafe product." *Wilmington Tr.*, 2021 WL

21    754030, at *8. Timaero cites no authority to suggest otherwise, instead suggesting that it is enough

22    that other airlines experienced product failures. *See* Opp. at 21. But "permitting WPLA claims to

23    proceed upon the mere exposure to a risk of harm would substantially expand the scope of the

24    WPLA and does not find support in the statutory text." *Smartwings*, 2022 WL 579342, at *11.

25    Timaero is also wrong that "repairs" to the 737 MAX are sufficient to state a claim under

26    the WPLA. Opp. at 21. This Court rejected an almost identical argument in *Smartwings*, where the

**Perkins Coie LLP**
1201 Third Avenue, Suite 4900
Seattle, Washington 98101-3099
Phone: 206.359.8000
Fax: 206.359.9000

Court held that allegations concerning "repairs" were too "disconnected from the product defect at issue, and/or are purely economic losses." *Smartwings*, 2022 WL 6747997, at \*3. As the Court explained, such "purported 'harms' are … prophylactic measures to prevent physical harm from the allegedly defective condition, not the manifestation of that defect," and therefore not cognizable under the WPLA. *Id.* Timaero's WPLA claim must therefore be dismissed.

## IV. Timaero cannot state a claim for unjust enrichment (Count V) given the undisputed existence of a valid contract.

In response to Boeing's argument that Timaero has not stated a claim for unjust enrichment, Timaero invokes the doctrine of quantum meruit—an entirely different legal theory that it did not plead in its complaint. *See* Opp. at 22–24. Specifically, Timaero claims its "Second Amended Complaint states a claim for unjust enrichment" because "Timaero has stated a sufficient claim for recovery based in a theory of quantum meruit." *Id.* at 22 (capitalization omitted). But Timaero's newfound legal theory cannot rescue its unjust enrichment claim because quantum meruit is fundamentally different from unjust enrichment. In any case, Timaero cannot plausibly state a claim under either legal theory.

As a matter of law, Timaero's arguments about quantum meruit are inapplicable to its claim for unjust enrichment because those are distinct legal theories. Unjust enrichment is an equitable doctrine where, in the absence of a contract, fairness and justice require a contract to be implied in law. *See Young v. Young*, 191 P.3d 1258, 1262 (Wash. 2008). Under the doctrine of unjust enrichment, contracts may be implied *in law* where one party provides goods, or performs services, for another party in the absence of an agreement between the parties, whether or not reduced to an express contract. *See id.* Quantum meruit, by contrast, implies the existence of a contract *in fact* because the parties' conduct shows a mutual intent to contract despite their failure to reduce that contract to a written agreement. *Id.* at 1262–63. Quantum meruit and unjust enrichment are thus distinct claims based on different legal theories. *Id.* at 1262

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 10

1    In any case, neither unjust enrichment nor quantum meruit can survive dismissal because

2    there *is* a valid express contract between Boeing and Timaero, and the parties do not dispute the

3    validity of that contract. Washington law is clear that where, as here, a valid express contract exists,

4    a plaintiff cannot sue on an implied contract related to the same subject matter. *Chandler v. Wash.*

5    *Toll Bridge Auth.*, 137 P.2d 97, 103 (Wash. 1943). Timaero's own authorities say as much. *See*

6    *Scott v. Carr*, 2020 WL 6381812, at *5 (W.D. Wash. Oct. 30, 2020) (declining to dismiss unjust

7    enrichment claim because "the validity of the contract remains in dispute"); *Vernon v. Qwest*

8    *Commc'ns Int'l*, 643 F. Supp. 2d 1256, 1267 (W.D. Wash. 2009) ("A claim for unjust enrichment

9    may survive a motion to dismiss if a plaintiff challenges the validity of the contract."); *Northwood*

10   *Est., LLC v. Lennar Nw., Inc.*, 2020 WL 1033579, at *8 (Wash. Ct. App. Mar. 3, 2020) ("Unjust

11   enrichment and quantum meruit are used … where there is no contract governing the parties' re-

12   lationship."). Simply put, "neither remedy is available if the claim is covered by the terms of a

13   contract." *Northwood Est.*, 2020 WL 1033579, at *8; *see also Boyd v. Sunflower Props., LLC*, 389

14   P.3d 626, 633 (Wash. Ct. App. 2016) (implied contracts "do not exist to circumvent written agree-

15   ments").

16   There is no dispute about the validity of the contracts at issue in this case: Purchase Agree-

17   ment Number PA-04022 and the Aircraft General Terms Agreement. *See* Compl. ¶¶ 107, 109.

18   Those contracts control the rights and obligations of the parties, and the unjust enrichment claim

19   must therefore be dismissed.

## CONCLUSION

20   For the foregoing reasons, Timaero's fraud, negligent misrepresentation, WPLA, and un-

21   just enrichment claims should be dismissed with prejudice.

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 11

1

2

Dated: January 20, 2023

By: *s/ Eric B. Wolff*
   Steve Y. Koh, Bar No. 23284
   Eric B. Wolff, Bar No. 43047
   Ulrike B. Connelly, Bar No. 42478
   Gregory F. Miller, Bar No. 56466
   Michelle L. Maley, Bar No. 51318
   **Perkins Coie LLP**
   1201 Third Avenue, Suite 4900
   Seattle, Washington 98101-3099
   Telephone: 206.359.8000
   Facsimile: 206.359.9000
   SKoh@perkinscoie.com
   EWolff@perkinscoie.com
   UConnelly@perkinscoie.com
   GMiller@perkinscoie.com
   MMaley@perkinscoie.com

   *Attorneys for Defendant The Boeing Company*

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

BOEING'S REPLY BRIEF
(NO. 2:21-CV-00488-RSM) – 12